Box 77

## IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
## CIVIL COURT DEPARTMENT

| | |
|---|---|
| ARY JEWELERS, L.L.C., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 01 CV 02633 |
| | ) Division 12 |
| | ) Chapter 60 |
| SCOTT KRIGEL, Individually and as Trustee of the Scott W. Krigel Revocable Trust, | ) |
| S. KASHI & SONS, INC., a New York corporation, | ) |
| and | ) |
| TODISCO JEWELRY CO. INC. a New York corporation, | ) |
| Defendants. | ) |

### AMENDED PETITION FOR DECLARATORY JUDGMENT

COMES NOW plaintiff ARY Jewelers, L.L.C., and for its petition for declaratory judgment, states and alleges as follows:

#### Parties

1. Plaintiff, ARY Jewelers, L.L.C. (ARY Jewelers) is a Nevada limited liability company with its principal place of business in Carson City, Nevada.

2. Defendant, Scott Krigel is a resident of Kansas and may be served at 12112 Catalina, Leawood, Kansas 66209.

3. Defendant, Scott W. Krigel Revocable Trust (Krigel Trust) may be served through its trustee, Scott Krigel at 12112 Catalina, Leawood, Kansas 66209.



WA 590935.2



ARY - 00619

4. Defendant, S. Kashi & Sons, Inc. (Kashi) may be served through its DOS Process (registered agent), S. Kashi & Sons, Inc., 71 West 47th Street, Room 1403, New York, New York 10036.

5. Defendant, Todisco Jewelry Co. Inc. (Todisco) may be served through its DOS Process (registered agent), Bloomberg Steinberg & Bader, Esqs., 233 Broadway, New York, New York 10279.

### Jurisdiction and Venue

6. This court has personal jurisdiction over defendants Scott Krigel and the Krigel Trust because they are residents of the State of Kansas and are amenable to service of process by a Kansas court. Defendants Kashi and Todisco both do business in Kansas and are therefore subject to personal jurisdiction in Kansas. They may be served through their registered agents. The amount in controversy exceeds the minimum jurisdictional limits of the Court.

7. Venue is proper in Johnson County, Kansas because Mr. Krigel resides in this County and this cause of action arose in this County.

### Factual Background

8. ARY Jewelers files this action seeking a judgment from this Court declaring that the conditions precedent to a contract between the Krigel Trust and ARY Jewelers were never satisfied, and ARY Jewelers therefore is under no obligation to Scott Krigel, the Krigel Trust and defendants Kashi and Todisco.

9. Scott Krigel was the president of Krigel's, a family-owned chain of Midwest jewelry stores. Other corporate officers included Mr. Krigel's brother, Sanford Krigel. Sanford Krigel and his wife, Erlene Krigel, both of whom are lawyers, now represent both Mr. Krigel, individually, as well as Krigel's, Inc.

WA 590935.2

**ARY - 00620**

10. The Krigel's, Inc. chain of stores became insolvent. When it became apparent in late 2000 that it was no longer viable under the existing management, Scott Krigel entered into negotiations to sell Krigel's, Inc. to ARY Jewelers. The negotiations culminated on November 21, 2000 with the execution of a Stock Purchase Agreement (SPA) between the Krigel Trust (which owned the stock of Krigel's, Inc.) and ARY Jewelers. Exhibit 1.

11. The terms of the SPA were straightforward. Contingent on the willingness of Krigel's existing lender, Foothill Capital, to continue financing the operation of the Krigel's, Inc. stores, the SPA provided that all Krigel's stock would be sold to ARY Jewelers for $50,000.00. Because the SPA contemplated purchasing Krigel's out of bankruptcy, it provided that, on closing, ARY Jewelers would pay Krigel's, Inc.'s unsecured creditors 60 cents on the dollar in settlement of their claims. Defendants Kashi and Todisco are unsecured creditors of Krigel's, Inc.

12. Ancillary to the SPA, the parties executed a Consulting and Noncompetition Agreement (Consulting Agreement), which provided that Scott Krigel, personally, would receive compensation for "consulting" services and a non-competition agreement. Exhibit 2, Consulting and Noncompetition Agreement for Scott Krigel, dated November 21, 2000. Specifically, upon the closing of the SPA, $1,450,000.00 held in escrow would be released to Scott Krigel as consideration for consulting services ($950,000.00) and a covenant not to compete ($500,000.00). His entitlement to this funds was entirely contingent on the transaction closing as specified in the SPA. If the SPA did not close, Mr. Krigel would receive nothing.

13. ARY Jewelers complied with all the conditions precedent to performance of the SPA, including depositing $1,450,000.00 in escrow with Assured Quality Title Company as consideration for the Consulting Agreement should the SPA close as contemplated. Exhibit 3. Fifty thousand dollars ($50,000.00) was deposited in a separate escrow account with Assured Quality Title Company for the purchase of the Krigel's, Inc. stock should the SPA close. Exhibit 4.

14. The SPA had conditions precedent that had to be satisfied before performance was due. Paragraph 4(c) of the SPA provides the following:

> Within four weeks from the date hereof Purchaser shall provide Seller with evidence of Foothill Capital's consent to the continued financing of Company's obligations to Foothill Capital. *In the event Foothill Capital does not consent within the foregoing time period this Stock Purchase Agreement and related agreements shall be void and of no further effect.*

See Exhibit 1 (emphasis added). The SPA was executed on November 21, 2000. The deadline for Foothill Capital's consent was, therefore, December 19, 2000.

15. Foothill Capital did not consent to the continued financing of Krigel's within this time period, and in fact, never consented to the financing. Instead, on December 15, 2000, Foothill Capital issued a proposal, but explicitly declared that its proposal was not a commitment to lend, and attached at least ten separate conditions to the proposal. Furthermore, the terms of this proposal, as well as every subsequent proposal from Foothill Capital, were markedly different, and more burdensome, than those that were already in place with Krigel's, Inc. This was the case even though Krigel's, Inc. was insolvent at the time, and ARY Jewelers was proposing to bring in many millions of dollars to recapitalize the stores.

16. ARY notified Mr. Krigel on December 19, 2000 that the proposal from Foothill Capital did not comply with paragraph 4(c), and offered to extend the paragraph 4(c) acceptance date to January 18, 2001. Exhibit 5. Krigel's, Inc. never agreed to extend the date, accordingly, the SPA became void by its own terms on December 19, 2000.

17. Notwithstanding Foothill Capital's refusal to consent to continued financing, and the fact that the SPA's obligations terminated on December 19, 2000, the parties continued to negotiate with Foothill Capital in an effort to salvage the transaction, but the SPA itself was dead.

18. Mr. Krigel secured the pre-approval of Krigel's creditors for a plan of reorganization incorporating the SPA. On January 19, 2001, Krigel's filed for bankruptcy,[1] and on January 26, 2001, Mr. Krigel presented the proposed plan of reorganization to the Bankruptcy Court as a prepackaged reorganization plan.

19. Negotiations, and Foothill Capital's series of proposals, continued through January, February, March and into April. Each proposal explicitly states that the proposal "should not be considered a commitment to lend," and that any commitment to lend "would be subject to, among other things, Foothill Capital's Credit Committee Approval." Each and every proposal goes on to list, in Section 10, 10 separate conditions precedent to loan approval, and states that those ten items are only <u>some</u> of the conditions that must be satisfied before a lending commitment would be issued. At no time did Foothill Capital commit in writing, or otherwise, to the continued financing of Krigel's on any terms, much less the same terms that were currently in effect with Krigel's. In fact, Foothill Capital changed its terms, and would have imposed more onerous terms on ARY Jewelers, which had been prepared to commit millions of dollars to the acquisition and operation of the stores.

20. In the meantime, the Mr. Krigel had taken Krigel's, Inc. into bankruptcy, and proceedings were moving along. The date for the proposed plan of reorganization to be confirmed by the Bankruptcy Court was set for March 5, 2001.

---

[1] Case No. 01-40276-11-JWV, pending in the United States Bankruptcy Court for the Western District of Missouri, Western Division.

WA 590935.2

ARY - 00623

21. Because financing was still not available, ARY Jewelers asked counsel for Krigel's to continue the March 5, 2001 hearing so that additional time would be available to secure financing. Krigel's refused. ARY Jewelers then sought a one week extension from the Bankruptcy Court. The request was denied.

22. At the hearing, Mr. Krigel provided the testimony necessary to secure approval of the plan. Specifically, he testified that the information contained in the plan, which included the SPA, was "currently accurate." He also testified that ARY Jewelers was "finishing up negotiations with Foothill."

23. These statements were not true. At the time they were made, the parties not only differed on the terms of the proposal, but Foothill Capital had already told Mr. Krigel that no commitment would ever be forthcoming unless they were provided with additional assurances.

24. At the conclusion of the hearing, the Bankruptcy Court confirmed the Plan, and set the effective date for March 15, 2001.

25. As the effective date for the Reorganization Plan approached, ARY Jewelers again made the parties aware of the fact that financing was not available, and requested an extension of time, again to continue work on obtaining acceptable financing. Although Krigel's position was that ARY Jewelers did not have standing to ask for a modification of the Plan, they consented to extend the effective date by two weeks, to March 30, 2001.

26. Negotiations with Foothill Capital continued, but to no avail. If acceptable financing had been available, it was ARY's desire to revive and consummate the transaction. Foothill Capital continued to offer various proposals, culminating in their ultimate proposals – the most onerous of them all – on March 20, 2001 and March 27, 2001. Foothill Capital's new requirements included,

in addition to other problems, an even greater limitation on the borrowing base. The result of this change would have been that the cash outlay for the acquisition of new inventory would have cost ARY significantly more than Krigel's had to pay under its existing arrangement. In addition, Foothill Capital required two million dollars of unused loan availability at closing, which, as Krigel's was already close to if not at the absolute limit of its credit, would have required a cash infusion of up to that two million by ARY Jewelers. Finally, Foothill Capital imposed a new requirement of a $500,000.00 letter of credit as a security guarantee.

27. On March 28, 2001 ARY Jewelers notified Scott Krigel that Foothill Capital had not consented to the continued financing of Krigel's. Even at this late date, ARY Jewelers requested that Mr. Krigel use whatever influence he had with Foothill Capital to persuade them to continue financing Krigel's according to the same terms that were in place as of November 21, 2001.

28. ARY also sought an additional extension of the March 30, 2001 effective date so that financing could be arranged. Mr. Krigel and Krigel's refused to consent to the extension.

29. At the hearing, Scott Krigel's sister-in-law, and counsel, Erlene Krigel asserted that on March 27, 2001, Foothill Capital had issued a loan commitment to ARY. It was Krigel's position that the terms of the SPA had now been satisfied.

30. This representation turned out to be completely false. The March 27, 2001 correspondence from Foothill Capital is no more a commitment to lend than any of their prior proposals, a fact confirmed by Foothill Capital in deposition testimony. Nevertheless, Krigel's argued to the Court that Foothill Capital had, in fact, extending a loan commitment to ARY on March 27, 2001. As a result, the Court denied ARY Jeweler's requested extension, holding additionally, that ARY lacked standing to object to or modify the Plan.

31. ARY Jewelers continued its work to obtain financing. However, Foothill Capital refused to modify its terms, and when it became clear after additional meetings that no reasonable financing was available from them, ARY Jewelers notified Krigel's on April 5, 2001 that Foothill Capital's categorical refusal made moving forward with closing impossible. Despite ARY Jewelers's best intentions, and continued negotiations even after the SPA had become void by its own terms, the acquisition could not go forward.

32. Krigel's, Inc. was subsequently sold to Hannoush Jewelers at auction in April 2001.

33. Claiming that ARY Jewelers breached the SPA, Scott Krigel, through Krigel's, Inc. filed an Adversary Proceeding in the Bankruptcy Court against ARY Jewelers, and two other defendants. Because the case involved state law claims, and Krigel's, Inc.'s filing in Bankruptcy Court would deprive ARY Jewelers of its 7th Amendment right to jury trial, on June 8, 2001, the Bankruptcy Judge, the Honorable Jerry W. Venters, entered an order abstaining from the case.

34. At the time the Adversary Proceeding was terminated, the committee of unsecured creditors, two of which creditors were defendants Kashi and Todisco, was attempting to intervene in the adversary proceeding, claiming they were third party beneficiaries of the SPA. The Bankruptcy Court did not rule on the motion to intervene prior to abstaining. The Bankruptcy Court has abstained from the entire adversary proceeding, holding that "state law issues predominate the action." Accordingly, to the best of ARY Jeweler's knowledge, this is the only pending proceeding concerning these issues.

### Count I:  Declaratory Judgment

35. Pursuant to paragraph 4(c) of the SPA, the closing of the SPA was contingent on the willingness of Foothill Capital, to consent to the continued financing of Krigel's, Inc. obligations.

8

WA 590935.2

ARY - 00626

Paragraph 4(c) provides that if Foothill Capital does not consent to the continued financing within four weeks of the signing of the SPA then the "Stock Purchase Agreement and related agreements shall be void and of no further effect."

36. The SPA was signed November 21, 2000. Despite intensive negotiations, Foothill Capital Corporation refused to issue a commitment to the continued financing of Krigel's, Inc.'s obligations. Because Foothill Capital never issued a commitment, pursuant to the terms of paragraph 4(c) of the SPA, the agreement and related agreements became void and of no further effect on December 19, 2000.

37. Despite the fact that the SPA has dissolved by its own terms, on March 31, 2001, Scott Krigel made a demand upon the Assured Quality Title Company for the release of $1,450,000.00 to Mr. Krigel personally, and for the release of $50,000.00 to the Krigel Trust. Under the terms of the escrow agreements, an objection by ARY Jewelers to the release of the escrowed funds prohibits Assured Quality Title Company from such release until such time as it receives written directions from both parties, or receives a final, unstayed, order from a court of competent jurisdiction directing the disposition of the funds.

38. On April 2, 2001, ARY Jewelers notified Assured Quality Title Company that it was contesting the release of both the $1,450,000.00 to Scott Krigel, individually, and the $50,000.00 to the Krigel Trust. Under the terms of the November 21, 2000 Consulting and Noncompetition Agreement for Scott Krigel, ARY Jeweler's obligation to pay Scott Krigel for the agreement is triggered upon the transfer of Krigel's, Inc. stock to ARY under the terms of the SPA. The stock has not been transferred, and will not be transferred because the SPA became null and void when

ARY - 00627

Foothill Capital refused to issue a lending commitment to the continued financing of the Krigel's, Inc. stores.

39. Furthermore, in April of 2001, Krigel's, Inc. was auctioned in the Bankruptcy Court, and sold to Hannoush Jewelers. Under the terms of this subsequent sale, Scott Krigel is receiving separate consideration from Hannoush for consultation and/or noncompetition.

40. Accordingly, because the SPA is null and void, and because ARY Jewelers' obligations to Scott Krigel under the Consulting and Noncompetition Agreement have not, and cannot, be triggered, ARY is entitled to the return of its escrowed funds.

41. Furthermore, defendants Kashi and Todisco have, along with other unsecured creditors, attempted to assert claims in Bankruptcy Court against ARY Jewelers, alleging that they were third party beneficiaries of the SPA. ARY Jewelers disputed their standing to assert such claims and their right to intervene in the adversary proceeding in Bankruptcy Court. These issues were not ruled upon by the Bankruptcy Court prior to the decision to abstain. The Bankruptcy Court abstained, holding that the proper venue for such claims was state court. Accordingly, ARY Jewelers seeks a further declaration Kashi and Todisco are not third party beneficiaries, and do not have standing to assert any claim based on the SPA.

42. Pursuant to K.S.A. 60-1704, ARY Jewelers is entitled to a declaration of the following from this Court:

    a. The SPA between ARY Jewelers and the Krigel Trust, dated November 21, 2000 is null and void;

    b. ARY Jewelers is relieved of any obligation to perform the terms of the SPA;

ARY - 00628

    c.    ARY Jewelers is entitled to the release and return of the $50,000.00 currently held in escrow by Assured Quality Title Company, which had been contemplated as the consideration for the transfer of Krigel's, Inc. stock along with an order directing Assured Quality Title Company to release said funds to ARY Jewelers; and,

    d.    ARY Jewelers is entitled to the release and return of the $1,450,000.00 currently held in escrow by Assured Quality Title Company, which had been contemplated as the consideration for Scott Krigel's consulting services and noncompetition agreement along with an order directing Assured Quality Title Company to release said funds to ARY Jewelers;

    e.    defendants Kashi and Todisco are not third party beneficiaries of the SPA, and are not entitled to any recovery by virtue of the SPA.

43.    Furthermore, pursuant to K.S.A. 60-1711, ARY Jewelers seeks recovery of its costs and expenses associated with the filing and prosecution of this declaratory judgment action.

## Conclusion and Prayer

ARY Jewelers, L.L.C. prays that defendants be cited to appear and answer, and that upon final trial hereof ARY Jewelers, L.L.C. have the following: (1) judgment against defendants declaring that (a) the Stock Purchase Agreement between ARY Jewelers and the Krigel Trust, dated November 21, 2000 is null and void; (b) ARY Jewelers is relieved of any obligation to perform the terms of the Stock Purchase Agreement; (c) ARY Jewelers is entitled to the release and return of the $50,000.00 currently held in escrow by Assured Quality Title Company, which had been contemplated as the consideration for the transfer of Krigel's, Inc. stock along with an order directing Assured Quality Title Company to release said funds to ARY Jewelers; (d) ARY Jewelers is entitled to the release and

WA 590935.2

ARY - 00629

return of the $1,450,000.00 currently held in escrow by Assured Quality Title Company, which had been contemplated as the consideration for Scott Krigel's consulting services and noncompetition agreement along with an order directing Assured Quality Title Company to release said funds to ARY Jewelers; (e) defendants Kashi and Todisco are not third party beneficiaries of the SPA, and are not entitled to any recovery by virtue of the SPA; and, (2) that ARY Jewelers, L.L.C. be awarded and costs and reasonable attorneys' fees in connection with the preparation, filing, and prosecution of this suit; and, (3) for all other relief to which they may be justly entitled.

## Demand for Jury Trial

COMES NOW plaintiff ARY Jewelers, L.L.C., and pursuant to K.S.A. 60-238(b), hereby demands a trial by jury of all issues herein.

Respectfully submitted,

SPENCER FANE BRITT & BROWNE LLP

*/s/ Barry L. Pickens*

Scott J. Goldstein
Barry L. Pickens          KS #15822
1000 Walnut Street, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 (fax)

John B. Beckworth
Joseph G. Thompson, III
WATT, BECKWORTH & CARRIGAN, L.L.P.
1010 Lamar, Suite 1600
Houston, Texas 77002
(713) 650-8100
(713) 650-8141 (fax)

ATTORNEYS FOR ARY JEWELERS, L.L.C.

ARY - 00630