

*12-11-01*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| M. FABRIKANT & SONS, INC., <br> LEER GEM, LTD., <br> AM-GOLD PRODUCTS, INC., <br> SOL GREENBERG & SONS, <br> WITTNAUER INTERNATIONAL, INC., <br> BULOVA WATCH CORPORATION, and <br> DOV SCHWARTZ, INC., <br><br> Plaintiffs, <br> vs. <br><br> ARY JEWELLERS, L.L.C., <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § Case No. 01-0671-CV-W-5 <br> § <br> § <br> § <br> § <br> § |

## DECLARATION OF HAJI ABDUL RAZZAK YACOOB

I, Haji Abdul Razzak Yacoob, state as follows:

"My name is Haji Abdul Razzak Yacoob. I am over eighteen year of age, of sound mind, and competent to make this declaration. The facts stated herein are based on my personal knowledge.

I am, and have been since its formation, a principal in offshore companies which provided the initial financial capital to ARY Jewelers, L.L.C ("ARY"). In this role, I have been interested in the negotiations made the basis of this lawsuit and I have been in contact with Mr. Gohar Husain and others who were involved in the negotiations. I have reviewed an affidavit of Scott W. Krigel, dated June 25, 2001, on file herein.

Mr. Kirgel's affidavit states that ARY agreed that even in the event acceptable financing was not available from Foothill Capital Corporation ("Foothill"), ARY would close on the Stock Purchase Agreement by supplying the initial fund needed to buy Foothill out. This is not correct.

Mr. Gohar Husain was the Manager of ARY from the time of its formation through March of 2001. In my role of leading the financial backing of ARY, there were certain financial parameters set for the funding which would be provided to ARY in its proposed purchase of Krigel's, Inc. The Stock Purchase Agreement was entered into in accordance with these parameters, and Mr. Husain had authority to enter in the Stock Purchase Agreement on behalf of ARY.

ARY - 00576

EXHIBIT
F

It was our companies' intent to provide ARY with the financial capital to complete the purchase of Krigel's, Inc. as described in the Stock Purchase Agreement. It was my understanding of the Stock Purchase Agreement that if evidence of adequate financing, specifically from Foothill Capital Corporation, was not obtained by December 19, 2000, the Stock Purchase Agreement, along with any other related agreements would be void and of no further effect. This was a necessary condition for our companies' financial backing of this transaction for ARY and at no time was Mr. Husain, or ARY, financially authorized to enter into a transaction for the purchase of Krigel's, Inc. without Foothill's consent to continued financing.

At all times, ARY insisted on continued financing from Foothill, because it would have raised the price of the transaction by several million dollars above ARY's financial limits if ARY was obligated to "buy out" Foothill's position with cash. At no time did I agree, or to my knowledge did ARY agree to waiver of the financing contingency in Paragraph 4(c) of the Stock Purchase Agreement.

At no time have I been informed by Mr. Husain that he ever waived the financing contingency, or agreed to any modification of the Stock Purchase Agreement which would have dispensed with the financing requirement. Mr. Husain has repeatedly assured me that at no time did he make such an agreement, or in any way commit ARY to close on the Stock Purchase Agreement absent financing from Foothill.

The ARY financial backing for the Krigel's, Inc. project was not without limits. ARY did not and would not agree to the transaction if additional cash was required, and the language of Paragraph 4(c) was intended to protect ARY in the event that financing from Foothill was not available by terminating ARY's obligation under the Stock Purchase Agreement, as well as the related Consulting and Non-Competition Agreement with Scott Krigel. It was not my understanding or intent that this provision should be waivable by any party other than ARY, because it operated solely to the benefit of ARY.

I understand that Foothill did not consent to continued financing, either prior to December 19, 2000, or at any time subsequent to that date. To my understanding, no terms of any potential amended or subsequent agreement were ever discussed, no contract was drafted, and no party ever sought permission from the Bankruptcy Court to amend the Plan of Reorganization to accommodate such a change. To my understanding, neither I nor any representative of ARY, have reviewed or signed any document purporting to make such a new agreement. Mr. Husain was never authorized to make any representation to any party which would waive ARY's rights to insist that the financing condition be satisfied.

After the termination of the Stock Purchase Agreement on December 19, 2000, we did agree to the parties' continued work on obtaining acceptable financing from Bank. It was ARY's hope that the Stock Purchase Agreement could be revived if acceptable financing was available. On numerous occasions, ARY notified Mr. Sanford Krigel, counsel for the Debtor, and the other parties to the bankruptcy that extensions were necessary for the specific reason that work on financing could be continued. Specifically:

ARY - 00577

(1) ARY requested a continuance of the March 5, 2000 confirmation hearing so that financing could be arranged, and notified all parties that consent had not yet been obtained from Foothill. The Debtor refused to consent to the continuance, and the Court denied ARY's motion;

(2) ARY requested a continuance of the March 15, 2000 effective date for the same reason. The Debtor consented to extend the date until March 30, 2000; and,

(3) ARY requested an extension of the March 30, 2000 effective date, again because financing was not in place. The Debtor would not consent to the extension, and the Court denied ARY's request.

On each occasion, ARY stated that Foothill had not consented to continued financing of Krigel's, Inc., and on each occasion ARY told the parties that it was unwilling to close unless acceptable financing could be obtained.

In my personal meetings with Mr. Krigel, I never agreed to any modification of the Stock Purchase Agreement which would have waived the financing contingency, nor would I have agreed to such a change. Furthermore, at no time in my discussion with Mr. Krigel or representative of Foothill, which were occurring as late as April 2001, did any party indicate that such a representation had been made to them. Indeed, the foundation of all of the discussions between Foothill, ARY and Mr. Krigel in February, March and April of 2001 was the fact that continued financing was an absolute prerequisite to closing the transaction.

The funds currently frozen in the Bank of Blue Valley and the Habib Bank were supplied for investment in ARY by companies in which I am a principal. The remaining funds, which total in excess of five hundred thousand dollars ($ 500,000), were left in the United State in anticipation of making investment and facilitating ARY's efforts to succeed.

As a consequence of the restraining order, ARY cannot conduct any business operations of any type. The frozen funds constitute 100% of ARY's assets. The restraining order effectively puts ARY out of business.

As a consequence of the failure of Foothill to consent to financing, and the resulting failure of this transaction, ARY will not recoup any of its expenses, which amount to several hundred thousand dollars, all to the great loss of ARY's financial backers. ARY complied with all conditions precedent to this transaction, including funding over eight million dollars ($ 8,000,000) into United State bank accounts to fund the escrow account for Mr. Krigel, to provide evidence of financial ability to pay the claims of the unsecured creditors, and to provide initial operating capital. ARY worked to salvage the defunct Stock Purchase Agreement from December of 2000 through March of 2001 when it cooperated in efforts to secure adequate financing and complete the transaction. It was only when it became clear that financing was unlikely to be available, and that Mr. Krigel would attempt to compel ARY to close without financing, that the bulk of the funds were removed from the Bank of Blue Valley and the Habib Bank. It was always my hope that the transaction could be salvaged and it was only when it appeared that financing was not available, and Mr. Krigel might

ARY - 00578

insist on attempting to compel ARY to close despite the failure of the financing contingency, that the funds were withdrawn.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the __1st__ day of __August__, 2001.

_____
Haji Abdul Razzak Yacoob

ARY - 00579