KRIGEL'S INC., -vs-

ARY JEWELERS, LLC

THOMAS F. MORGAN

MAY 21 & 22, 2001

JOHN M. BOWEN & ASSOCIATES - (816) 421-2876




---

**Page 1**

```
         IN THE UNITED STATES BANKRUPTCY COURT
              WESTERN DISTRICT OF MISSOURI,
                    WESTERN DIVISION
                    _____

In Re:                    )
                          )
KRIGEL'S, INC.,           )  No. 01-40276-11-JWV
                          )
         Debtor.          )
_____)
KRIGEL'S, INC.,           )
                          )
         Plaintiff,       )
                          )
         -vs-             )  Adv. Pro. No. 01-4089
                          )
ARY JEWELERS, LLC,        )
                          )
         Defendant.       )
_____)
```

THE DEPOSITION OF THOMAS F. MORGAN, produced, sworn, and examined on behalf of the Defendant, pursuant to the following stipulation, between the hours of eight o'clock in the forenoon and six o'clock in the afternoon of Monday, May 21, 2001, at the law offices of Husch & Eppenberger, 1200 Main Street, Suite 1700, in the City of Kansas City, in the County of Jackson, and State of Missouri, before me,

LEA ANN MARTIN, C.S.R., R.P.R.,
of
JOHN M. BOWEN & ASSOCIATES
Shorthand Reporters

a Notary Public, in a certain cause now pending in the United States Bankruptcy Court of Missouri, Western Division, wherein Krigel's Inc., is the Debtor, KRIGEL'S, INC. is the Plaintiff, and ARY JEWELERS, LLC is the Defendant.

APPEARANCES:

For the Debtor            Krigel & Krigel
and Plaintiff:            4550 Belleview
                          Kansas City, MO 64111
                          By: Mr. Sanford P. Krigel

---

**Page 2**

APPEARANCES:

For the Defendant:        Spencer, Fane, Britt &
                          Browne
                          1000 Walnut Street
                          Suite 1400
                          Kansas City, MO 64106-2140
                          By: Mr. Barry L. Pickens

                          Watt, Beckworth & Carrigan
                          1010 Lamar
                          Suite 1600
                          Houston, TX 77002
                          By: Mr. John B. Beckworth
                              and
                              Mr. Joseph Thompson, III

For Foothill Capital:     Goldberg, Kohn, Bell, Black,
                          Rosenbloom & Moritz
                          55 E. Monroe Street
                          Suite 3700
                          Chicago, IL 60603-5802
                          By: Mr. William C. Meyers

                          Husch & Eppenberger
                          1200 Main Street, Suite 1700
                          Kansas City, MO 64105
                          By: Mr. Mark T. Benedict

For The Official          Lathrop & Gage
Committee of              2345 Grand Boulevard
Unsecured Creditors:      Suite 2800
                          Kansas City, MO 64108
                          By: Mr. Stephen B. Sutton

For Gohar Husain:         Merrick, Baker & Strauss
                          700 Peck's Plaza
                          1044 Main Street
                          Kansas City, MO 64105
                          By: Mr. Bruce E. Strauss

For Abdul Razzak          Walters, Bender, Strohbehn &
Yacoob:                   Vaughan
                          1100 Main Street, Suite 2500
                          Kansas City, MO 64105
                          By: Mr. Thomas V. Bender

Also present:             Mr. Scott Krigel

---

**Page 3**

STIPULATION

Before the taking of the within deposition, the parties, by their counsel, stipulated that the same may be taken at this time in shorthand and thereafter typed, signed and regularly filed in the case, with the same force and effect as if Notice had been given, subject to objections as to competency, relevancy and materiality.

It is further stipulated and agreed by and between the parties hereto that presentment to the attorneys of record of a copy of this deposition shall be considered submission to the witness for his signature within the meaning of the Missouri Rules of Civil Procedure, to be signed by the witness before or at the time of trial of this case. If not signed before the time of trial, this deposition can be used as though signed.

---

**Page 4**

INDEX

| WITNESS: | PAGE: |
|---|---|
| THOMAS F. MORGAN | |
| Direct Examination by Mr. Pickens | 7 |

| EXHIBITS MARKED FOR IDENTIFICATION: | PAGE: |
|---|---|
| Exhibit No. 1.  7/31/98 Loan and Security Agreement | 6 |
| Exhibit No. 2.  Amendment No. 1 | 60 |
| Exhibit No. 3.  Amendment No. 2 | 62 |
| Exhibit No. 4.  Amendment No. 3 | 66 |
| Exhibit No. 5.  1/23/01 Loan and Security Agreement with DIP | 91 |
| Exhibit No. 6.  12/15/00 emergence financing letter to Gohar Husain | 116 |
| Exhibit No. 7.  1/18/01 letter to Thomas Morgan | 133 |
| Exhibit No. 8.  1/30/01 letter to Thomas Morgan | 134 |
| Exhibit No. 9.  1/31/01 emergence financing letter to Gohar Husain | 135 |
| Exhibit No. 10.  2/1/01 e-mail from Scott Krigel | 139 |
| Exhibit No. 11.  3/20/01 emergence financing letter to Gohar Husain | 165 |

Page 141

1  Q. (By Mr. Pickens) Focusing on the terms in
2     Exhibit 9 and in relevant part Exhibit 6 with
3     the exception of paragraph 9, did Scott Krigel
4     ever complain to you about the million dollar
5     minimum availability requirement at all times?
6  A. No.
7  Q. Did he ever tell you that it was a bit
8     restrictive?
9  A. No.
10 Q. Did he ever make comments about these terms at
11    all to you?
12 A. Not that I can recall.
13 Q. Did he make comments to anyone else at Foothill
14    Capital that you're aware of regarding these
15    terms?
16 A. Not that I'm aware of, no.
17 Q. Did he ever tell you that the rate proposed in
18    paragraph 3 was well above market rate?
19 A. No.
20 Q. Did he ever tell that you the covenants in
21    paragraph 8 were too open-ended?
22 A. No.
23 Q. Actually, in paragraph 8 of this term sheet you
24    reserved the right to impose covenants in
25    addition to the two covenants that were imposed

Page 142

1     on Krigel's under the existing facility; isn't
2     that right?
3  A. That's correct.
4  Q. So that's another difference between the terms
5     set forth in Exhibits 6 and 9 from the original
6     facility with Krigel's, is it not?
7  A. Yes.
8  Q. Did he ever tell you that he thought that the
9     auditing fees were outrageously high --
10 A. No.
11 Q. -- at $750 a day?
12 A. No.
13 Q. Did he ever tell you that he thought that they
14    should be capped under this term sheet the same
15    way they were under the existing credit
16    facility?
17 A. Not that I can recall.
18 Q. You don't remember any comments from Scott
19    Krigel about the terms in Exhibits 6 or 9 at
20    all?
21 A. No.
22 Q. Do you remember anyone else making comments
23    about the terms of the term sheet in either
24    Exhibit 6 or Exhibit 9?
25    MR. MEYERS: Ever?

Page 143

1  Q. (By Mr. Pickens) Ever.
2  A. I can't state specifically. I'm sure that I had
3     conversations relative to various terms, but I
4     couldn't speculate as to what they were.
5  Q. What meetings do you remember having about
6     Exhibit 9? Let's start there.
7  A. Really nothing material. The deal was very
8     similar to the existing deal albeit there were
9     some differences, but there was really nothing
10    that was materially different than the facility
11    that we had in place, so, I mean, it was a very
12    similar facility to the one that was in place
13    and there wasn't a heck of a lot of discussion,
14    to be honest with you.
15 Q. At some point in time ARY made it known to you
16    they wanted to change some of the terms in the
17    proposed term sheet; isn't that correct?
18 A. Which term sheet are you referring to?
19 Q. Either Exhibit 6 or Exhibit 9 which I think
20    you've told me are the same exhibit for
21    Exhibit 9.
22 A. Actually, no, they did not comment in either one
23    of these exhibits, 6 or 9, with regard to
24    changes.
25 Q. Well, at some point in time, and I believe it's

Page 144

1     March 20th, you can correct me if I'm wrong, you
2     issued a new term sheet; did you not?
3  A. Yes, I did.
4  Q. And presumably that was because someone made you
5     aware that ARY wasn't going to accept the terms
6     in the December 15th term sheet as extended in
7     Exhibit 9; isn't that correct?
8  A. No, it's not.
9  Q. What prompted you to issue a different term
10    sheet?
11 A. The reason we issued a different term sheet was
12    because we had come across some information from
13    a competitor of ours that was unfavorable and
14    painted a picture of some activities that ARY
15    may or may not have been involved in that made
16    us nervous. That's why we issued the new term
17    sheet.
18 Q. And you came across that information from a
19    competitor approximately February 28th of 2001;
20    isn't that correct?
21 A. That's correct.
22 Q. When were you first made aware that ARY was
23    talking to your competitors about the emergence
24    financing facility?
25 A. Same time.