UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

----------------------------------------x
ARY JEWELERS, LLC,                      :
                                        :
                    Plaintiff,          :     CV: 04-10281-EFH
                                        :
IBJTC BUSINESS CREDIT CORPORATION       :
and DAVID MOLINARIO,                    :     AFFIDAVIT OF STEVEN COLE
                                        :
                    Defendants.         :
----------------------------------------x

STATE OF CALIFORNIA    )
                       )  ss.:
COUNTY OF LOS ANGELES  )

STEVEN COLE, being duly sworn, deposes and says:

1. I am employed as a Senior Credit Officer in the Pasadena, California office of Wachovia Capital Finance, a specialty finance company. From September 1995 through November 2001, I was a Senior Vice President in the Boston, Massachussets office of Foothill Capital Corporation ("Foothill"), also a specialty finance company.

2. At Foothill, I had responsibility for existing relationships with borrowers and for negotiating credit facilities with new borrowers. One of the existing accounts for which I had responsibility was Krigel's, Inc. ("Krigel's"), which operated a chain of jewelry stores. Foothill initially provided a secured credit facility to Krigel's in 1998, and was Krigel's principal lender from that time through the time of the events discussed below. Krigel's stock was beneficially owned by Scott Krigel, the company's president.

3. In 2000, Krigel's was having serious financial problems. In November 2000, I learned that Scott Krigel had entered into a Stock Purchase Agreement (the "SPA") to sell Krigel's to ARY Jewelers, LLC ("ARY"), the plaintiff in this action. I also learned that Krigel's

intended to file a "prepackaged" Chapter 11 bankruptcy and to emerge from bankruptcy with ARY as Krigel's new owner. At the time the SPA was signed, Krigel's owed approximately $8.5 million to Foothill.

4. Shortly after the SPA was signed, Mr. Gohar Husain of ARY and Scott Krigel approached Foothill. They asked whether we would continue to finance Krigel's, after it emerged from bankruptcy, on the same terms in the then-existing Foothill-Krigel's credit facility.

5. Because of Krigel's distressed financial condition and highly uncertain prospects, I decided that Foothill would not finance ARY/Krigel's under the same terms Foothill had previously provided to Krigel's. But Foothill presented a new financing proposal (term sheet) to ARY, dated December 15, 2000 (the "December Proposal"), with terms that differed from those in the then-existing Krigel's credit facility. Among other differences, the December Proposal contained a lower borrowing limit, different loan-to-inventory ratios, and contained borrower covenants that were not in the existing credit facility. A copy of the December Proposal is annexed hereto as Exhibit A.

6. The December Proposal was not a commitment to lend. Rather, as stated in the first paragraph of the proposal, any commitment to lend "would be subject to, among other things, [Foothill's] Credit Committee approval."[1] This same condition applied to all of the other credit proposals made to ARY by Foothill discussed below.

7. In late January or early February 2001, I was advised by Mr. Husain and Mr. Krigel that ARY had accepted a term sheet presented by IBJ Whitehall, the name by which I knew the corporate defendant in this action. Mr. Husain said that IBJ Whitehall had made a

---

[1] Foothill's "Credit Committee" was a committee of senior officers to which all proposed credit facilities had to be presented for approval. Absent such approval, no commitment to lend would be made.

2709757_2.DOC

- 2 -

proposal which ARY viewed as more favorable than Foothill's. I was told that IBJ Whitehall's facility would be a "refinancing" that would result in the repayment of Foothill's outstanding loan to Krigel's, and provide post-bankruptcy working capital for ARY/Krigel's.

8.  In early March 2001, I was advised by Tom Morgan, a junior loan officer at Foothill who reported to me, that IBJ Whitehall would not be providing financing to ARY/Krigel's. Mr. Morgan said that IBJ Whitehall had declined to proceed because a routine background check had uncovered two news articles concerning criminal charges that had been brought against ARY's chairman and principal owner, Haji Abdul Razzak. Mr. Morgan provided me with copies of the articles.

9.  Gohar Husain and representatives of Krigel's subsequently contacted Foothill to renew discussions about Foothill financing ARY/Krigel's post-bankruptcy.[2] Thereafter, I met with Mr. Husain and Mr. Razzak and discussed with them the criminal charges referenced in the news articles Foothill had received. I also reviewed an updated business plan for Krigel's, as well as updated sales and revenue figures for the company. This updated information showed continued deterioration in Krigel's business, that it was not meeting its most recent sales projections, and that its future sales almost certainly would be lower than previously projected.

10. As a result of the material I reviewed, I decided that Foothill should revise some of the terms of the December Proposal we had previously given to ARY. Accordingly, on March 20, 2001, Foothill presented a revised proposal to ARY (the "March 20 Proposal"). The criminal charges against Mr. Razzak played no part in the March 20 Proposal and did not cause Foothill to make any changes to the December Proposal.

---

[2] Krigel's filed a Chapter 11 bankruptcy petition in January 2001.

11. After receiving the March 20 Proposal, Mr. Husain requested certain changes to it, to which I agreed. To memorialize these changes, Foothill presented ARY with a revised proposal, dated March 27, 2001 (the "March 27 Proposal"). A copy of the March 27 Proposal is attached hereto as Exhibit B. Like each of the earlier proposals Foothill had presented to ARY, the March 27 Proposal's terms and conditions differed from those in the Foothill-Krigel's credit facility in effect when the SPA was signed in November 2000.

12. On April 6, 2001, I received a fax transmission from Scott Krigel's attorneys requesting that Foothill offer ARY financing "under the same terms and conditions as Krigel's had with Foothill last November." The fax included a copy of a letter dated March 28, 2001 from Mr. Razzak of ARY to Scott Krigel. The letter stated that ARY would consummate the SPA only if Foothill agreed to finance ARY/Krigel's under the "same terms and conditions" as had previously been provided to Krigel's. A copy of the April 6, 2001 transmission is annexed hereto as Exhibit C.

13. For the reasons explained in paragraph 5 above, Foothill was not willing to provide ARY/Krigel's "same terms" financing. Foothill advised Krigel's of this, and we heard nothing further from ARY. I understand that ARY subsequently refused to consummate the SPA.

14. I wish to make it clear that Foothill's unwillingness to offer "same terms" financing to ARY/Krigel's had nothing to do with IBJ Whitehall or the criminal charges against Mr. Razzak. Rather, as explained above, I was unwilling to offer "same terms" financing in December 2000 for economic reasons, well before I knew of the charges against Mr. Razzak or IBJ Whitehall's decision not to extend financing to ARY.

15. As a result of ARY's termination of its discussions with Foothill, no financing proposal for ARY/Krigel's was ever presented to Foothill's Credit Committee. As previously discussed, the approval of that committee would have been required before any commitment to lend to ARY/Krigel's could have been made by Foothill. If such a proposal had been presented to the Credit Committee, one can only speculate as to whether it would have been approved.

16. Consistent with its customary practice, and the practice of lenders generally, before committing to any lending facility for ARY, Foothill would have performed its own background check of ARY and its principals. The background check would have included, among other things, a search of media databases. I have no doubt that this background check would either have revealed the very same news articles that IBJ Whitehall had sent to Foothill, and/or other news reports about the criminal charges filed against Mr. Razzak.

_____
STEVEN COLE

Sworn before me, NORMAN RENEAU,
this 26 day of JULY, 2005.

_Norman F. Reneau_
NOTARY PUBLIC

NORMAN F. RENEAU
Commission # 1472732
Notary Public - California
Los Angeles County
My Comm. Expires Feb 26, 2008

Affidavit of Steven Cole.DOC