December 15, 2000

**Foothill.**

Mr. Gohar Husain
ARY Jewelers, LLC

Re: Emergence Financing Proposal Letter

Dear Mr. Husain:

In accordance with Foothill Capital's discussions with Stuart Fetter and Scott Krigel, President of Krigels Jewelers it is Foothill's understanding that ARY, LLC's intends to purchase 100% of the stock of Krigel's Jewelers. This is further evidenced by the execution of that certain "Stock Purchase Agreement" dated November 21, 2000. It is Foothill's understanding that Krigel's Jewelers anticipates filing for Chapter 11 protection on or about January 15, 2001 and will exit shortly thereafter under the ownership of ARY, LLC. Please let this letter serve as an expression of Foothill Capital's interest in reviewing the opportunity to provide the emergence financing for Krigel's Jewelers under ARY, LLC's ownership, but should not be considered a commitment to lend. Any commitment to lend would be subject to, among other things, Foothill Capital's Credit Committee approval. The proposed financing arrangement would be as follows:

1. **Maximum Credit Facility**: *$12,000,000*

    (a) **Working Capital Revolving Line (the "Line")**: An amount up to the Maximum Credit Facility (less the amounts outstanding under the Accounts Receivable Sub-Line and L/C Sub-Line) subject to the inventory-borrowing base as outlined below.

    (b) **Inventory Borrowing Base**: The lesser of; i) 70% of the cost of eligible inventory net of customary reserves or ii) 90% of the Net Retail Liquidation Value ("NRLV") as updated periodically by an appraiser acceptable to Foothill. The borrower may (with 10 days written prior written notice) request an increase of the inventory advance to 75% (not to exceed 95% of Net Retail Liquidation Value) rate for one consecutive 90 day period in each calendar year.

    (c) **Accounts Receivable Sub-Line**: Advances on 80% of eligible accounts receivable (not to exceed $5,000,000 under the maximum credit facility) less 1% for each percentage point in which dilution exceeds 10%. At no time shall the loan outstanding on the accounts exceed A/R collections for the previous 90-day period.

Foothill Capital Corporation
617-624-4400
One Boston Place, 18th Floor, Boston, MA 02108
A **WELLS FARGO** Company

# 269444.v02 5/11/01 5:42 PM 5rwk02!.DOC

F 00357

**EXHIBIT A**

ARY - 01109

December 15, 2000
Page 2

- (d) **Letter of Credit Subline**: Up to *$3,000,000* would be available for the issuance and/or guaranty of Letters of Credit. All such Letters of Credit issued will be reserved on a 100% basis.

- (e) **Minimum Availability Requirement**: $1,000,000 at all times.

2. **Purpose**:

Loan proceeds would be used for the re-payment of the existing DIP facility and for post emergence general corporate purposes, including the financing of working capital needs and payment of amounts due under the Borrower's Plan of Re-organization.

3. **Interest Rate**:

The rate of interest charged on the Line would be one and one-quarter percent (1.25%) above the present and future Reference Rate publicly announced from time to time by Wells Fargo Bank. Interest would be calculated on the basis of a three hundred sixty (360) day year on actual days elapsed and would be payable monthly in arrears. At no time would interest charged on the Line be less than seven percent (7.00%). The default rate of interest would be 3.0% above the applicable rate at the time of default.

4. **Facility/Maintenance Fees**:

- (a) **Emergence Financing Fee**: A fee of $120,000 shall be earned in full and payable at the date of closing.

- (b) **Unused Line Fee**: A fee of 0.375% per annum, payable monthly would be charged for the average daily-unused portion of the Line.

- (c) **Letter of Credit Guaranty Fee**: A fee equal to one and three quarters percent (1.75%) per annum of the actual amount of guaranties issued, plus issuing bank charges, would be payable monthly in arrears.

- (d) **Servicing Fee**: A monthly Collateral Management fee of $2,000 would be earned and payable monthly, in arrears.

5. **Collections / Receipts**:

Collections would be remitted to one or more lockboxes that would be assigned to and in form satisfactory to Lender   all collections would be subject to a one (1)-business day clearance charge. Such clearance charge would be for interest

Foothill Capital Corporation
617-624-4400
One Boston Place, 18th Floor, Boston, MA 02108

F 00358

A **WELLS FARGO** Company

ARY - 01110

December 15, 2000
Page 3

calculation purposes only and there would be no delay in the crediting of such collections for the purpose of calculating borrowing availability.

6. **Loan Maturity and Prepayment:**

The Credit Facility would mature three (3) years ("Maturity") from the emergence loan closing date. Termination of the loan prior to Maturity would result in a prepayment fee equal to a percentage of the Maximum Credit Line ($12MM) as follows; year one (3.00%), year two (2.00%) and year three (1.00%), plus 102% of all undrawn Letters of Credit.

7. **Security:**

As collateral for this financing agreement, Lender would have a first priority perfected security interest in all of Borrower's assets including, but not limited to: accounts receivable; inventory; trademarks and trade names; fixed assets; leasehold interests and real property and such other assets, tangible or intangible, real or personal as Lender designates.

8. **Covenants:**

Borrower would be required to maintain financial and collateral covenants that are typically used by Lender in similar retail transactions and may include, Minimum and Maximum Inventory levels, Gross Margin test, Purchases test, Maximum Capital Expenditures, EBITDA as well as other such tests. The covenants would be developed as a result of Lenders due diligence process and will be based off a discount of Borrower's, historic and projected operating performance.

9. **Closing Date:**

If the transaction contemplated by this letter is not consummated on or before February 28, 2001, then the terms and conditions set forth herein shall expire, without further notice or act of any kind by Lender or any other party.

10. **Conditions Precedent:**

The following are some, but obviously not all, of the conditions precedent to any loan approval by Lender to Borrower:

(a) Borrower and any subsidiaries and affiliates shall be qualified to do business in any states where they have collateral.

Foothill Capital Corporation
617-624-4400
One Boston Place, 18th Floor, Boston, MA 02108

A **WELLS FARGO** Company

F 00359

ARY - 01111

December 15, 2000
Page 4

    (b)    The UCC financing statements, fixture filings, deeds of trust or mortgages and related documents regarding the collateral (as applicable) shall have been recorded in all appropriate jurisdictions. Lender shall have received written notification reflecting same.

    (c)    Loan origination costs including, but not limited to, audit fees, attorneys' fees, search fees, appraisals, documentation and filings, shall be paid by Borrower.

    (d)    Completion of an updated field survey by Lender's examiners as well as an updated appraisal, which results are to be acceptable to Lender.

    (e)    Borrower shall have executed and delivered such documents, instruments, security agreements, insurance, financing statements, corporate guarantees, verifications, non-offset letters, tax lien and litigation searches, good standing certificates, copies of building leases, landlord's waivers, trust deeds or mortgages, opinions of counsel and done such other acts a Lender may request in order to obtain Lender's legal approval to effect the completion of the financing arrangements herein contemplated. All of the foregoing must be in a form satisfactory to Lender and Lender's counsel, all loans and advances shall be made pursuant to, and subject to, the terms of financing documents executed at the closing.

    (f)    Approval of Foothill Capital's Sr. Credit Committee.

    (g)    Satisfactory review of ARY, LLC's business plan as it relates to the purchase of 100% of the stock of Krigel's Jewelers.

    (h)    No material adverse change in the business, operations, profits or prospects of Borrower shall have occurred since the date of the Commitment.

    (i)    Borrower shall, at loan closing, have minimum unused loan availability of $2,000,000.

    (j)    Borrower's Plan of Re-organization shall be on terms acceptable to Lender. The Plan of Reorganization shall have been confirmed by a final order entered by the Bankruptcy Court (the "Confirmation Order"), in form and substance acceptable to Lender in its sole discretion, and which has not been stayed by the Bankruptcy Court or by any other court having jurisdiction to issue any such stay. The Confirmation Order shall have been entered upon proper notice to all parties to be bound by the Plan of Reorganization, all as may be required by the Bankruptcy Code, the

December 15, 2000
Page 5

Federal Rules of Bankruptcy Procedure, and any applicable local bankruptcy rules. Moreover, the time to appeal the Confirmation Order or to seek review, rehearing, or certiorari with respect to the Confirmation Order must have expired, no appeal or petition for review, rehearing, or certiorari with respect to the Confirmation Order may be pending, and the Confirmation Order must otherwise be in full force and effect.

11. **Periodic Loan Maintenance Charges**:

Borrower would be periodically charged for due diligence, loan maintenance, audit and appraisal costs.

12. **Loan Origination Costs**:

In connection with the request for financing, Borrower understands that it will be necessary for Lender to make certain financial, legal and collateral investigations and determinations. Borrower agrees to pay for all of Lender's reasonably incurred costs and expenses incurred in connection with the proposed financing transaction including costs and expenses incurred by auditors and appraisers in verifying Borrower's records, Lender's reasonable legal expenses for advice in preparing documents in connection with the proposed loan, and any filing and search fees and Borrower shall obtain bankruptcy court approval for such costs and expenses which shall be entitled to priority as an administrative expense claim under Section 503(b)(1) of the Bankruptcy Code.

This discussion letter is for your benefit only and shall not create rights in favor of any other person or entity.

Sincerely,

FOOTHILL CAPITAL CORPORATION

Thomas F. Morgan
Vice President

Foothill Capital Corporation
617-624-4400
One Boston Place, 18th Floor, Boston, MA 02108

F 00361

A **WELLS FARGO** Company

ARY - 01113