UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

---------------------------------------------------x
                                                   :
ARY JEWELERS, LLC,                                 :
                                                   :
           Plaintiff,                              :
                                                   :   CA 04 CV 10281 (EFH)
    v.                                             :
                                                   :   AFFIDAVIT OF
IBJTC BUSINESS CREDIT CORP.                        :   FRANCIS D. O'CONNOR, JR.
AND DAVID MOLINARIO,                               :
                                                   :
           Defendants.                             :
                                                   :
---------------------------------------------------x

FRANCIS D. O'CONNOR, JR., being sworn, states as follows:

1. I submit this affidavit at the request of defendants' attorneys in support of defendants' motion for summary judgment. I previously testified by deposition in this case. None of my deposition testimony is inconsistent with the facts set forth below, of which I have personal knowledge except where otherwise stated.

2. I am employed at Wells Fargo Retail Finance in Boston as the Director of Portfolio and Underwriting. From 1999 to 2002, I was employed by IBJTC Business Credit Corporation ("IBJ") as a senior vice president. I understand that IBJ's assets were sold to Webster Bank in 2002.

3. IBJ was in the business of providing secured financing to retail businesses. As a senior vice president, I had general supervisory responsibility for IBJ's lending activities. Defendant David Molinario was an assistant vice president at IBJ who reported to me.

3120188_1_2.doc

4.   In early 2001, IBJ was asked if it would consider providing financing to Krigel's Inc. ("Krigel's"), which operated a chain of jewelry stores in the midwestern United States, upon its emergence from bankruptcy. IBJ was advised that Krigel's had filed, or would soon be filing, a bankruptcy petition, and that it planned to emerge from bankruptcy as a reorganized company under the ownership of plaintiff ARY Jewelers, LLC ("ARY"). Information provided to IBJ showed that ARY was part of the ARY Group, a conglomerate based in Dubai, in the United Arab Emirates.

5.   IBJ was provided a copy of the Stock Purchase Agreement signed by ARY and Scott Krigel in November 2000, which set forth the terms under which ARY had agreed to purchase Krigel's stock. A copy of the Stock Purchase Agreement is annexed hereto as Exhibit A. IBJ was advised that Krigel's secured lender, Foothill Capital Corporation ("Foothill") was owed approximately $8 million, and that the financing requested from IBJ would be used, among other things, to pay off the Foothill loan.

6.   After IBJ's initial review of financial information and meetings with Mr. Gohar Husain of ARY and representatives of Krigel's, IBJ presented a "term sheet", dated January 24, 2001, to ARY and Krigel's. A copy of the term sheet is annexed as Exhibit B hereto. The term sheet was not a commitment to lend, but rather set forth the basic terms of a potential agreement pursuant to which IBJ would provide financing to Krigel's after it emerged from bankruptcy under ARY's ownership.

7.   IBJ's term sheet was signed by Mr. Krigel, and IBJ proceeded to work with representatives of ARY's and Krigel's in order to complete due diligence so that the terms of a proposed credit facility could be presented to IBJ's credit committee for approval. By mid February 2001, IBJ had completed its standard due diligence, with the exception of a

"background check" on ARY and its principals. Accordingly, IBJ requested LCF Associates of Braintree, MA, a vendor which frequently performed background checks for IBJ, to perform a background check on ARY and its principals.

8. Soon thereafter, I was provided with copies of certain Dow Jones Newswire articles which LCF had located concerning ARY. The articles are attached hereto as Exhibit C. They indicated that ARY's chairman, Mr. Razzak, and others associated with ARY, had been charged with illegally bribing senior officials in the Pakistan government in order to secure a gold import license which had been awarded to ARY. These charges had not previously been disclosed to IBJ.

9. After seeing the articles, I spoke with Gohar Husain of ARY about them. He was aware of the pending charges, and stated that the allegations were not true. However, he could not say when the matter might be resolved. After this call and internal discussion at IBJ, I decided that IBJ would not extend financing to ARY regarding the Krigel's transaction. IBJ formally notified ARY of its decision by letter dated February 28, 2001, which is attached hereto as Exhibit D.

10. As noted above, the financing being considered by IBJ would have been used, among other things, to pay off Krigel's $8 million debt to Foothill. Accordingly, as a professional courtesy to Foothill, I directed Mr. Molinario to advise Foothill that IBJ would not be proceeding with the financing due to a problem with the background check. After Foothill requested copies of the background check, I authorized Mr. Molinario to provide to Foothill copies of the Dow Jones articles provided to IBJ by LCF.

11. At the time of IBJ's communications with Foothill concerning IBJ's decision not to lend to ARY/Krigel's, I had no knowledge of any ongoing negotiation between

Foothill and ARY, much less any contemplated financing agreement between them. In fact, given that IBJ's term sheet had been accepted in January 2001, I believed that ARY was pursuing financing exclusively from IBJ. In my experience, once a prospective borrower accepts a term sheet from a lender, it deals exclusively with that lender and does not simultaneously seek financing elsewhere.

12. I had no intention to interfere with any potential financing transaction between Foothill and ARY. As discussed above, IBJ decided before communicating with Foothill not to finance ARY/Krigel's. Accordingly, IBJ had nothing to gain by interfering with a potential Foothill-ARY transaction.

_____
Francis D. O'Connor, Jr.

Sworn to before me this
2 day of August 2005

_____
Notary Public

MARGARET ARSENAULT
Notary Public
Commonwealth of Massachusetts
My Commission Expires
July 27, 2012