ORIGINAL

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARY Jewelers, LLC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04:-CV-10281 EFH |
| | ) | |
| IBJTC Business Credit Corp. and | ) | |
| David Molinario, | ) | |
| Defendants. | ) | |

## PLAINTIFF ARY JEWELERS, LLC.'S OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT


The Carrigan Law Firm, L.L.P.
Stephen P. Carrigan
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)

OF COUNSEL:

The Carrigan Law Firm, L.L.P.
Jill L. Groff
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
713) 739-0810 (telephone)
(713) 739-0821 (telefax)

Ashish Mahendru
1111 Bagby, Suite 2000
Houston, Texas 77002
(713) 571-1519 (telephone)
(713) 651-0776 (telefax)

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | DEFENDANTS FAIL TO MEET THE STANDARD FOR SUMMARY JUDGMENT ................................................................................. | | 1 |
| II. | TORTIOUS INTERFERENCE ........................................................................... | | 3 |
| | A. | Business Relationship or Contemplated Contract .................................... | 3 |
| | | 1. ARY's Evidence Satisfied this Element ..................................... | 3 |
| | | 2. Defendants' Arguments Fail ...................................................... | 4 |
| | B. | Defendants' had Knowledge About the Contemplated Contract ........... | 10 |
| | C. | Improper Purpose or Improper Means .................................................. | 13 |
| | D. | Damages/Causation ............................................................................... | 14 |
| III. | BREACH OF FIDUCIARY/CONFIDENTIAL DUTY ...................................... | | 16 |
| IV. | CLAIMS IN SECOND AMENDED COMPLAINT PRECLUDE SUMMARY JUDGMENT .................................................................................. | | 19 |
| V. | CAUSES OF ACTION AGAINST DEFENDANT MOLINARIO .................... | | 19 |
| VI. | CONCLUSION .................................................................................................. | | 19 |

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-34 (1st Cir. 2004) .... 5

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986) ............................................................................................ 2

*Bienkowski v. Northeastern University*, 285 F.3d. 138 (1st Cir. 2002) ................................ 2

*Boyle v. Douglas Dynamics, L.L.C.* 292 F.Supp.2d 198 (D. Mass. 2003) ............................3

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ...............................................................1

*Chrysler Corp. v. Silva*, 118 F.3d 56, 59 -60 (1st. Cir. 1997) ............................................... 5

*Cleveland v. Policy Management Systems Corp.* 526 U.S. 795, 796,
    119 S.Ct. 1597, 599) (U.S.1999)...................................................................................7

*Coke v. General Adjustments Bureau*, 640 F.2d 584 (5th Cir. 1981) ...................................... 2

*Fraser and Wise, P.C. v. Primarily Primates, Inc.*, 966 F.Supp. 63 (D.Mass.1996) .............2

*Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932 (1st Cir.1987) .........2

*Hurd v. DiMento & Sullivan*, 440 F.2d 1322 (1st Cir.), *cert. denied*,404 U.S. 862,
    92 S.Ct. 164, 30 L.Ed.2d 105 (1971) ........................................................................ 5

*In re Varrasso* 37 F3d 760, 763 (1st. Cir. 1994) ................................................................... 2

*Irby v. Bittick*, 44 F.3d 949 (11th Cir. 1995)

*Mutual Fire, Marine and Inland Insurance Co. v. Costa*, 789 F.2d 83 (1st Cir. 1986) ..... 15

*NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st. 1994) ............................................... 2

*Roadmaster Industries, Inc. v. Columbia Mfg. Co., Inc.*, 893 F.Supp. 1162(D.Mass.1995).2

*United States v. Levasseur,* 846 F.2d 786, 792 (1st Cir.1988) ............................................ .5

*United States v. Shea,* 150 F.3d 44, 52 (1st Cir.1998) ......................................................... .5

*Woodman v. Haemonetics Corp.*, 51 F.3d 1087 (1st Cir.1995) .......................................... 2

## STATE CASES

*Adcom Products, Inc. v. Konica Business Machines*, 41 Mass. App. Ct. 101,
668 N.E.2d 866 (1996) ............................................................................................. 3,4

*Cherick Distributors, Inc. v. Polar Corp.*, 41 Mass.App.Ct. 125,
669 N.E.2d 218 (1996) ............................................................................................. 15

*Djowharzadeh v. City Natl. Bank & Trust Co.*, (Okla. App. 1982), 646 P.2d 616 .............. 16

*Dowd v. Iantosca*, 27 Mass. App. Ct. 325, 538 N.E.2d 33(1988) ........................................ 4

*Groob v. Keybank*, 155 Ohio App. 3d 510, 801 N.E.2d 919 (2003) ................................... 16

*See G.S. Enterp., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991)...................... 14

*Keegan v. O'Donnell*, 310 Mass. 346, 37 N.E.2d 995 (1941) ............................................. .14

*Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 818-20,
678 N.E.2d 853, 857-58 (1997).............................................................................. 7

*Melo-Tone Vending, Inc. v. Sherry, Inc.*, 39 Mass. App. Ct. 315 (1995) ........................... 15

*M.F. Roach Co. v. Provincetown*, 355 Mass. 731, 732, 247 N.E.2d 377 (1969) ................ 15

*Paixao v. Paixao,* 429 Mass. 307, 309, 708 N.E.2d 91, 93 (Mass.1999)............................. 5

*United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 551 N.E.2d 20 (1990) ...........   4

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 56   .........................................................................   1

TO THE UNITED STATES DISTRICT COURT:

Plaintiff ARY Jewelers, LLC ("ARY") hereby files its opposition to Defendants' Motion for Summary Judgment because genuine issues of material fact exist, which preclude summary judgment. Pursuant to Local Rule 7.1(b)(2), the reasons and authority are set forth herein.    In compliance with Local Rule 56.1, ARY has submitted herewith a Statement of Material Facts as to Which There is a Genuine Issue to be Tried ("Statement of Facts"), with appropriate citations, which ARY incorporates herein. Finally, ARY has filed contemporaneously with the filing of this Response, ARY's Objections to Defendants' Motion for Summary Judgment Evidence and Motion to Strike, which it incorporates hereinARY hereby incorporates all affidavits, deposition testimony, and exhibits filed with this Response.

## ARGUMENT AND AUTHORITIES

## I.    DEFENDANTS FAIL TO MEET THE SUMMARY JUDGMENT STANDARD

Defendants have not met the strict summary judgment standard. The evidence in this case creates many genuine issues of material fact and the credibility of the witnesses figures prominently in the case. Both of these factors preclude summary judgment.    As this Honorable Court knows summary judgment is proper only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To obtain summary judgment Defendants must demonstrate the absence of a genuine issue of material fact by either: (1) submitting summary judgment evidence that negates the existence of a material element of the plaintiff's claims or (2) showing that there is no evidence to support an essential element of the plaintiff's claims. *Celotex Corp.*, 477 U.S. at 322-25. To determine if there

1

is a genuine issue of material fact, the Court must consider the summary judgment proof in the light most favorable to the non-movant and resolve all reasonable doubts about the facts in favor of the nonmovant. *Bienkowski v. Northeastern University*, 285 F.3d. 138, 140 (1st Cir. 2002). All reasonable inferences must be given to the non-movant. *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28 (1st. 1994). Additionally, summary judgment is inappropriate if court has to draw inferences not mandated by the record. *In re Varrasso* 37 F.3d 760, 763 (1st. Cir. 1994). The Court must deny the motion where there appears to be some evidentiary support for the disputed allegations. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Coke v. General Adjustments Bureau*, 640 F.2d 584, 595 (5th Cir. 1981)(en banc).

"On motion for summary judgment, the nonmoving party is entitled 'to have credibility of his evidence as forecasted assumed, his version of all that is in dispute accepted, [and] all internal conflicts [in the evidence] resolved favorably to him. . .'" *Greenburg v. Puerto Rico Maritime Shipping Authority*, 835 F.2d 932, 936 (1st Cir.1987)(citations omitted). The court cannot grant summary judgment where it must weigh the credibility of the witnesses. *Fraser and Wise, P.C. v. Primarily Primates, Inc.*, 966 F.Supp. 63, 70 (D.Mass.1996). And a court cannot resolve a credibility assessment in favor of the movant. *Woodman v. Haemonetics Corp.*, 51 F.3d 1087, 1091 (1st Cir.1995 ). Moreover, where state of mind is an element of a claim, "'summary judgment is vested with more than usual difficulty'. . . and typically resolution of such issues involves credibility determinations for the jury or factfinder." *Roadmaster Industries, Inc. v. Columbia Mfg. Co., Inc.*, 893 F.Supp. 1162, 1165 (D.Mass.1995)(citations omitted).

As set forth herein and in the Statement of Facts,  all of the "material facts" essential to Defendants' Motion and relied upon by Defendants are either untrue, made-up, or, at the very least

hotly disputed, all of which preclude granting of Defendants' Motion.

## II.    TORTIOUS INTERFERENCE

Defendants correctly state the elements of tortious interference, so ARY will not restate those elements here. ARY presents more than sufficient evidence on each of the foregoing elements of tortious interference to preclude summary judgment.

### A.    Business Relationship or Contemplated Contract

#### 1.    ARY's Evidence Satisfies this Element

Defendant rightly acknowledges that ARY need not prove that it had a binding contract with Foothill, but rather, need only prove a probable future relationship from which there is a reasonable expectancy of financial benefit. *See Boyle v. Douglas Dynamics, L.L.C.* 292 F.Supp.2d 198, 213 (D. Mass. 2003), *aff'd* 99 Fed.Appx. 243, 2004 WL 1171370 (1st Cir. 2004); *Adcom Products, Inc. v. Konica Business Machines*, 41 Mass. App. Ct. 101, 104, 668 N.E.2d 866, 869 (1996). Foothill had presented term sheets to ARY and issued extensions regarding the same. Morgan Depo. at 117 :9-22;128:6-129:7; 135:25-136:3; Ex. to Morgan Affidavit. The fact that Foothill offered the term sheets in and of itself shows a reasonable expectancy that there would be a contract for financing. More importantly, Foothill anticipated that it would be a fairly smooth road to close the deal. Morgan Depo., at 162:2-8. Tom Morgan believed that a loan contract between Foothill and ARY was probable. Morgan Affidavit. The process had proceeded to Senior Loan Committee, Morgan Depo., at 182:3-10, which indicates that no further due diligence was required. *See also* Nov. 7 letter attached to Tom Morgan Affidavit indicating the items necessary for the loan, which does not mention background check. Further evidence that Foothill was not going to require additional due diligence before Defendants' interference is evidenced by the addition of a due diligence requirement

3

to the March 27 term sheet. There was no such requirement on the December or January Proposals.
December and March Proposals. Prior to February 28, 2001, ARY representative Gohar Husain
orally accepted the January 31, 2001 Proposal (which was identical to the December Proposal except
in closing date and bankruptcy filing date). Morgan Depo. at 181:8-182:2;183:16-20. Additionally,
Mr. Razzak testified that ARY would have accepted the December Proposal if it were still available
at the end. Razzak Depo, at page. 61:3 - 63:6. Finally, the charges levied against ARY were
politically motivated and meaningless. Affidavit of Ijaz-Ul-Ahsan. It is intuitive (and an inference
can be drawn, which all inferences must be resolved in favor of non-movant) that ARY and Foothill
both contemplated entering into a credit facility. Even Defendants believed that a Foothill and ARY
contract was probable as reflected in Molinario's acknowledgment that he "assumed that Morgan
would be trying to retain the deal" Morgan Depo., at 147:14 -148:3.

The foregoing facts raise a genuine issue of material fact on the element of a contemplated
contract for economic benefit *See Dowd v. Iantosca*, 27 Mass. App. Ct. 325, 538 N.E.2d 33
(1988)(continued negotiations between buyer and seller constituted prospective business relationship
despite expiration of contract); *Adcom Products* (plaintiffs' being chosen as finalist for sales and
service contract after submitting a quote and giving a successful sales presentation was evidence of
prospective business relationship); *United Truck Leasing Corp. v. Geltman,* 406 Mass. 811, 813-814
& nn. 3-4, 551 N.E.2d 20 (1990) (plaintiff's efforts to obtain contract and submission of a lower bid
than competitor sufficient evidence of prospective business relationship or contract). Foothill and
IBJ were competitors. Molinario Depo. at 121:16-19.

## 2.    Defendants' Arguments Fail

Defendants claim that supposed judicial admissions, foreclose proof of a contemplated

4

contract. As set forth in ARY's Objections to Defendants' Summary Judgment Evidence and Motion to Strike, which are incorporated herein, the Court cannot consider the Defendants' exhibits attempting to prove judicial estoppel because they are inadmissible and must be stricken. To the extent the Court overrules ARY's objection, ARY addresses Defendants' arguments on this point and demonstrates that ARY's position taken in the Krigel's Litigation and now does not support judicial estoppel. Judicial estoppel operates only in certain narrow circumstances to protect the integrity of the judicial process and prevent fraud on the court. *United States v. Levasseur,* 846 F.2d 786, 792 (1st Cir.1988); *Paixao v. Paixao,* 429 Mass. 307, 309, 708 N.E.2d 91, 93 (Mass.1999)(citations omitted). The first circuit applies judicial estoppel only when a litigant is "playing fast and loose with the courts." *U.S. v. Shea,* 150 F.3d 44, 52 (1st Cir.1998), *cert denied Shea v. U.S.*, 525 U.S. 1030, 119 S.Ct. 568 (U.S. Nov. 1998). Application of judicial estoppel requires proof of two conditions: (1) the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive, (both legal and factual) and (2) the responsible party must have succeeded in persuading a court to accept its prior position. *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-34 (1st Cir. 2004).

The case at hand differs from those cases in which the courts have applied judicial estoppel. *See e.g. Chrysler Corp. v. Silva*, 118 F.3d 56, 59 -60 (1st. Cir. 1997)(defendant could not claim both that his vehicle design was completely different from plaintiffs and that plaintiff had stolen his design); *Hurd v. DiMento & Sullivan,* 440 F.2d 1322 (1st Cir.), *cert. denied,*404 U.S. 862, 92 S.Ct. 164, 30 L.Ed.2d 105 (1971)(litigant could not claim both that law firm did and did not represent her); *Alternative System,* 374 F.3d at 32-34 (party could not claim both that it was not suing on an oral contract and that it was seeking recovery on oral contract). Those cases involved the same material

5

fact and law: the Krigel's Litigation involves different issues of law and fact from the instant case. From a legal and factual standpoint, the issues involved here, as tort actions, differ from those involved in the contract action of the Krigel's Litigation. Defendants' offered evidence of alleged judicial admissions are nothing but creative lawyering taking statements out of chronological order and out of context.

A condition to closing the SPA was that Foothill consent to financing on the same terms. Paragraph 4©) of the SPA. Foothill Capital never agreed to same terms financing, thus, the SPA *was void by its terms* since the same terms financing was not secured. ARY was entitled to assert this position in the previous lawsuits and it is not contrary to its position here. Supplemental Affidavit of Barry Pickens. Any previous judicial arguments were addressed to the terms of the Stock Purchase Agreement ("SPA") itself and were a protection for ARY vis a vis Foothill *Id*. The issues involved in the earlier litigation contained different standards for breach of contract than here where tortious interference is at issue.

Moreover, as it became evident after Defendants' tortious interference caused Foothill to change the terms from the December Proposal and that ARY and Foothill could not strike a financing deal, ARY had every right to insist that Krigel's adhere to the terms of the SPA and to assert Krigel's failure in previous litigation. Krigel's reaction was to file suit against ARY, forcing ARY to take the factually correct position that no deal with Foothill had been consummated and that "same-term" financing had never been offered. ARY's factually correct position asserted in the post-tortious interference litigation is not inconsistent with its factually correct position that before Defendants' tortious interference, Foothill had offered to ARY terms that ARY would accept and actually did orally accept. The breach of contract action focuses on the terms of the contract which

6

required same term financing; ARY's current position is not inconsistent in this tortious interference claim which does not require adherence to specific contractual terms, but only a contemplated contract for economic benefit. *See Cleveland v. Policy Management Systems Corp.* 526 U.S. 795, 796, 119 S.Ct. 1597, 599) (U.S.1999)(judicial estoppel not applied to plaintiff's claim for wrongful termination under the Americans with Disabilities Act which prohibits covered employers from discriminating against a disabled person who can perform the essential functions of her job, including those who can do so only with reasonable accommodation, even though plaintiff had made claim for social security disability benefits which provides benefits to a person with a disability so severe that she is unable to do her previous work or any other kind of substantial gainful work); *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 818-20, 678 N.E.2d 853, 857-58 (1997)(a former employee not estopped from asserting disability discrimination claim under Massachusetts statute by virtue of the fact that after being terminated, he applied for and received disability benefits from law firm insurance policy).

Moreover, not only do ARY's filings in the Krigel's Litigation NOT commit that ARY would never have accepted anything other than same terms financing, ARY's statements in earlier proceedings specifically refer to the continued negotiations between ARY and Foothill and the belief that a deal could be reached absent same terms:

> ... Mr. Jevinsky advised Mr. Krigel that [he] believed a lending commitment that satisfied ARY's requirements could be obtained if the parties agreed to extend the deadline for that commitment to Jan. 18, 2001. . .Brief of Appellee ARY Jewelers, LLC at 6 (Ex. C to Cimini Aff.)
>
> Negotiations and Foothill Capital's series of proposals, continued through January, February, March and into April." *Id*. at 7.

7

> Notwithstanding Foothill Capital's refusal to consent to continued
> financing, the parties continued to negotiate with Foothill Capital
> in an effort to salvage the transaction. *Id.* at 8

Additionally, if one accepts Defendants' wrongful claim that ARY's position has been that they would have only accepted "same terms" financing from Foothill, it makes no sense that: (1) Foothill even bothered to submit to ARY a term sheet with other than "same terms" financing; (2) for months, ARY considered the non - "same terms" financing contained within Foothills non- "same terms" December Proposal; (3) ARY requested and received an extension of Foothills' non- "same terms" financing from February 28, 2002 to April 1, 2002. The undisputed testimony reveals the true answer and that was the extension was requested by ARY to give ARY more time to consider the non "same terms" financing proposed by Foothill. Even more of a direct blow to Defendants' creatively manufactured position is the fact that ARY signed a term sheet from Defendant IBJ containing non - "same terms" financing. Again, if ARY would only consider "same term" financing as contended by Defendants, it makes no sense that ARY would sign-off on IBJ's term sheet containing non-"same terms" financing. The absolute, definitive death-blow to Defendants' creatively drafted position that ARY would only consider and accept "same-term" financing is Tom Morgans' sworn deposition testimony, taken two years before the current litigation, two years before this litigation was even contemplated by anyone, and, importantly, two years before creative lawyering could twist and slant and even create "facts" to suit their clients' purposes and positions. In that deposition, Tom Morgan unequivocally testified under oath that ARY was not only considering Foothills December Proposal, but that it had orally accepted the same, prior to the tortious interference of IBJ that "directly caused" Foothill to withdraw the December Proposal. He also testified that ARY was not only considering the December Proposal and that it was not only

8

probable that ARY would accept, but according to Tom Morgan's sworn, disinterested and unlawyered testimony had already been orally accepted by ARY prior to Defendant IBJ's tortious interference. Morgan Depo., at 183:16-20. Last, why would ARY's representative, Gohar recommend to Chairman Razzak that ARY accept the March 27, 2001, term sheet proposal from Foothill, the revised and significantly less favorable terms for Foothill to ARY, if, as Defendants contend, ARY was only considering and only accept "same-term" financing?

The statements/positions taken by ARY is the post tortious interference litigation initiated by Krigel's, Inc., even though taken completely out of context, do not in any event come close to rising to the level of an judicial admission. Both of the letters on which Defendants rely were drafted after Defendants' already interfered and Foothill changed the terms, prompting Krigel's to sue and ARY to rely on the provisions in the SPA. At this point, ARY was taking the position, rightly so, that the SPA required same terms financing. Further, whether or not Foothill ever offered "same-term" financing is yet another red herring that has nothing to do with Foothill's pre-tortious interference offer and ARY's acceptance.

What is made-up, perjured testimony, a creation of over-imaginative lawyers involved in this litigation, is the testimony of Steven Cole, who claims to have had a meeting with Mr. Husain and Mr. Krigel in early 2001 where Cole claims he was advised that ARY had accepted a term sheet presented by Defendant IBJ. Morgan testifies that he does not recollect such a meeting. Morgan Aff. The problem with Cole's story is that no one else seems to recall this meeting. Importantly, the Krigel's account manager, Tom Morgan, surely would have been in attendance at such a meeting, or at a bare minimum, would have been informed of such a meeting. Mr. Morgan's clear testimony was that Foothill first became aware of any potential involvement by Defendant IBJ with David

9

Molinario's phone call on February 28, 2001 informing him that IBJ would not deal with ARY and why. Further, in the post-tortious interference litigation that was initiated by Krigel's, where Krigel's was asserting the enforceability of the SPA, in part because ARY had consummated a deal with Foothill, if such a meeting had taken place why was it never mentioned by anyone in all of the ensuing litigation to support ARY's factually correct position that a deal with Foothill had never been legally consummated? Last, Cole has not a shred of documenting evidence to support this alleged meeting, no letter, no memo, no e-mail and Morgan does not recall the same. Morgan Aff.

With regard to Mr. Razzak's testimony in this litigation, he has continued to urge the same positions as taken in earlier litigation and in this case. Defendants' quote from Mr. Razzak's deposition tells only part of the story. Defendants fail to include Mr. Razzak's testimony that he decided not to do the deal because Foothill did not offer the same terms as required by the SPA. Razzak Depo. at 29:13 -30:4. Based on this testimony and even the testimony quoted by Defendants, what Mr. Razzak conceded, if anything, was that ARY was entitled to insist upon the terms of the SPA being fulfilled before ARY was obligated to perform thereunder. Indeed, Defendants' quote that Mr. Razzak told Foothill that ARY wanted it to continue financing on the same terms does not specifically place at what time such discussion occurred. Razzak Depo. at 21:6 - 23.

## B.    Defendants had Knowledge About the Contemplated Contract

It is preposterous to believe that Frank O'Connor and/or Defendants knew nothing of the contemplated contract/ongoing negotiations between Foothill and ARY/Krigel.    Indeed, Tom Morgan's deposition testimony, taken well before this lawsuit arose, directly contradicts O'Connor's recently crafted affidavit. Morgan testified that Molinario told him that "

. . . he [Molinario] knew that Krigel's was my account. He said that

10

> they had been doing some due diligence because ARY was
> contemplating or was trying to get—well, shopping the deal, trying
> to get financing with them, seeing what kind of deal they would give
> them. They had gotten far enough down the point where they started
> doing some due diligence on ARY and he had come across some
> information through their credit checks and over the internet and etc.,
> and basically said that, you know, he assumed that if Krigel's was my
> account, we would probably be doing the same, trying to retain the
> deal and he thought the information would be of interest to me.

Morgan Depo. at 147:14-148:3. This testimony shows that Defendants knew of the ARY/Foothill
relationship. Even if O'Connor claims he did not, Molinario clearly did and such knowledge is
imputed to Defendant IBJ by virtue of the fact that Molinario was its employee acting in the course
and scope of employment. Additionally, Krigel's had been a long time customer of Foothill, which
Molinario knew because of his previous employment with Foothill. Morgan Depo. at 146:7-8. More
tellingly is the fact that Foothill's potential involvement was spelled out in the SPA, a public
document that IBJ would clearly have had to review prior to issuing its own term sheets. Mr.
O'Connor's stated rationale for his belief that there were no ongoing negotiations between ARY and
Foothill, because of "industry practice" is so unbelievable that a jury/fact-finder would not be
compelled to accept this testimony even in the absence of contradicting testimony. Moreover, such
practice is not an industry norm. Bonville Affidavit. Additionally, ARY has already submitted two
reports, and includes affidavits herein, from well-qualified experts in the banking field to the extent
that IBJ's actions, regardless of rationale or O'Connor's or Molinario's "belief" was in direct
contravention and violation of "industry practice". Baerst Affidavit; Bonville Affidvait.

It is particularly disturbing (and unbelievable) that O'Connor would rely on his misguided
sense of "common industry practice" rather than simply ask his clients. Regardless, if there was

11

nothing sinister in Mr. O'Connor's actions, why not first seek and obtain permission from his clients before sharing this information, or better yet, allow his clients to either inform Foothill or do with this information as the clients saw fit. And what was O'Connor's rush? On the same day that IBJ received this information, actually within hours of receipt, O'Connor and IBJ had decided not to deal with ARY and had communicated not only this non-public information, but had also communicated the exact reasons why and faxed the articles to Foothill. If O'Connor's motive was as stated, there is no explanation or justification for going well-beyond just informing Foothill that IBJ would not be providing the post-bankruptcy financing to ARY, but instead, they gave the exact reasons for rejecting ARY and forwarded copies of the news articles for Foothill's contemplation and use. O'Connor acknowledged that there was no reason not to have cleared it with ARY before Defendants communicated to Foothill that IBJ would not be funding the loan. O'Connor Depo. at102:14-105:2. And that IBJ's decision not to fund ARY was nonpublic information. *Id* at 110:12-111:4.

The claim that it was a professional courtesy is something cooked up to rationalize an act which clearly goes against all standard banking practices. Additionally, ARY suspects that conveying the information violated IBJ's policies and practices as stated by IBJ; however, despite having requested the same, IBJ has failed to provide ARY with such information. [1] Additionally, Morgan and Molinario both testified that IBJ indeed was a competitor. Morgan Depo. at 14:11; Molinario Depo. at 121:16-19.

As O'Connor's following "common industry practice" position is destroyed by the truth,

---

[1] Indeed, ARY will shortly be filing a motion to compel discovery responses, which includes a request that IBJ provide ARY documents relating to policies and procedures relating to the transfer of information and/or communicating with other financial institutions about a customer, loan applicant, loan application or the like.

ARYs believe that a jury/fact-finder can only reasonably then infer both Mr. O'Connor's knowledge and improper motive. ARY refers this Court to the two affidavits from well-qualified industry experts who clearly conclude that Defendants' actions violated industry standards and practices and that the communications to Foothill, both about the allegations against ARY and the fact that IBJ was not going to fund the loan, were clearly improper. Baerst Aff.; Bonville Aff. ARY also refers the Court to Section III which addresses a bank's duty of confidentiality and incorporates those arguments and record references herein.

## C.    Improper Purpose or by Improper Means

ARY presents sufficient evidence to raise a genuine issue of material fact on whether or not Defendants intentionally interfered for an improper purpose or by improper means. "State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind.' " *Hahn,* 523 F.2d at 468 (citation omitted)." *Metropolitan Life Ins. Co. v. Ditmore* 729 F.2d 1, 5 (C.A.Mass.,1984).

ARY hereby incorporates the argument and evidence set forth in the previous section regarding Defendants' knowledge of the relationship between Foothill and ARY as evidence of Defendants' improper motive and means. Additionally, Molinario assumption he thought Morgan would be trying to retain the deal and that Molinario thought Foothill would be interested in the information (Morgan Depo. at 147: 14 - 148:3) certainly implies that Defendants knew the information could ruin the deal between ARY and Foothill. Moreover, O'Connor acknowledged that it is the general practice of financial institutions, and IBJ in particular, to maintain the confidentiality of non-public information. O'Connor Depo. at 62:1-17. Certainly the fact that IBJ was not going to fund a loan for ARY was nonpublic information. O'Connor Depo. at102:14-105:2. And that

13

IBJ's decision not to fund ARY was nonpublic information. *Id* at 110:12-111:4. Further, O'Connor has never recalled a time disclosing any information at all regarding a customer or potential customer and that he would generally not do so. O'Connor Depo. at 63:10-19; 113:22. A jury/factfinder certainly can infer mproper motive and/or means from this testimony. *See Keegan v. O'Donnell*, 310 Mass. 346, 37 N.E.2d 995 (1941)(abrogated on other grounds)(it is prima facie unlawful to induce a third person not to deal with the plaintiff where such person is negotiating with the plaintiff if the defendant has knowledge of the relationship).

Moreover, the improper means is found because Defendants violated duties of privacy and confidentiality to ARY. Baerst Affidavit; Bonville Affidavit. Defendants' conveying this information violated banking standards and practices. As such, Plaintiff has raised a genuine issue of material fact on the element of improper motive/means. *See G.S. Enterp., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991) (fact issue as to whether defendant filed suit to prevent plaintiff from obtaining property or to protect its rights prevented summary judgment in tortious interference claim).

## D.    Damages/Causation

Defendants' argument for summary judgment on the damages issue is both legally and factually incorrect. Defendants rely on contract cases for their position; however, this is not a contract case. It is a tort case requiring recovery of tort damages. ARY seeks recovery of attorney's fees and expenses incurred in the Krigel Litigation and recovery of the economic damages proximately caused by ARY's inability to acquire Krigel's. Recovery for these damages is well supported in the law and facts, thus summary judgment cannot be granted.

Attorney's fees and costs incurred in litigation as a result of tortious conduct of another are

14

recoverable damages. *Mutual Fire, Marine and Inland Insurance Co. v. Costa*, 789 F.2d 83,88-89 (1st Cir. 1986); *M.F. Roach Co. v. Provincetown*, 355 Mass. 731, 732, 247 N.E.2d 377, 378-79 (1969). When the natural consequence of a defendant's tortious conduct proximately causes the plaintiff to become involved in litigation with a third party, the plaintiff may recover from defendant attorney's fees associated with that litigation. *Costa*, 789 F.2d at 88 - 89. The Affidavit of Barry Pickens, one of the attorney's representing ARY in the Krigel's Litigation, evidences the attorney's fees and expenses ARY incurred. Pickens Aff. Mr. Pickens affidavit and exhibits thereto show not only the amount of attorney's fees and expenses incurred, but that Defendants' actions proximately causes ARY to incur the same. *Id.*[2]

Likewise, ARY is entitled to recover business economic damages in the form of lost profits. *Cherick Distributors, Inc. v. Polar Corp.*, 41 Mass.App.Ct. 125, 128-29, 669 N.E.2d 218, 221 (1996); *Melo-Tone Vendin*, 39 Mass. App. Ct. at 320, 656 N.E.2d at 315. Shirley Webster's affidavit (economic damages expert witness) supports ARY's lost profits damages in the amount of $3.1 million, excluding prejudgment interest. Affidaivit of Shirley Webster. Defendant claims that the only damages ARY incurred is the additional cost of financing, and that the terms set forth in the March 27 term sheet do not differ from those in the December 15th term sheet. This position is factually incorrect. Webster Aff.

Additionally, the overwhelming credible evidence is that IBJ's interference "directly caused" Foothill to withdraw the previous term sheets, the January 31, 2001 having been orally accepted by ARY. As a direct result of Foothill withdrawing its January 31, 2001 offer, ARY was left with no

[2]ARY also includes in this response the Affidavit of Joseph G. Thompson, III, an attorney who also represented ARY in the Krigel Litigation and which proves up the invoices from his law firm as business records.

15

viable options and therefor rightfully withdrew from the SPA. ARY's rightful withdrawal directly
led to the Krigel Litigation which, although ARY ultimately prevailed on all issues, directly caused
the expenditure of over $1.2 Million in attorney fees and litigation costs and expenses. Further, there
is ample evidence that substitute financing was not available, especially given the time constraints.
ARY suffered real, actual damages resulting from IBJ's tortious interference.

Defendants' strained argument that there is no causation again fails on Tom Morgan's
disinterested, unlawyered testimony wherein he clearly states that Foothill withdrew its January 31,
2001 term sheet proposal, already orally accepted by ARY, based upon and as a "direct result" of
Molinario's phone call on February 28 and the information relayed therein. Morgan Depo. at 144:9-
17. Further, based on previous arguments, Foothill had already completed whatever due diligence
it contemplated prior to IBJ's interference.

## III.   DUTY OF CONFIDENTIALITY/FIDUCIARY DUTY

Standard banking practices and procedures dictate that a bank should maintain the
confidentiality of its customers' and potential customers' information. Baerst Aff.; Bonville Aff.
Because potential customers have to disclose highly personal information such as assets, credit
history, past conduct, and future information, and cannot obtain loans without disclosing such
information, the bank stands in a position superior to the potential customer and owes it a duty of
confidentiality. *See Groob v. Keybank*, 155 Ohio Appp. 3d 510, 517-518, 801 N.E.2d 919, 924-25
(2003)(special duty of confidentiality exists between loan applicant and prospective lender);
*Djowharzadeh v. City Natl. Bank & Trust Co.*, (Okla. App. 1982), 646 P.2d 616(bank's relationship
to loan applicant implicitly imposes duty on bank to keep contents of loan application confidential).

It was a reasonable expectation for ARY, based on lending practices generally and ARY's

16

customer relationship with Defendants that Defendants would not have gratuitously transmitted damaging information in Defendants' possession, along with word of its negative credit decision, to another lending institution. Baerst Affidavit; Bonville Affidavit. Financial institutions should follow generally accepted banking practices by communicating with clients or potential clients the status of their loan requests. They should not communicate such matters to competitors. Baerst Affidavit; Bonville Affidavit. By communicating with competitors, financial institutions risk damaging their reputation but also the client's or potential client's trust. Bonville Affidavit. Molinario acknowledged that it would be a reasonable expectation for a potential client that the potential lender would not disseminate information about its loan application to others without express authorization from the potential client. Molinario Depo. at 142:12 - 20.

The practice of lenders in handling customer information has evolved over recent years in its specific restrictions, but there has always been recognition in the industry that customer information is sensitive and must be handled carefully. Baerst Affidavit. The trend over the past twenty or more years has been for lenders to become much more cautious about sharing information about customers, whether public or not. Baerst Affidavit. This trend is reflected in the enactment of the Title V of the Gramm-Leach-Bliley Financial Services Modernization Act of 1999. This Act imposed stringent privacy requirements on all lenders, requiring lenders to develop policies and procedures for the protection of customer information. "It is the policy of the Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 USC 6801(a).

Defendants' conveying the potentially adverse information to Foothill is particularly

17

egregious.    The allegations in the news articles had not been verified or checked beyond

downloading the information from the internet, and the denials of their veracity by Gohar Husain,

as ARY's representative, were not, apparently, taken seriously, as evidenced by Defendants' on-the-

spot decision to deny credit facilities in the course of its conversation with Mr. Husain.  Deposition

of Frank O'Connor, June 16, 2005, 83:2-21.

Defendants violated their duty of confidentiality when they initiated contact with Foothill,

whom they had reason to know was a creditor of Krigel's, to convey not only its negative credit

decision, but the specific reason for the decision, which happened to be the unsubstantiated news

reports. Baerst Affidavit; Bonville Affidavit. The combination of these disclosures could not have

but undermined the confidence of another lender, and Defendants were acting unreasonably and

negligently in gratuitously making these disclosures to Foothill. Baerst Affidavit. Defendants claim

that they acted out of "professional courtesy" , Deposition of O'Connor at 101:12-18, but they

neglected their duty to their customer in doing so.  Baerst Affidavit.  Defendants' action in

conveying the information to another bank breached their confidential responsibility to ARY.

Bonville Affidavit.

Defendants' claim that the information was on the public record and therefore there was no

duty of confidentiality does not hold water.  The distinction of public versus non-public is not

relevant to an understanding of a lender's obligation in circumstances in which: (1) the information

is by its nature potentially damaging and unsubstantiated and (2) the lender gratuitously volunteers

the information to a third party lender in the context of distinctly non-public information, namely its

decision to deny credit. Baerst Affidavit. Defendants' actions were inconsistent with good lending

practice and violated its duties of confidentiality to its customer. Baerst Affidavit. Moreover, IBJ's

18

decision to not fund the loan, which Defendants' also disclosed, was certainly not public information. O'Connor Depo. 110:12-111:4.

The foregoing authority and affidavits show that Defendants owed ARY a duty of confidentiality which it breached when it conveyed the information to Foothill. As demonstrated previously, Defendants' actions caused ARY damages in the form of legal fees and expenses incurred in the Krigel's Litigation and economic damages. ARY incorporates in this section the argument and authority set forth previously.

## IV. CLAIMS IN SECOND AMENDED COMPLAINT PRECLUDE SUMMARY JUDGMENT

ARY further urges the Court to deny Defendants' Motion because, contemporaneously with the filing of this Response, ARY has moved for leave to amend its complaint to add causes of action for violations of Massachusetts General Law Chp. 93A and breach of an implied contract.

## V. CAUSES OF ACTION AS TO DEFENDANT MOLINARIO

Defendants' motion as to Molinario individually should be denied for all of the same reasons stated herein.

## VI. CONCLUSION

ARY has more than amply demonstrated that there exist genuine issues of material fact on both causes of action, which preclude the Court granting summary judgment.

## ARY REQUESTS ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), ARY hereby requests oral argument because it feels that oral argument may assist the Court in ruling on Defendants' Motion.

19

Dated:    September 14, 2005    Respectfully submitted,

THE CARRIGAN LAW FIRM, L.L.P.

By:    _____

Stephen P. Carrigan (Admitted Pro Hac Vice)
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)
*Attorney-in-Charge for Plaintiff*

OF COUNSEL:

**THE CARRIGAN LAW FIRM, L.L.P.**
Jill L. Groff (Admitted Pro Hac Vice)
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)
*Of Counsel for Plaintiff*

**MAHENDRU, P.C.**
Ashish Mahendru BBO#647661
1111 Bagby, Suite 2000
Houston, Texas 77002
(713) 571-1519 (telephone)
(713) 651-0776 (telefax)
*Of counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded as indicated below by certified mail, facsimile and/or hand delivery, return receipt requested in accordance with the Federal Rules of Civil Procedure on this 14th day of September, 2005.

Robert S. Fischler
ROPES & GRAY, L.L.P.
45 Rockefeller Plaza
New York, NY 10111
Tel: (212)841-0444

_____
Jill L. Groff

20

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| ARY Jewelers, LLC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04:-CV-10281 EFH |
| | ) | |
| IBJTC Business Credit Corp. and | ) | |
| David Molinario, | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

ON THIS the _____ day of _____, 2005, this Court considered Defendants'

Motion for Summary Judgment. After consideration of the same, the Court is of the opinion that

said motion should be DENIED.

It is, therefore, ORDERED that Defendants' Motion for Summary Judgment is DENIED.


_____

UNITED STATES DISTRICT JUDGE

Signed the _____ day of _____, 2005.