## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARY Jewelers, LLC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 04:-CV-10281 EFF |
| | ) | |
| IBJTC Business Credit Corp. and | ) | AFFIDAVIT OF BARRY PICKENS |
| David Molinario, | ) | |
| Defendants. | ) | |

BARRY PICKENS, being sworn, deposes and states as follows:

1.      I submit this affidavit at the request of Plaintiff's attorney in support of Plainti

response to Defendants' Motion for Summary Judgment

2.      I have been retained by Plaintiff, ARY Jewelers, LLC ("Plaintiff") in the abc

captioned case, to render opinions regarding the damages Defendants' conduct has caus

including attorney's fees incurred by Plaintiff in multiple lawsuits because of Defendai

conduct, and regarding the reasonableness and necessity of those fees.

3.      I received a bachelor of arts degree from the University of Kansas in 1989.  I

received my juris doctorate degree from the University of Texas in 1992.

4.      Since October, 1992, I have been licensed to practice law in the State of Misso

and have been, since May, 1993, licensed to practice law in the State of Kansas. I am, and h

been at all times since being licensed, an attorney in good standing in both states.

5.      Prior to the transfer of this case from the Western District of Missouri to 1

Court, I was co-counsel of record for Plaintiff.

6.      I was one of the counsel for Plaintiff in each of the lawsuits caused

WA 8.221

Defendants' conduct discussed below.  Accordingly, I have personal knowledge regarding ( ı

of those lawsuits.

7.     In reaching the opinions expressed in this affidavit and the report, which has t ı

previously provided, I relied upon that personal knowledge, the pleadings, orders, judgments, ı

appellate decisions in those lawsuits, and the invoices for attorney's fees and costs referer ı

below.

8.     Defendants' conduct prevented Plaintiff from obtaining the financing that Plai f

needed in order to acquire the stock of Krigel's, Inc. out of a pre-packaged bankruptcy t

Plaintiff had negotiated with the owners of Krigel's, Inc. as part of their Stock Purcl ɜ

Agreement.  As a direct result, numerous parties filed lawsuits against Plaintiff, including ɜ

following:

a.     As debtor in possession in the bankruptcy action it had filed, Krigel's, ,

initiated an adversary proceeding against Plaintiff alleging, *inter alia*, that Plaintiff shoʋlɩ ɜ

ordered to pay its creditors the full amount Krigel's, Inc. owed those creditors at the time o s

filing of its bankruptcy petition, or approximately $10 million.  That adversary proceedirg s

filed in the *In re Krigel's, Inc.* bankruptcy action, W.D.Mo. Bankr. Court Case No. 01-40276 -

JWV, and the adversary proceeding was captioned *Krigel's, Inc. v. ARY Jewelers, LLC,* V ı.

Mo. Bankr. Adversary Proceeding No. 01-4089.  The bankruptcy court ultimately abstained ı

dismissed that adversary proceeding;

b.     After the Bankruptcy Court abstained, some of the largest creditor f

Krigel's, Inc., including the lead plaintiff in that case, M. Fabrikant & Sons, Inc., filed a sepɑ ɜ

federal diversity jurisdiction lawsuit against Plaintiff alleging, *inter alia,* a similar claim t

Plaintiff should be ordered to pay the Krigel's, Inc. creditors the full amount Krigel's, Inc. o    l

them. That lawsuit was captioned *M. Fabrikant & Sons, Inc., et al. v. ARY Jewelers, LLC,* V    .

Mo. Case No. 01-0671-CV-W-5.

9.      In addition, Plaintiff had deposited $1.5 million into two escrow acco    s

pursuant to the terms of the Stock Purchase Agreement. As another direct result of Defenda    s

conduct, the owner of the Krigel's, Inc. stock, Scott Krigel, in both his personal capacity an    s

the trustee of his trust, directed the escrow agent to pay over the escrowed funds to him base    n

Plaintiff's alleged breach of that agreement. Plaintiff contested the directions to pay    e

escrowed funds to Scott Krigel, and filed a lawsuit to seek an order of the court directing    e

escrow agent to return the contested escrow funds, as Plaintiff was required to do to receive t    e

escrowed funds pursuant to the terms of the escrow agreements. That lawsuit was captioned .    Y

*Jewelers, LLC v. Scott Krigel, et al.,* Johnson County, Kansas District Court Case No. 01    √

02633.

10.      Both parties to that lawsuit filed cross-motions for summary judgment    e

Johnson County District Court granted summary judgment in favor of Plaintiff and ag    it

defendants therein, and directed the escrow agent to return the escrowed funds to Plaintiff.    e

defendants in that lawsuit filed an appeal from that judgment to the Kansas Court of App    .

The Kansas Supreme Court later directed that the intermediate appellate court transfer that ap    l

to it. That appeal was captioned *ARY Jewelers, LLC v. Scott Krigel, et al.,* Kansas Supr    e

Court Appeal No. 02-88991-A. The Kansas Supreme Court affirmed the judgment in fav    f

Plaintiff and against defendants.

11.      Prior to the defendant's appeal, Plaintiff filed a post-judgment motion to ar    d

the judgment to add awards of pre- and post-judgment interest. The Court denied Plainti ;

motion. Plaintiff filed an appeal from that order to the intermediate appellate court. The Kai ;

Supreme Court also ordered transfer of that appeal to it, and then reversed the order deny:n; 1

award of interest and directed the District Court to enter interest awards against defendants. 1 t

appeal was captioned *ARY Jewelers, LLC v. Scott Krigel, et al.*, Kansas Supreme Court Ap: l

No. 02-89543-A. Upon remand, the parties litigated the amount of the interest due Plaintif 1

Johnson County District Court Case No. 01 CV 02633, and the Court entered an award in fi r

of Plaintiff.

      12.    It is my opinion that Defendant's conduct caused Plaintiff to incur the attorn ;

fees set forth on the relevant fee invoices set forth below. Based on Defendants' cond ,

Plaintiff was unable to secure adequate financing to purchase the Krigel's, Inc. stock and ;

could not complete the transaction in the manner it anticipated and that it would have been :

to do but for Defendants' conduct. Because it could not complete the transaction in the mann t

anticipated, and would have had to self-finance to complete that transaction, Plaintiff did t

close on the Stock Purchase Agreement and asserted that its performance was excused l :

financing condition in that agreement.

      13.    As set forth above, Krigel's, Inc., its stockholders, and its creditors disagreed ' :

Plaintiff's contention that its performance was excused by its inability to obtain financing. ;

also set forth above, those parties filed the aforementioned lawsuits seeking damages f :

Plaintiff in excess of $10,000,000. In addition, Scott Krigel gave the escrow agent instructior )

pay him the $1.5 million in escrow.

      14.    When it was unable to obtain adequate financing to complete its acquisition of :

stock of Krigel's, Inc. and thus refused to close the Stock Purchase Agreement, Plaintiff enga    l

two law firms to protect its interests: Watt, Beckworth & Carrigan, L.L.P. of Houston, Te    ,

(attorneys John B. Beckworth and Joseph G. Thompson); and Spencer Fane Britt & Browne l    '

of Kansas City, Missouri (attorneys Scott J. Goldstein, Lisa A. Epps, Barry L. Pickens    l

Michael C. Leitch).

15.    Those two law firms jointly coordinated the defense of the lawsuits referen:e    ı

paragraph 8(a) & (b) above, and coordinated the filing of the lawsuit referenced in paragrap    )

above.  Once the lawsuits against Plaintiff were dismissed, the Spencer Fane Britt & Bro    ;

LLP law firm represented Plaintiff in its prosecution of the Kansas state court lawsuit and    ;

appeals therein.

16.    Both law firms submitted monthly, itemized billing statements for their time    l

expenses in those lawsuits to Plaintiff.  Plaintiff seeks an award of damages in this cas    )

compensate for the fees and expenses it incurred in the referenced lawsuits.  The portion    f

these invoices that set out those fees and expenses are attached hereto as Exhibit 1 and    ;

incorporated by this reference.   The Watt, Beckworth & Carrigan, L.L.P. invoices bear B    ;

Nos. ARY 02986 – ARY 03030; and the Spencer Fane Britt & Browne LLP invoices bear B    ;

Nos. ARY 03031 – ARY 03282.

17.    The relevant fees and expenses set forth on these invoices were reasonable anc    ;

work for which those fees were charged was necessary.

18.    The hourly rates charged by the attorneys at these two firms were reasonable    l

customary for the Kansas City metropolitan market, and the Watt, Beckworth & Carrigan, L.    '.

rates are reasonable for the Houston, Texas market, where Plaintiff retained that firm.

19.    The attorneys in both firms reasonably coordinated their efforts to a\  l unnecessary duplication of work.

20.    My opinion that the fees and expenses at issue in this case were reasonabl ; based upon the following factors customarily considered in determining the reasonables ¨ attorney's fees:

a.    The time and labor required on this case were significant; the questi ; involved were novel and difficult; and the lawyers needed a high degree of skill to perform ﹕ legal services properly.

b.    Because the case required the Houston lawyers to work on the case : l location which is distant from their regular office, it is likely that the representation precluded : opportunity for some other work.

c.    The amount at issue in each of these lawsuits was significant. Each of : lawsuits against Plaintiff could have resulted in judgments in excess of $10,000,000. The Kar ; state court lawsuit filed by Plaintiff against *inter alia* Scott Krigel involved $1.5 millior l escrowed funds plus another approximately $300,000 in interest or earnings. In each of th : lawsuits, the law firms achieved results favorable to Plaintiff, including the dismissal of t l federal lawsuits against Plaintiff and a summary judgment in favor of Plaintiff in the state co : lawsuit.

21.    All of the documents and information I relied upon are of the type reascna ' relied upon by experts in this particular field (damages analysis) in forming opinions ' inferences upon the subjects/opinions expressed herein. All exhibits attached hereto are true : correct copies.

22.    The Spencer Fane Britt & Browne LLP invoices (Bates Nos. ARY 03031 – A

03282) and attached hereto as Exhibit 1 are kept by Spencer Fane Britt & Browne LLP in

regular course of its business.  As a partner in the firm of Spencer Fane Britt & Browne LL

am familiar with the billing procedures and records for the firm.  It was the regular course of

business for an employee or representative of Spencer Fane Britt & Browne LLP with knowle

of the act, event, condition, or opinion recorded to prepare invoices such as the invoices attac

hereto as Exhibit 1 and to make a business record, the invoices, or to transmit informa

thereof to be included in such invoices.  The invoices attached hereto as Exhibit 1 were mad

or near the time of the act, event, condition, or opinions recorded therein, or reasonably s

thereafter.  The invoices attached hereto as Exhibit 1 are an original or exact duplicate of

original.

_____
Barry Pickens

Sworn to before me on this the ___ day of September 2005.

Notary seal:

OPAL I. DeYAEGHERE
Notary Public - Notary Seal
STATE OF MISSOURI
Clay County
My Commission Expires: January 9, 2006