# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ARY Jewelers, LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 04-10281-EFH |
| IBJTC Business Credit Corporation and David Molinario, | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Robert S. Fischler (Admitted Pro Hac Vice)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT..................................................................................................1

ARGUMENT..........................................................................................................................4

I.     TO AVOID SUMMARY JUDGMENT, ARY MUST IDENTIFY SPECIFIC
       CONTROVERTING FACTS.......................................................................................4

II.    SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT I OF THE FIRST
       AMENDED COMPLAINT............................................................................................5

       A.     ARY has Failed to Create a Triable Issue on the "Probable Agreement" Element
              of its Tortious Interference Claim...........................................................................5

              1.     Foothill and ARY Were not Negotiating at the Time of the Alleged
                     Interference...............................................................................................5

              2.     ARY was Insistent on "Same Terms" Financing, Which Foothill
                     Would not Provide for Reasons Unrelated to Defendants............................7

                     (a)     ARY's Uncontroverted Admissions are Conclusive.......................7

                     (b)     ARY is Judicially Estopped From Arguing it was
                             not Insistent on "Same Terms" Financing.......................................8

              3.     There is no Evidence That Foothill's Credit Committee
                     Would Have Approved the December Proposal...........................................9

       B.     ARY has Failed to Create a Triable Issue as to Defendants' Knowledge.............10

       C.     ARY has Failed to Create a Triable Issue on the Element of Causation --
              Foothill Would Have Learned of the Criminal Charges Even if the Articles
              had not Been Provided by Defendants...................................................................11

       D.     ARY has Failed to Create a Triable Issue as to Whether Defendants Acted
              With Improper Motive or Means...........................................................................12

       E.     ARY has Failed to Create a Triable Issue as to Damages.....................................13

III.   SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT II
       OF THE FIRST AMENDED COMPLAINT..................................................................14

CONCLUSION.....................................................................................................................17

## TABLE OF AUTHORITIES

**CASES**                                                                    Page

*Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004) .............8

*American Private Line Services, Inc. v. E. Microwave, Inc.*, 980 F.2d 33 (1st Cir. 1992) ........................................................................................................12, 13

*Boyle v. Douglas Dynamics, LLC*, 292 F. Supp. 2d 198 (D. Mass. 2003), *aff'd*, No. 03-2430, 2004 U.S. App. LEXIS 10226 (1st Cir. 2004)...................................9, 13

*Cadle Co. v. Hayes*, 116 F.3d 957 (1st Cir. 1997)...............................................................4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................5

*Djowharzadeh v. City National Bank & Trust Co.*, 646 P.2d 616 (Okla. Civ. App. 1982) ........................................................................................................14

*First National Bank in Lenox v. Brown*, 181 N.W.2d 178 (Iowa 1970)............................16

*Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir. 1990) ....................................................4

*Graney Development Corp. v. Taksen*, 400 N.Y.S.2d 717, *aff'd*, 411 N.Y.S.2d 756 (App. Div. 1978) .......................................................................................14, 15

*Groob v. Keybank*, 801 N.E.2d 919 (Ohio Ct. App. 2003)................................................14

*Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32 (1st Cir. 2001) ...........................................2

*Moreau v. Local Union No. 247*, 851 F.2d 516 (1st Cir. 1988)........................................10

*Nieves ex rel. Nieves v. University of P.R.*, 7 F.3d 270 (1st Cir. 1993) ..............................2

*Serapion v. Martinez*, 119 F.3d 982 (1st Cir. 1997) ...........................................................4

*Sharma v. Skaarup Ship Management Corp.*, 699 F. Supp. 440 (S.D.N.Y. 1988).............14

*Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25 (1st Cir. 2002) .....................9

*Talarico v. Marathon Shoe Co.*, 221 F. Supp. 2d 35 (D. Me. 2002) ...................................2

*Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002) ..................................................15

*Williams v. Coffee County Bank*, 308 S.E.2d 430 (Ga. Ct. App. 1983)............................16

**STATUTES**                                                                          <u>Page</u>

15 U.S.C. § 6801....................................................................................................15

15 U.S.C. § 6809(4)...............................................................................................15

16 C.F.R. §313.3(p)(3)...........................................................................................15

Fed. R. Evid. 804(b)(1).......................................................................................1, 6

## PRELIMINARY STATEMENT

Defendants IBJTC Business Credit Corporation ("IBJ") and David Molinario (collectively, "defendants") respectfully submit this Memorandum in Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. ARY's response to defendants' motion for summary judgment is devoid of evidence sufficient to create any genuine issue of material fact. Instead, ARY seeks to defeat summary judgment by overwhelming the Court with voluminous submissions, consisting largely of irrelevant or inadmissible evidence it hopes will divert attention from the uncontroverted facts and applicable law that warrant dismissal of this case now.[1]

ARY's failure to come forward, as it must, with specific facts controverting defendants' evidence is apparent from even a cursory review of ARY's Rule 56.1 Statement and its opposition brief. Contrary to Local Rule 56.1 and proper summary judgment practice, those documents are rife with factual assertions that are unsupported by citation to the record. Moreover, insofar as ARY bothers to cite to "evidence," it primarily relies on a deposition given by Thomas Morgan, a former Foothill employee, in another litigation in which neither defendant herein was a party or participated in any way. Therefore, as explained in more detail in defendants' accompanying Motion to Strike, the deposition is inadmissible hearsay under Fed. R. Evid. 804(b)(1) and may not be used by ARY to oppose summary judgment.[2]

---

[1] ARY has utilized every known device – and probably a few new ones – in an attempt to convey the misimpression that triable issues exist. Included among the flood of submissions by ARY are: (i) a belated motion to amend its complaint, which fails to provide any legal or factual basis for the motion, or any explanation as to why it is being made at this late date; (ii) a meritless motion to strike documents that ARY created and which it has admitted, in response to Requests for Admissions, are genuine; and (iii) a host of affidavits by purported "experts" which are plainly inadmissible on relevance and other grounds. ARY's inappropriate submissions are too unwieldy to respond to here. Accordingly, defendants have responded in separate submissions accompanying this brief.

[2] Each citation in ARY's Rule 56.1 Statement to "Morgan Depo. at ___," is to Mr. Morgan's inadmissible deposition. Accordingly, those citations do not constitute evidentiary support for the assertions in ARY's Rule 56.1 Statement.

ARY's deficient Rule 56.1 Statement is not a mere technicality. Rather, by failing to cite to specific record evidence, ARY has failed to meet a substantive requirement that litigants opposing summary judgment clearly identify trialworthy issues and not impose on the Court "the daunting burden of seeking a needle in a haystack." *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir. 2001) (in summary judgment context, non-movant which fails to comply with local rule requiring specific citation to the record does so at its peril, and summary judgment may be properly awarded against it); *see Talarico v. Marathon Shoe Co.*, 221 F. Supp. 2d 35, 40 n.4 (D. Me. 2002) (factual assertions in Rule 56 statement "are not cognizable on summary judgment" if not supported by record citation in accordance with Rule). Similarly, ARY's failure to support the factual assertions in its brief with specific record citation requires that those assertions be disregarded. *See Nieves ex rel. Nieves v. Univ. of P.R.*, 7 F.3d 270, 280 (1st Cir. 1993) ("Factual assertions by counsel in motion papers, memoranda, or briefs are generally not sufficient to generate a trialworthy issue.").

As none of the material facts set forth in defendants' Rule 56.1 statement are properly controverted by ARY, they are deemed admitted. *See* Local Rule 56.1. Moreover, none of ARY's other submissions controvert any material fact with specific record evidence. For example, as discussed further below:

- It is uncontroverted that there was no ongoing negotiation between Foothill and ARY, much less a probable agreement between them at the time of the alleged tortious interference. ARY concedes that it had been working exclusively with IBJ to finalize a loan agreement, and that it was not until after IBJ had "interfered" by contacting Foothill in late February 2001 that ARY and Foothill renewed discussions concerning a possible agreement. ARY therefore has failed to create a triable issue on the "probable agreement" element of its tortious interference claim.

- It is uncontroverted that Razzak, ARY's Chairman, admitted in the Fabrikant Litigation that "same terms" financing from Foothill was an "absolute prerequisite" to any agreement between Foothill and ARY, and that Foothill

decided not to provide "same terms" financing months before defendants allegedly interfered. Thus, for this reason as well, ARY has failed to create a triable issue as to a probable agreement with Foothill, or whether defendants' conduct was the legal cause for ARY's failure to reach agreement with Foothill.

- It is uncontroverted that the December Proposal, with which defendants allegedly interfered, would have required the approval of Foothill's Credit Committee, and that, at best for ARY, one can only speculate as to whether such approval would have been granted. For this additional reason, ARY has failed to create a triable issue as to the probability of agreement on the December Proposal.

- It is uncontroverted that defendants had no knowledge of any ongoing negotiation, much less a probable agreement, between ARY and Foothill at the time the Dow Jones articles were faxed to Foothill in late February 2001.

- It is uncontroverted that IBJ sent the Dow Jones articles to Foothill, at Foothill's request, *after* IBJ had decided not to extend financing to ARY. Thus, contrary to ARY's repeated characterization of ARY and Foothill as "competitors," it is uncontroverted that they were *not* competing for ARY business at the time of the alleged tortious interference. Therefore, ARY has failed to create a triable issue as to defendants' motive to interfere with a possible Foothill-ARY agreement.

- It is uncontroverted that under Foothill's procedures, ARY had an *affirmative obligation* to disclose the criminal charges against Razzak, and the Dow Jones articles, or other news articles discussing the charges (such as one published on the Internet by *The New York Times*), would have been uncovered by Foothill when it conducted its own background check. For these additional reasons, there is no triable issue as to the causation element of the tortious interference claim.

- It is uncontroverted that the Dow Jones articles – ARY refers to them as "client protected information," "potential client information," and "arguably adverse information" – and similar articles from other news outlets – were available on the Internet and from other public sources. Thus, its strained characterizations aside, the fact that Razzak had been criminally charged was not "confidential" under any definition of that term, and therefore cannot form the basis of a "breach of confidentiality" claim.

- Finally, it is uncontroverted that ARY had the ability to pay cash for Krigel's and that it declined to accept financing terms proposed by Foothill on March 27, 2001, even though that proposal was recommended by Mr. Husain of ARY to his boss, ARY's Chairman, Razzak.

Based upon these and other uncontroverted facts, defendants are entitled to judgment as a matter of law on both counts of the First Amended Complaint. By burdening the Court with voluminous opposition papers that focus on such irrelevancies as the validity of the criminal

charges against Razzak, *see, e.g.*, Affidavit of Ijaz-Ul-Ahsan, ARY has only confirmed the correctness of the arguments in defendants' moving papers.  It has further confirmed that this case is an ill-conceived attempt to spin an innocuous transmission of *public* information – which ARY sought to conceal from its prospective lenders – into something sinister.  Despite its efforts to cast itself as a victim wrongfully deprived of an investment opportunity, it is clear that ARY decided not to buy Krigel's for reasons of its own.  Not satisfied to have avoided liability for its decision in the prior Fabrikant and Krigel Litigations, ARY now seeks to game the system for the profits it claims to have lost when it decided to forgo the Krigel's transaction.  ARY's claims are disingenuous, its tactics improper, and this case should be dismissed now.

## ARGUMENT

I.   **TO AVOID SUMMARY JUDGMENT, ARY MUST IDENTIFY SPECIFIC CONTROVERTING FACTS**

Where, as here, a party seeking summary judgment has made a preliminary showing that there is no genuine issue of material fact requiring resolution at trial, the burden shifts to the opposing party to "demonstrate, through specific facts, that a trialworthy issue remains." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997).  An opposing party cannot rely on "effusive rhetoric and optimistic surmise," (*id.*) and the Court "may ignore unsupported conclusions, rank speculation, and opprobrious epithets." *Serapion v. Martinez*, 119 F.3d 982, 987 (1st Cir. 1997).

"A 'genuine' issue is one that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (internal quotation marks omitted ) (citation omitted).  "A 'material' issue is one that affects the outcome of the suit." *Id.* (citation omitted).  If the evidence adduced in opposition is "merely colorable, or is not significantly probative, summary judgment may be granted." *Cadle*, 116 F.3d at 960 (citation omitted).  A failure of proof concerning any essential

element of the nonmoving party's case mandates summary judgment for the moving party.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

ARY has failed to create a trialworthy issue, and summary judgment should be entered

for defendants.

## II.   SUMMARY JUDGMENT SHOULD BE ENTERED
## ON COUNT I OF THE FIRST AMENDED COMPLAINT

### A.   ARY has Failed to Create a Triable Issue on the "Probable Agreement" Element of its Tortious Interference Claim

#### 1.   Foothill and ARY Were not Negotiating at the Time of the Alleged Interference

ARY has failed to come forward with evidence that an agreement with Foothill on the

December Proposal was probable when defendants sent Foothill the Dow Jones articles in late

February 2001.  Def. Br. at 5-11.[3]  Indeed, there is no evidence of any Foothill-ARY negotiation

from December 2000 through late February.  Rather, it is undisputed that, during this period,

ARY was working to finalize an agreement with IBJ and all parties, including Foothill,

understood that *IBJ* would be providing post-bankruptcy financing to ARY/Krigel.  Def. Rule

56.1 Statement ¶¶ 20-22.  Further, it is uncontroverted that it was *after* IBJ allegedly interfered

that ARY approached Foothill to "renew" discussions that had ended when ARY decided to

pursue financing with IBJ.  Def. Rule 56.1 Statement ¶¶ 20-30.

ARY's only answer to these undisputed facts is to assert that it is "preposterous" that

defendants did not know of the "contemplated contract/ongoing negotiations" between ARY and

---

[3]  Citations to "Def. Br." are to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

Foothill. Pl. Br. at 10.[4]  But this argument *assumes* the existence of a "contemplated contract"
and "ongoing negotiations," and is unsupported by record evidence.

ARY seeks refuge in deposition testimony given by Thomas Morgan in the Krigel
Litigation in the Western District of Missouri (the "Missouri Deposition"). Pl. Br. at 10-11.
Neither defendant herein was a party or otherwise involved in the Krigel Litigation.  Thus, as
discussed in defendants' accompanying Motion to Strike, under Fed. R. Evid. 804(b)(1), the
Missouri Deposition is inadmissible hearsay that may not be considered on this motion.[5]  Even
if the Missouri Deposition were admissible, it would not help ARY.  At most, the testimony
ARY quotes shows that after IBJ declined to finance ARY/Krigel, Molinario thought that
Foothill might try to "retain the deal."  This is an insufficient evidentiary basis for a reasonable
jury to conclude that agreement on the December Proposal was probable in late February 2001.

ARY's reliance on the Missouri Deposition is telling.  If, in fact, the December Proposal
was probable as of late February 2001, it would have been easy enough for ARY to submit
competent evidence of negotiations during the relevant time period through Morgan (whose
affidavit makes no mention of any such negotiations), or through Razzak (who participated in the
last round of ARY's negotiations with Foothill in March and April 2001).  Yet ARY has
identified no such evidence, and therefore has failed to create a triable issue of fact on an
essential element of its tortious interference claim.

---

[4]  Citations to "Pl. Br." are to Plaintiff ARY Jewelers LLC's Opposition to Defendants' Motion For Summary
Judgment.

[5]  Thomas Morgan, a former Foothill employee, testified at a lengthy deposition *in this case*.  *See* Reply Affidavit of
Kate Cimini ("Reply Aff.") Ex. 3.  Unhappy with the testimony elicited at that deposition, ARY pretends that it did
not occur, and instead has submitted to the Court the Missouri Deposition, knowing full well that neither defendant
herein was a party to that case or participated in the deposition.

### 2. ARY was Insistent on "Same Terms" Financing, Which <u>Foothill Would not Provide for Reasons Unrelated to Defendants</u>

#### (a)   <u>ARY's Uncontroverted Admissions are Conclusive</u>

ARY agrees that under paragraph 4(c) of the SPA, it was not required to purchase

Krigel's unless Foothill agreed to continue financing on the same terms previously extended. Pl.

Rule 56.1 Statement at 2. ARY further concedes that Foothill decided in December 2000 not to

extend "same terms" financing due to Krigel's poor financial condition. *Id.*; Cole Aff. ¶ 5.

Finally, it is uncontroverted that between December 2000 and March 2001, Krigel's financial

situation deteriorated even further. Cole Aff. ¶ 9 & n.2. For all these reasons, it is clear that a

"same terms" financing agreement between ARY and Foothill was not probable at the time of

the alleged interference in late February 2001. This, coupled with ARY's admissions that it

would have accepted only "same terms" financing, forecloses any argument that any agreement

between Foothill and ARY was probable.[6]

As shown in defendants' moving brief, ARY's Chairman, Razzak, has repeatedly

admitted that ARY was willing to accept only "same terms" financing from Foothill. Def. Br. at

6-10. Indeed, Razzak's sworn declaration in the prior Fabrikant Litigation states that such

financing was an "*absolute prerequisite*"; "*the foundation of all discussions*"; and a "*necessary*

*condition.*" It further states that "*[a]t all times, ARY insisted on*" "same terms" financing.

Affidavit of Kate Cimini ("Cimini Aff.") Ex. F, at 2-3; Def. Br. at 8-10.

ARY does not deny or otherwise controvert the statements attributed to Razzak by

defendants. Unable to deal with Razzak's declaration in the Fabrikant Litigation, ARY simply

ignores it. This head-in-the-sand approach is unavailing. ARY's uncontroverted admissions in

---

[6] The undisputed facts show that, while his subordinate, Mr. Husain, was exploring alternative financing, "same terms" financing was an "absolute prerequisite" for ARY's Chairman and decision-maker, Razzak. ARY concedes that Razzak was the decision-maker for ARY and that Mr. Husain had no authority to reach a financing agreement on behalf of ARY. Reply Aff. Ex. 2 (Razzak Dep.) at 17, 23-24.

the Fabrikant Litigation and elsewhere conclusively establish that an agreement with Foothill, including one on the terms set forth in the December Proposal, was not probable – ARY was insistent on "same terms" financing, and Foothill would not extend such financing.[7]

### (b)     ARY is Judicially Estopped From Arguing it was not Insistent on "Same Terms" Financing

As discussed above, ARY's uncontroverted admissions warrant summary judgment because they negate an essential element of the tortious interference claim. Additionally, summary judgment should be granted based on the doctrine of judicial estoppel. Def. Br. at 8-10. ARY's principal argument is that judicial estoppel should not be applied because this is a tort case and the prior Krigel and Fabrikant Litigations alleged breach of contract. But judicial estoppel does not require that the earlier litigation involve the same legal or factual issues. Rather, it is intended to prevent cynical manipulation of the judicial system, and "applies when 'a party has adopted one position, secured a favorable decision, and then taken a contradictory position in search of legal advantage'". *Alternative Sys. Concepts Inc. v. Synopsys, Inc.*, 374 F.3d 23, 26 (1st Cir. 2004) (citation omitted). That is precisely the situation here.[8]

---

[7] ARY seeks to blunt the force of its admissions by repeatedly asserting that it "orally accepted" the December Proposal. *See, e.g.*, Pl. Br. at 6, 8, 9, 15. Yet ARY cites no record evidence to support this nonsensical assertion. The only time ARY even purports to cite to the record, at page 9 of its brief, it cites to testimony in the inadmissible Missouri Deposition which does not even show any "oral acceptance" by ARY. Instead, it merely refers to comments made by Mr. Husain who, as Razzak confirmed, had no authority to speak for ARY. Reply Aff. Ex. 2 (Razzak Dep.) at 17, 23-24. As ARY concedes, after the December Proposal was declined in December 2000, ARY sought to finalize a financing agreement with IBJ. Def. Rule 56.1 Statement ¶¶ 19-21.

[8] This is a classic case for the application of judicial estoppel. When ARY wished to avoid the SPA in 2001, Razzak stated in letters to Mr. Krigel that ARY would consummate the contract only if ARY received "same terms" financing from Foothill. Def. Br. at 6-7. When that position led to litigation, ARY argued that "same terms" financing was an "absolute prerequisite" to a transaction with Foothill. *Id.* at 8-10. Against that backdrop, and after having secured favorable outcomes in both the Krigel and Fabrikant Litigations, ARY now comes before this Court and argues that it would *not* have required "same terms" financing, but rather would have accepted the admittedly different December Proposal. If ever there was a case where judicial estoppel should be invoked to prevent a litigant from playing "fast and loose" with the courts, this is it.

### 3.    There is no Evidence That Foothill's Credit Committee Would Have Approved the December Proposal

ARY concedes that the December Proposal would have been subject to approval by Foothill's Credit Committee.  Def. Rule 56.1 Statement ¶ 17; Def. Br. at 12-13.  Yet ARY offers no evidence that approval would have been given.  Indeed ARY fails to controvert the disinterested affidavit testimony of Foothill's senior lending officer that "one can only speculate" as to whether the Credit Committee would have approved the December Proposal.  Cole Aff. ¶ 15.  In short, on the record evidence before the Court, it is pure speculation as to how the Credit Committee would have reacted to the December Proposal had it been presented.  For this reason alone, summary judgment is warranted.  *See Singh v. Blue Cross/Blue Shield of Mass., Inc.*, 308 F.3d 25, 48 (1st Cir. 2002) (affirming summary judgment because plaintiff "may not speculate about future business relationships") (citation omitted); *Boyle v. Douglas Dynamics, LLC*, 292 F. Supp. 2d 198,  213-14 (D. Mass. 2003) (summary judgment granted to defendant given the "speculative nature" of future business relationship), *aff'd*, No. 03-2430, 2004 U.S. App. LEXIS 10226 (1st Cir. 2004).

Unable to muster competent evidence to controvert Mr. Cole, ARY points to inadmissible testimony from the Missouri Deposition that Morgan anticipated "a fairly smooth road to close the deal."  Pl. Br. at 3.  Even if admissible, this testimony would not allow a reasonable jury to conclude that the Credit Committee would have approved the December Proposal had it been presented in March or April of 2001.[9]

---

[9]  If the Court wishes to speculate, there is good reason to believe that the Credit Committee would have rejected the December Proposal.  It is undisputed that that proposal was made in December 2000, and reflected Foothill's concerns about Krigel's then financial situation.  Cole Aff. ¶ 5.  It is further undisputed that Krigel's situation deteriorated over the next months.  Cole Aff. ¶ 9.  Under these circumstances, the Credit Committee would have had good reason to reject the December Proposal had it been presented  in the March-April 2001 time frame.

### B.    ARY has Failed to Create a Triable Issue as to Defendants' Knowledge

As discussed above, there is no evidence of a probable agreement between Foothill and ARY at the time of the alleged interference by IBJ. However, even if sufficient proof of a probable agreement existed, ARY could not avoid summary judgment because there is no evidence that defendants knew of any such agreement. Def. Br. at 14-15.

The record includes Mr. O'Connor's unequivocal denial of knowledge. O'Connor Aff. ¶ 11. ARY's only response to this is to speculate that even if O'Connor had no knowledge, Molinario, his subordinate, must have. Pl. Br. at 11. However, like so many of ARY's arguments, this one is not supported by citation to any record evidence. Moreover, ARY has no answer to the undisputed fact that O'Connor made the decision to contact Foothill in the first instance, and to fax the Dow Jones articles after Foothill requested them; Molinario was merely the messenger. O'Connor Aff. ¶ 10. Therefore, it is O'Connor's knowledge, not Molinario's, that is relevant.

Unable to point to competent evidence that O'Connor (or, for that matter, Molinario) "knew" of a probable Foothill-ARY contract, ARY resorts to arguing that O'Connor's uncontroverted affidavit is not credible. However, this meritless attack on Mr. O'Connor is no substitute for admissible evidence and cannot defeat summary judgment.[10] *See Moreau v. Local Union No. 247*, 851 F.2d 516, 519-20 (1st Cir. 1988) ("a mere challenge to the credibility of a movant's witnesses without any supporting evidence does not create a genuine issue of material fact.").

---

[10] In all events, ARY's principal argument – that O'Connor could have checked with ARY before authorizing Molinario to fax the articles – is not persuasive. Merely because O'Connor *could* have checked with ARY cannot support an inference that he knew of a contemplated ARY-Foothill contract.

**C.    ARY has Failed to Create a Triable Issue on the Element of Causation – Foothill Would Have Learned of the Criminal Charges Even if the Articles had not Been Provided by Defendants**

It is uncontroverted that, in accord with industry practice, Foothill would have conducted its own background check of ARY and its principals, and thus uncovered the Dow Jones articles and/or other news stories involving the charges pending against Razzak. Cole Aff. ¶ 16; *see* Def. Br. At 13-14. Indeed, this is corroborated by admissible testimony given by Mr. Morgan in the case at bar. Reply Aff. Ex. 3 (Morgan Dep.) at 135-136. *See also* Reply Aff. Ex. 4 (O'Connor Dep.) at 140.

In response to this devastating record evidence, ARY offers only a recently-crafted affidavit from Morgan stating that he was "*not aware* of any further due diligence or background checks that were either necessary or had been requested." Morgan Aff. ¶ 4 (emphasis added). Notably, Morgan does not state that no background check was required, or that Cole's affidavit or Morgan's own deposition testimony was wrong. Thus, the Morgan affidavit fails to create a genuine issue of material fact on the issue of Foothill's inevitable discovery of the criminal charges against Razzak.[11]

Additionally, it is undisputed that Foothill would have learned of the criminal charges against Razzak for another, entirely independent reason. As Morgan testified at his deposition in this case, pursuant to Foothill's approval process, ARY would have been required to disclose the charges to Foothill. Reply Aff. Ex. 3 (Morgan Dep.) at 142-144.

---

[11] To the extent that the Court deems Morgan's affidavit to be inconsistent with his deposition testimony in this case, the affidavit must be disregarded in any event. *See* Defs.' Mem. in Supp. of their Mot. to Strike at 3. ARY's apparent attempt to utilize the Morgan Affidavit to contradict his deposition testimony given in this case is surprising since much of Mr. Morgan's testimony concerning the robust nature of Foothill's due diligence process was elicited by ARY's own counsel. Reply Aff. Ex. 3 (Morgan Dep.) at 49-50.

**D.    ARY has Failed to Create a Triable Issue as to Whether
Defendants Acted With Improper Motive or Means**

ARY has not come forward with any evidence to establish that defendants intentionally

interfered, or acted with improper motive or means. *See* Def. Br. at 15. Indeed, as already

discussed under Point II.B., above, the record in this case establishes that defendants had no

knowledge of any probable Foothill-ARY financing arrangement at the time the news articles

were sent. Moreover, it is uncontroverted that IBJ decided not to extend financing to ARY

*before* it sent the articles to Foothill, leaving defendants with no motive to interfere with any

potential Foothill-ARY agreement. Def. Br. at 15; O'Connor Aff. ¶¶ 9-10.

ARY's only answer is to yet again refer to the inadmissible Missouri Deposition for the

unremarkable proposition that ARY and IBJ were "competitors". Pl. Br. at 12. But that oft-

repeated refrain gets ARY nowhere. While ARY and IBJ obviously were competitors in the

broad sense of the word, it is uncontroverted that they were *not* competing with respect to ARY

at the time of the alleged interference.

ARY utterly fails to controvert Messrs. Cole and O'Connor's affidavit testimony

establishing that IBJ contacted Foothill for a proper reason, having nothing to do with any intent

to interfere with an ARY-Foothill agreement. O'Connor Aff. ¶ 10; Cole Aff. ¶ 7.[12]   Nor has

ARY adduced evidence that defendants "threatened [plaintiff], misrepresented any facts,

defamed anyone, or used any other improper means." *American Private Line Servs., Inc. v. E.*

---

[12]   Unable to point to controverting evidence, ARY resorts to baseless allegation of "perjured" testimony. Pl. Br. at 9. Defendants are compelled to point out that similar unfounded accusations of perjury, and insinuations that counsel for defendants somehow improperly influenced the deposition witnesses are sprinkled throughout ARY's papers. ARY levels these serious accusations with no basis whatsoever. Indeed, with respect to Mr. Morgan, ARY accuses defendants of somehow manipulating his deposition testimony even though ARY's counsel knows full well that Mr. Morgan testified that he had absolutely no contact whatsoever with counsel for defendants prior to his deposition. Thus, ARY's accusations are worse than unfounded – they are, in fact, directly contradicted by the record. Reply Aff. Ex. 3 (Morgan Dep.) at 6-7.

*Microwave, Inc.*, 980 F.2d 33, 37 (1st Cir. 1992).  And there is "no evidence that 'defendants' violated a statute or a rule of common law."  *Boyle*, 292 F. Supp. 2d at 214.

### E.    ARY has Failed to Create a Triable Issue as to Damages

ARY does not dispute that where a prospective borrower is wrongfully denied financing by a prospective lender, its measure of damages is the difference between the interest (*i.e.*, financing costs) it would have paid, and the interest it in fact paid to procure substitute financing. Def. Br. at 17-19.  Higher damages may be awarded only where, among other things, no substitute financing is available.  *Id.*

ARY suggests that the rule limiting damages as set forth above should not apply here because the cases cited in defendants' moving brief are contract cases, whereas this is a tort case. This distinction, however, is irrelevant.  There is no sound basis, and ARY suggests none, to vary the measure of calculating damages depending on whether the desired financing fails to materialize because of a tort, or due to a contract breach.  In both instances, the prospective borrower is left in exactly the same position, and must mitigate damages by seeking substitute financing.  Where such financing is available, damages in both situations are properly measured by higher interest costs, if any, the borrower must pay.

Assuming, *arguendo*, that the December Proposal was ARY's "desired" financing, it is uncontroverted that Foothill offered ARY substitute financing in the form of the March 27, 2001 proposal, but that ARY elected not to accept it.  Def. Rule 56.1 Statement ¶¶ 32-34.  And ARY elected not to pay cash for Krigel's, *which, ARY does not dispute, it was able to do*.  Def. Rule 56.1 Statement ¶ 19; Def. Br. at 19, n.11.  Thus, ARY comes directly within the rule that a prospective borrower cannot decline substitute financing and claim damages based on an alleged inability to complete the transaction for which financing was sought.

The voluminous affidavits submitted by ARY attaching invoices for its legal fees in the earlier litigations are utterly irrelevant to the damages issue presented by defendants' motion, and serve only to burden the Court with unnecessary paper.[13]

### III.    SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT II OF THE FIRST AMENDED COMPLAINT

This Court also should enter summary judgment on Count II of ARY's First Amended Complaint, which alleges that the sending of the Dow Jones articles breached a confidential or fiduciary duty owed to ARY.

The parties agree that Massachusetts law applies to this diversity case. Yet ARY cites no Massachusetts case or statute that recognizes a cause of action for breach of a duty of confidentiality, much less in the factual context of this case. This Court should decline ARY's invitation to create a new cause of action under Massachusetts law.[14]

In those jurisdictions that recognize a cause of action for "breach of confidentiality," courts generally have applied it only to physician-patient and bank-depositor relationships, and have expressly excluded *bank-borrower* relationships from its scope. *See, e.g., Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 449 (S.D.N.Y. 1988) ("New York recognizes an implied duty of confidentiality between a bank and its depositors, but not between a bank and its borrowers"); *Graney Dev. Corp. v. Taksen*, 400 N.Y.S.2d 717, 720 (Sup. Ct.), *aff'd,* 411

---

[13] Additionally, ARY has submitted an affidavit of a purported expert, Shirley Webster, in which she makes calculations with respect to the "lost profits" damages allegedly suffered by ARY. This affidavit is irrelevant because it is based upon the assumption that ARY is entitled to lost profits damages. As discussed above, based upon the applicable law, ARY is not entitled to such damages. Moreover, because Ms. Webster's affidavit focuses on calculation of damages (as opposed to the issue of whether damages are even recoverable), it does not address the issues raised by defendants' motion, and does not even begin to raise a triable issue of fact.

[14] Unable to find any basis for its claim in Massachusetts law, ARY has searched far and wide in a fruitless attempt to find authority to support its claim. However, ARY's reliance upon such cases as *Groob v. Keybank*, 801 N.E.2d 919 (Ohio Ct. App. 2003) and *Djowharzadeh v. City Nat'l Bank & Trust Co.*, 646 P.2d 616 (Okla. Civ. App. 1982), is misplaced, as they involve situations where banks utilized confidential customer information to essentially steal their customer's business opportunity. They have absolutely no relevance to any of the issues in this case.

N.Y.S.2d 756 (App. Div. 1978). Thus, even in those jurisdictions, ARY, as a prospective

borrower, would have no claim.

Even if Massachusetts law recognized a cause of action for breach of a duty of

confidentiality – which it does not – ARY's claim would be subject to dismissal, as it is based on

the nonsensical premise that publicly-disseminated news articles obtained from the Internet can

somehow be considered "confidential" information. ARY cannot muster any support for this

absurd proposition.

ARY and its "experts" continually point to a federal statute, the Financial Services

Modernization Act (the "Act"), in support of their assertion that the current "trend" is for lenders

not to disclose customer information "whether public or not." Pl. Br. at 17. However, the Act

shows that *Congress reached just the opposite conclusion*, and that the Act's provisions apply

only to "nonpublic" information. *See* 15 U.S.C. § 6801. Thus, the Act provides that "publicly

available information" is specifically excluded from any confidentiality requirements, 15 U.S.C.

§ 6809(4)(B). Moreover, the Final Rule issued by the Federal Trade Commission pursuant to the

Act, which sets forth the regulations to be followed by banks and lending institutions, expressly

states that "information from . . . a web site that is available to the general public" is the very

definition of publicly available information which is *not* entitled to the Act's protection. *See* 16

CFR §313.3(p)(3)(ii), Privacy of Consumer Financial Information. *See also Trans Union LLC v.*

*FTC,* 295 F.3d 42 (D.C. Cir. 2002)(upholding FTC rule excluding publicly available information

from protection). In short, the very statute cited by ARY and its experts – indeed, the *only*

statute cited – confirms that the very public nature of the material at issue precludes any possible claim of breach of a duty of confidentiality.[15]

Additionally, ARY's purported claim is belied by the undisputed record evidence in this case. Indeed, ARY and its experts ignore the deposition testimony by disinterested non-party witnesses that establishes that it is not unusual for lenders to advise other lenders of a decision not to finance, or to provide information concerning prospective borrowers, under circumstances such as those that existed in this case. Reply Aff. Ex. 3 (Morgan Dep.) at 29-31, 51-52, 94, 129-131, 184, 187-88; Reply Aff. Ex. 1 (Molinario Dep.). at 63, 105, 119-120, 134, 154-157; Reply Aff. Ex. 5 (Kennedy Dep.) at 35-40, 85-88; Reply Aff. Ex. 4 (O'Connor Dep.) at 95-96, 111. Thus, ARY's assertion that merely notifying Foothill that IBJ would not be proceeding with financing somehow is wrongful is undermined by uncontroverted evidence it ignores. Moreover, because it is undisputed that Foothill was anticipating that its facility would be paid off by an IBJ loan, Foothill necessarily would learned of IBJ's decision in any event.

Finally, even assuming, *arguendo*, that defendants breached a "duty of confidentiality" by sending the Dow Jones articles to Foothill, Count II would fail because, as discussed above, Foothill would have learned of the criminal charges against Razzak absent the purported breach. For this and other reasons discussed above, ARY can show no causal relationship between the alleged misconduct and its alleged injury.

In sum, ARY's claim for breach of confidential or fiduciary duty is without any legal or factual support. Accordingly, this Court should grant summary judgment dismissing Count II of

---

[15] Courts that have considered the issue are in accord. *See, e.g., Williams v. Coffee County Bank*, 308 S.E.2d 430, 432 (Ga. Ct. App. 1983) (where information transmitted by bank to plaintiff's employer was public, there can be no claim of breach of any duty of confidentiality; "[i]t would be anomalous indeed to permit appellant to recover for appellees' breach of an implied duty of confidentiality when the only information disclosed was a matter of public record" and where the employer "could have obtained the same information from the appropriate public authorities"); *First Nat'l Bank in Lenox v. Brown*, 181 N.W.2d 178 (Iowa 1970) (bank has no obligation to protect information that is a matter of public record).

the First Amended Complaint, and also should preclude ARY from amending its complaint to add new "breach of confidentiality" claims. As discussed in defendants' papers in opposition to ARY's motion to amend, ARY's proposed new claim is simply a repackaged version of Count II of its existing complaint.

## CONCLUSION

For all the foregoing reasons, and those set forth in defendants' moving papers, the Court should enter summary judgment in favor of defendants and dismiss ARY's First Amended Complaint in its entirety.

IBJTC BUSINESS CREDIT CORPORATION and DAVID MOLINARIO

By their attorneys,


/s/ Kate Cimini
Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000


Robert S. Fischler (Admitted Pro Hac Vice)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700


Dated: September 29, 2005

**Certificate of Service**

I hereby certify that on September 29, 2005, copies of the foregoing Reply Memorandum and the Reply Affidavit of Kate Cimini with attached exhibits were served on counsel for the plaintiff Stephen P. Carrigan, The Carrigan Law Firm, LLP, 1331 Lamar, Suite 1550, Houston, TX 77010 by E-mail and Federal Express.

/s/ Kate Cimini
Kate Cimini