```
                                                          Page 1
 1
 2  UNITED STATES DISTRICT COURT
    FOR THE DISTRICT OF MASSACHUSETTS
 3
    ARY JEWELERS, LLC,              )
 4                                  )
              Plaintiff,            )
 5                                  )
              vs.                   ) No. C.A. No. 04
 6                                  ) CV 10281EFG
    IBJTC BUSINESS CREDIT           )
 7  CORP. AND DAVID MOLINARO,       )
                                    )
 8            Defendant.            )
    ---------------------------------
 9
10
11
12          DEPOSITION OF ABDUL RAZZAK
13               New York, New York
14             Tuesday, May 10, 2005
15
16
17
18
19
20
    Reported by:
21  NANCY SILBERGER
    JOB NO. 173087
22
23                                      COPY
24
25
```

Esquire Deposition Services
1-800-944-9454

EXHIBIT 2

Page 17

2 killing time. Could he explain that?

3    A.   Like coming to this country, then
4 I'll start from one, and if I have to reach
5 to 20, how much time it will take. Killing
6 time means that.

7    Q.   **Do you mean that you would start
8 with one jewelry business and build to 20; is
9 that what you are saying?**

10   A.   Yes. What I meant was, it was both
11 a chain and if the chain was ready in that
12 case.

13   Q.   **Who gave Mr. Hussein the authority
14 to sign the agreement on behalf of ARY?**

15   A.   It happened on that very day. I
16 had a fever and I was in Houston. I had my
17 seat confirmed to leave there, but doctor
18 advised me not to travel, so I asked him to
19 sign.

20   Q.   **So you authorized Mr. Hussein to
21 sign the agreement; is that true?**

22   A.   Only for that occasion.

23   Q.   **How did you determine that the
24 price in the agreement was acceptable?**

25   A.   My life, I've been dealing in this

Page 23

1
2 conditions they offered was not acceptable at
3 all.
4    Q.   If Foothill had offered to continue
5 financing on the same terms, would that have
6 been acceptable to you?
7    A.   Hundred percent why I come over
8 here.
9    Q.   Did Mr. Hussein recommend to you to
10 accept the terms that Foothill was proposing?
11    A.   No.  He was not my boss.  It was a
12 discussion and a decision we're going -- it
13 was me who was to accept it.
14    Q.   I understand that.  My question is:
15 Did Mr. Hussein suggest or recommend to you
16 that you accept it?
17    A.   No.  He was working person.  He
18 cannot suggest to me.
19    Q.   Do you recall him giving you advice
20 concerning the financing that was offered by
21 Foothill?
22    A.   You're talking after or before?
23    Q.   I'm talking about before you made
24 the decision to reject the Foothill terms.
25    A.   All he said, that if these terms

Page 24

1
2 are acceptable to you. That's what he said.
3    Q.   Did Mr. Hussein tell you that he
4 was negotiating with other banks in addition
5 to Foothill?
6    A.   Actually, he used to talk different
7 things at different times, so it was of no
8 use to rely on him.
9    Q.   Did he tell you that if you
10 accepted Foothill's terms that a new lender
11 on more favorable terms could quickly be
12 substituted for Foothill?
13    A.   It's not like this. Everybody has
14 their own planning. I am the beneficiary --
15 manufacturer myself. Why should I get from
16 somebody who have the high price?
17    Q.   My understanding is that the
18 agreement with Krigel's was signed in
19 November of 2000; is that correct?
20    A.   I cannot remember every date
21 exactly.
22    Q.   Did Mr. Hussein report to you that
23 he spoke to Foothill, at that time,
24 concerning the willingness of Foothill to
25 continue financing on the same terms?

Page 43

1
2       of Harvey Razzak, marked for
3       identification, as of this date.)
4       Q.   I have shown you a document that
5  has been marked Exhibit B, which appears to
6  be a declaration that you submitted in one of
7  the lawsuits in Missouri relating to the
8  Krigel transaction; do you recognize this
9  document?
10              (Witness perusing document.)
11      A.   If it's my signature, then it's
12 okay.
13      Q.   Are the statements that you make in
14 this document true?
15      A.   Yes.
16      Q.   Let me show you another document
17 marked Exhibit A. This appears to be a letter
18 that you sent to Scott Krigel, dated April 5,
19 2001. Do you recognize it?
20              (Witness perusing document.)
21      A.   Yes.
22      Q.   Are the statements in that letter
23 true?
24      A.   Yes.
25      Q.   Are you familiar with an attorney