ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARY Jewelers, LLC.,<br>            Plaintiff,<br><br>v.<br><br>IBJTC Business Credit Corp. and<br>David Molinario,<br>            Defendants. | CIVIL ACTION NO. 04:-CV-10281 EFH |

## SECOND AMENDED COMPLAINT

Plaintiff ARY Jewelers, LLC ("Plaintiff") files this Second Amended Complaint against IBJTC Business Credit Corp. and David Molinario (collectively "Defendants") and alleges:

## PARTIES

1. Plaintiff is a limited liability corporation organized under the laws of the State of Nevada with the address of its registered agent as Corporation Trust Company of Nevada, 6100 Nail Road, Suite 500, Reno, Nevada, 89511. Plaintiff was formed for the purpose of acquiring Krigel's, Inc. ("Krigel's"), a chain of retail jewelry stores doing business in the United States.

2. Defendant IBJTC Business Credit Corp. ("IBJTC") is a New York corporation located at 1251 Avenue of the Americas, New York, New York. Defendant has made an appearance in this lawsuit.

3. Defendant David Molinario is an individual who, upon information and belief, resides at 22 Norton Street, Hyde Park, Massachusetts, 92316. Defendant Molinario has made an appearance in this lawsuit.

1

## JURISDICTION AND VENUE

4. This court has jurisdiction over the subject matter and all parties herein. The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, this being an action between citizens of different states with the amount in controversy exceeding the statutory minimum of $75,000 exclusive of interest and costs.

5. Upon Defendants' motion to transfer venue, and over Plaintiff's opposition, the case was transferred to this Court from the Western District of Missouri.

## COUNT I - TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCIES

6. Plaintiff incorporates the allegations of paragraphs 1 through 5 as if set forth fully herein.

7. In the fall of 2000, Plaintiff had executed a stock purchase agreement with Krigel's, a chain of retail jewelry stores, whereby Plaintiff would buy all of the stock of Krigel's. At the time of the execution of the stock purchase agreement, Krigel's was in a precarious financial condition and was facing inevitable bankruptcy, unless it was sold to an entity which could provide a large infusion of capital. The stock purchase agreement contemplated that Krigel's would file a pre-packaged bankruptcy, its stock would be acquired by Plaintiff out of the bankruptcy proceedings and Krigel's unsecured creditors would be paid sixty percent (60%) of the debt owed to them by Krigel's. Foothill Capital Corporation ("Foothill Capital") had loaned Krigel's approximately $8,000,000 that was secured by Krigel's assets. The stock purchase agreement was contingent upon Foothill Capital continuing to provide financing to Krigel's during the pendency of the bankruptcy proceedings and also after Krigel's came out of bankruptcy with all of its stock owned by Plaintiff.

8. Accordingly, Plaintiff required financing from Foothill Capital or some other lender in an amount of more than $ 8 million dollars.

9. Plaintiff began negotiations for the required financing with Foothill Capital.

10. In December, 2000, Foothill Capital issued to Plaintiff a financing proposal letter or term sheet dated December 15, 2000 ("December Term Sheet"). This December Term Sheet contained the terms of the financing which Foothill Capital proposed to make to Plaintiff so that Plaintiff could carry out the terms of the stock purchase agreement with Krigel's.

11. The December Term Sheet set forth such items as pricing, fees, and the structure of the financing which Foothill Capital proposed to Plaintiff.

12. Although Plaintiff continued to negotiate for more favorable terms, Plaintiff would have accepted the terms contained in the December Term Sheet. However, before Plaintiff and Foothill Capital could consummate the financing, Defendants contacted Foothill Capital and informed it that Defendants knew that Foothill Capital was negotiating financing with Plaintiff and accused Plaintiff of being involved in embezzling, bribery for contracts to mint gold coins for the Olympic games being held in Sydney, Australia, and other illegal conduct.

13. Based on this information, Foothill Capital then changed the terms of its proposed financing to Plaintiff's detriment. Under the terms of Foothill Capital's later proposals, among other changes detrimental to Plaintiff, Plaintiff would have been eligible to receive little money, if any, to close the stock purchase agreement. Those terms and Foothill Capital's other proposed changes were not acceptable to Plaintiff. Accordingly, Foothill Capital never consented to continued financing under the stock purchase agreement.

14. Because the financing fell through, Plaintiff was unable to acquire Krigel's out of bankruptcy as contemplated by the stock purchase agreement.

15. While in bankruptcy, Krigel's, later joined by creditors of Krigel's, sued Plaintiff in an adversary proceeding in the bankruptcy court, seeking *inter alia*, to enforce the stock purchase agreement and seeking damages for breach of contract. The bankruptcy court abstained and dismissed that adversary proceeding. Creditors of Krigel's thereafter sued Plaintiff in the United States District Court for the Western District of Missouri, seeking damages for *inter alia*, breach of contract and misrepresentation. After the District Court dissolved a temporary restraining order, and refused to grant a preliminary injunction, the creditors voluntarily dismissed that lawsuit.

16. Plaintiff also sued Scott Krigel in an escrow contest filed in Johnson County, Kansas District Court to recover $1.5 million that Plaintiff was required to deposit into two escrow accounts under the terms of the stock purchase agreement and related agreements. The Kansas District Court awarded Plaintiff summary judgment on all claims.

17. There was a valid business relationship or expectancy between Plaintiff and Foothill Capital, or Plaintiff had a reasonable expectancy of business relations with Foothill Capital.

18. Upon information and belief, Defendants knew of this business relationship, and/or reasonable expectancy of business relations.

19. Upon information and belief Defendants intentionally interfered with Plaintiff's business relationship, and/or reasonable expectancy of business relations with Foothill Capital, inducing or causing a breach of the business relations, and/or expectancy.

20. Defendants' actions were without justification.

21. Defendants' conduct damaged Plaintiff.

22.     Additionally, Defendants intended to commit a wrongful act without just cause or excuse, which entitles Plaintiff to punitive damages.

## COUNT II – BREACH OF CONFIDENTIAL OR FIDUCIARY RELATIONSHIP

23.     Plaintiff incorporates the allegations of paragraphs 1 through 22 as if set forth fully herein.

24.     Plaintiff and Defendants had a confidential and/or fiduciary relationship, which imposed on Defendants a fiduciary duty and/or a duty to act honestly and in good faith toward Plaintiff. Among other bases, such fiduciary duty arose because Defendants owed Plaintiff a duty of confidentiality under both common and statutory law.

25.     Upon information and belief, Defendants breached that duty by communicating information to Foothill Capital which caused it to change the terms of the December Term Sheet to Plaintiff's detriment.

26.     Defendants' breach caused Plaintiff damages.

27.     Defendants actions were so wanton, willful, malicious, and adverse to Plaintiff's interest, that Plaintiff is entitled to punitive damages.

## COUNT III --VIOLATIONS OF M.G.L. CHAPTER 93A

28.     Plaintiff incorporates the allegations of paragraphs 1 through 27 as if set forth fully herein.

29.     Defendant IBJ's acts as set forth herein constitute violations of Massachusetts General Law Chp. 93A, which prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

30.     Defendant IBJ's actions in violation of Chp. 93A caused Plaintiff damages to which it is entitled to recover thereunder.

31.  Upon information and belief, Defendant IBJ's acts or practices herein described were committed wilfully or knowingly, and thus, entitle Plaintiff to recover additional damages as provided by § 11 of M.G.L. Chp. 93A.

32.  Plaintiff is also entitled to an award of reasonable attorney's fees and costs pursuant to § 11 of M.G.L. Chp. 93A.

## COUNT IV – BREACH OF IMPLIED CONTRACT OF CONFIDENTIALITY

33.  Plaintiff incorporates the allegations of paragraphs 1 through 32 as if set forth fully herein

34.  Plaintiff's and Defendant IBJ's relationship was such that a contract can be implied requiring Defendants to hold information in confidence.

35.  Defendant IBJ breached that duty by conveying the information to Foothill and thereby caused Plaintiff damages.

## DAMAGES

36.  Plaintiff incorporates the allegations of paragraphs 1 through 35 as if set forth fully herein.

37.  Plaintiffs suffered damages, general and special, as a direct and proximate result of Defendants' conduct, including, but not limited to the following: (1) benefit of the bargain, (2) lost profits, (3), reliance, (4) incidental damages, including, but not limited to attorney's fees, costs, and expenses Plaintiff incurred in prosecuting and defending itself against lawsuits which arose because of Defendants' conduct, (5) punitive and/or additional damages; (6) attorney's fees and costs from this litigation as allowed by statute; and (7) all other losses and damages within the limits of this Court.

## PRAYER

WHEREFORE, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial, Plaintiff be awarded the following relief:

1. Actual damages;

2. Punitive damages;

3. Costs, including reasonable attorney's fees;

4. Prejudgment interest;

5. Postjudgment interest; and

6. Such other and further relief, general and special, at law or in equity the Court deems just and proper.

Dated:   September ___, 2005        Respectfully submitted,

THE CARRIGAN LAW FIRM, L.L.P.

By: _____
Stephen P. Carrigan (Admitted Pro Hac Vice)
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)
*Attorney-in-Charge for Plaintiff*

OF COUNSEL:

**THE CARRIGAN LAW FIRM, L.L.P.**
Jill L. Groff (Admitted Pro Hac Vice)
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)
*Of Counsel for Plaintiff*

**MAHENDRU, P.C.**
Ashish Mahendru BBO#647661
1111 Bagby, Suite 2000
Houston, Texas 77002
(713) 571-1519 (telephone)
(713) 651-0776 (telefax)
*Of counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded as indicated below by certified mail, facsimile and/or hand delivery, return receipt requested in accordance with the Federal Rules of Civil Procedure on this 14th day of September, 2005.

Robert S. Fischler
ROPES & GRAY, L.L.P.
45 Rockefeller Plaza
New York, NY 10111
Tel: (212)841-0444

_____
Jill L. Groff