UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARY JEWELERS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>IBJTC BUSINESS CREDIT CORPORATION<br>and DAVID MOLINARIO,<br><br>    Defendants. | Civil Action No. 04-10281-EFH |

## DEFENDANTS' STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

Pursuant to Local Rule 56.1, defendants IBJTC Business Credit Corporation ("IBJ") and David Molinario ("Molinario") submit that the following are material facts as to which there is no genuine issue to be tried:

1. Plaintiff ARY Jewelers, LLC ("ARY") is a limited liability company which exists under the laws of Nevada. Sec. Am. Compl. ¶ 1. ARY was formed in 2000 for the purpose of purchasing the outstanding stock of Krigel's, Inc. ("Krigel's"), which was a privately owned company that operated a chain of retail jewelry stores in the midwestern United States. *Id.*

2. ARY is part of the ARY Group, a multinational, billion-dollar enterprise headquartered in Dubai in the United Arab Emirates. Cimini Aff. Ex. I (Razzak Dep.) at 7:2-9:10; Cimini Aff. Ex. C. The Chairman of the ARY Group is Abdul Razzak, who, with other members of the Razzak family, owns the ARY group of companies. Cimini Aff. Ex. I (Razzak Dep.) at 6:18-7:20.

3. Defendant IBJ ceased operating as a going concern in 2002, when its assets were sold. O'Connor Aff. ¶ 2. During the relevant period, IBJ operated in Braintree, Massachusetts as a finance company specializing in secured lending to middle market companies. Id. ¶¶ 2-3.

4. Defendant Molinario was employed as a vice president at IBJ during the relevant period. Cimini Aff. Ex. H (Molinario Dep.) at 20:16-18.

5. Scott Krigel beneficially owned all of the outstanding stock of Krigel's. On November 21, 2000, Mr. Krigel entered into a Stock Purchase Agreement (the "SPA") with ARY. Sec. Am. Compl. ¶ 7; O'Connor Aff. Ex. A.

6. The SPA contemplated that ARY would buy all of Krigel's stock, and that Krigel's would file for Chapter 11 bankruptcy (which it did in January 2001), and later emerge from bankruptcy under the ownership of ARY. O'Connor Aff. Ex. A.

7. Pursuant to the SPA and related agreements, ARY was to pay $7.5 million in cash and assume Krigel's debt of $8.5 million to its secured creditor, Foothill Capital ("Foothill"). Sec. Am. Compl. ¶ 7; O'Connor Aff. Ex. A.

8. ARY had the ability to pay the entire purchase amount for Krigel's in cash. Cimini Aff. Ex. I (Razzak Dep.) at 15:12-18; Cimini Aff. Ex. G, ¶ 9.

9. Steven Cole was the senior officer at Foothill responsible for the Krigel's account. Cole Aff. ¶¶ 1-2. Shortly after the SPA was signed, Scott Krigel and Mr. Husain (of ARY) asked whether Foothill would continue the Krigel's financing on the same terms in the Foothill-Krigel's credit facility then in place if Krigel's emerged from bankruptcy under ARY's ownership. Cole Aff. ¶ 4.

10. On December 15, 2000, Foothill presented ARY with a "term sheet" setting forth the basic terms of a potential new credit facility (the "December Proposal"). Cole Aff. ¶ 4.

ARY decided not to accept Foothill's terms and to seek more favorable financing from other lenders.

11. One lender with which ARY and Scott Krigel discussed potential financing was IBJ. Under the auspices of its senior vice president, Francis D. O'Connor, Jr., IBJ provided a term sheet for post-bankruptcy financing to ARY/Krigel's on January 24, 2001. O'Connor Aff. ¶ 6, Ex. B.

12. The IBJ term sheet was accepted, and the parties sought in the next weeks to conclude a financing agreement pursuant to which IBJ would provide financing to Krigel's after its emergence from bankruptcy under ARY's ownership. O'Connor Aff. ¶ 7. The terms in the term sheet were to be embodied in a final agreement once IBJ's due diligence was satisfactorily completed, and other conditions were satisfied. O'Connor Aff. ¶ 7, Ex. B, p. 3.

13. In or about early February 2001, Mr. Husain and Scott Krigel advised Foothill that IBJ would be refinancing Krigel's, and that the refinancing would be used, among other things, to pay off Krigel's $8 million debt to Foothill. Cole Aff. ¶ 5.

14. As part of its standard due diligence process, IBJ ordered a background check on ARY from an outside vendor, LCF Associates ("LCF"), which is located in Braintree, MA. O'Connor Aff. ¶ 7.

15. LCF located and sent to IBJ two news articles published by Dow Jones Newswire on the Internet. O'Connor Aff. ¶ 8, Ex. C. The articles revealed that ARY's Chairman, Mr. Razzak, had been charged by Pakistani authorities with paying a $10 million bribe to the former Pakistani prime minister in connection with a lucrative gold importation contract that Pakistan had awarded to ARY. *Id.*[1]

---

[1] As reported in *The New York Times*: In January 1994, ARY deposited $10 million in a Citibank account controlled by Asif Zardiri, the husband of the then prime minister of Pakistan, Benazir Bhutto. In November 1994,

16. ARY had not previously disclosed this matter to IBJ. O'Connor Aff. ¶ 8. After learning of the charges, Mr. O'Connor discussed them with Mr. Husain. Because that conversation did not allay Mr. O'Connor's concerns, he decided that IBJ would not proceed with the financing for ARY/Krigel's. O'Connor Aff. ¶ 9.

17. IBJ advised ARY of its decision on February 28, 2001. O'Connor Aff. ¶ 9, Ex. D.

18. Mr. O'Connor correctly understood that Foothill was expecting its outstanding loan to Krigel's to be repaid with proceeds from the anticipated IBJ credit facility. O'Connor Aff. ¶ 5; Cole Aff. ¶ 5. Under the circumstances, he concluded that IBJ should give Foothill the professional courtesy of letting it know that IBJ would not be financing ARY. O'Connor Aff. ¶ 10.

19. O'Connor instructed one of IBJ's junior loan officers, defendant David Molinario, to contact Foothill. O'Connor Aff. ¶ 10.

20. On or about February 28, 2001, Mr. Molinario telephoned Foothill and advised it of IBJ's decision and the reason why IBJ was not proceeding. After Foothill requested copies of the articles, Mr. O'Connor authorized Mr. Molinario to fax them to Foothill. O'Connor Aff. ¶ 10; Cimini Aff. Ex. H (Molinario Dep.) at 110:4-16.

21. Shortly after IBJ declined to finance ARY, ARY turned back to Foothill as a potential financing source. Foothill issued a revised proposal to ARY dated March 20, 2001.

---

ARY was granted a license by Pakistan which made it Pakistan's sole authorized gold importer. Mr. Razzak of ARY acknowledged in an interview that he had used the license to import more than $500 million in gold into Pakistan and that he had met several times with Bhutto and Zardiri. As for the deposits to the Citibank account, Razzak suggested to the *Times* that someone who wished to destroy Razzak's reputation had contrived to have ARY identified as the depositor. John F. Burns, *Bhutto Clan Leaves Trail of Corruption in Pakistan*, The New York Times, Jan. 9, 1998, at 1-2, 8 (Cimini Aff. Ex. B).

Cole Aff. ¶ 9.  Mr. Husain of ARY requested certain changes to this proposal, to which Foothill agreed, resulting in another proposal dated March 27, 2001.  *Id.* ¶ 9.

22.   Each of Foothill's proposals was presented in a letter that set forth several conditions that had to be satisfied before Foothill would finally agree to provide financing.  Cole Aff. ¶ 11.  One condition was that the borrower execute a litigation search, which required disclosure of any litigation involving the borrower, its affiliates, or principals.  *Id.* ¶ 11; Cimini Aff. Ex. J (Morgan Dep.) at 142:24-144:5.  Accordingly, ARY would have been required to disclose to Foothill the existence of the bribery charges prior to the closing of any financing agreement.  *Id.*

23.   Foothill also would have performed its own background check of ARY and its principals, consistent with its customary practice and the practice of lenders generally.  Cole Aff. ¶ 12.  The background check would have included, among other things, a search of media databases.  *Id.* ¶ 12.  This background check would have revealed either the very same news articles that IBJ sent to Foothill or other news reports about the criminal charges filed against Mr. Razzak.  *Id.* ¶ 12.

24.   After securing Foothill's agreement on his requested revisions to the March 20 proposal, Mr. Husain sent a fax to ARY's Chairman, Mr. Razzak, telling him: "My point of view is that we accept the revised terms."  Cimini Aff. Ex. D, ¶ 5.  Mr. Husain explained that he had prevailed upon Foothill to change various terms in ARY's favor, and that he was "already working on" getting more attractive terms from another bank.  He further advised Mr. Razzak that once this other financing was lined up, ARY could "get rid of" Foothill without incurring a "prepayment penalty."  *Id.* ¶ 8.

25. Despite Foothill's concessions, Mr. Husain's recommendation, and the prospect of quickly getting even better terms from another lender, Mr. Razzak rejected the March 27 Proposal. On April 5, 2001, Mr. Razzak sent a letter to Scott Krigel terminating the SPA. Cimini Aff. Ex. E.

26. Krigel's was later sold to Hannoush Jewelers for $9.3 million, substantially less than the $16 million ARY had agreed to pay under the SPA. Cimini Aff. Ex. F at p. 3, ¶ F.

IBJTC BUSINESS CREDIT CORPORATION
and DAVID MOLINARIO
By their attorneys,


/s/ Christopher R. Dillon
Christopher R. Dillon (BBO No. 640896)
Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000


Robert S. Fischler (Admitted Pro Hac Vice)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700


Dated: October 24, 2005