UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARY JEWELERS, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>IBJTC BUSINESS CREDIT CORP.<br>AND DAVID MOLINARIO,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 04-10281 (EFH)

**Oral Argument Requested**

# MEMORANDUM OF LAW IN
# SUPPORT OF DEFENDANTS'
# MOTION FOR SUMMARY JUDGMENT

Christopher R. Dillon (BBO No. 640896)
Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Robert S. Fischler (Admitted Pro Hac Vice)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700

9847411_1.DOC

# TABLE OF CONTENTS

**Page**

I. THE STANDARD FOR SUMMARY JUDGMENT .................................................................. 7

II. SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT I OF THE
SECOND AMENDED COMPLAINT ........................................................................................ 8

    A.    There Was No Intentional Interference Through Improper Motive or Means ....... 8

    B.    ARY Cannot Prove Causation – Any Lost Advantage Was Not The Direct Result of The Alleged Interference ................................................................. 10

    C.    ARY Cannot Prove That There Was a Probable Agreement Between ARY and Foothill or That Defendants Knew of Any Such Agreement ............................... 11

III. SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNTS II AND III OF THE
SECOND AMENDED COMPLAINT ...................................................................................... 12

IV. SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNT IV OF THE
SECOND AMENDED COMPLAINT ...................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

FEDERAL CASES

*American Private Line Services, Inc. v. Eastern Microwave,*
   980 F.2d 33 (1st Cir. 1992) .................................................................................................9

*Boyle v. Douglas Dynamics, L.L.C.,*
   292 F. Supp. 2d 198 (D. Mass. 2003), *aff'd*, No. 03-2430,
   2004 WL 1171370 (1st Cir. May 25, 2004) ................................................................*passim*

*Capizzi v. F.D.I.C.,*
   Civ. A. No. 90-12775-S, 1993 WL 723477 (D. Mass. Mar. 9, 1993) ..................................13

*Celotex v. Catrett,*
   477 U.S. 317 (1986) ...............................................................................................................8

*Garside v. Osco Drug,*
   895 F.2d 46 (1st Cir. 1990) .....................................................................................................8

*Lane v. First National Bank of Boston,*
   737 F. Supp. 118 (D. Mass. 1989) ...................................................................................14, 15

*Sharma v. Skaarup Ship Management Corp.,*
   699 F. Supp. 440 (S.D.N.Y. 1988) .......................................................................................12

*TransUnion LLC v. FTC,*
   295 F.3d 42 (D.C. Cir. 2002) ...............................................................................................13

*Trent Partners & Associates Inc. v. Digital Equipment Corp.,*
   120 F. Supp. 2d 84 (D. Mass. 1999) ......................................................................................8

STATE CASES

*Adcom Products Inc. v. Konica Business Machines USA, Inc.,*
   41 Mass. App. Ct. 101 (1996) ................................................................................................8

*Bueller v. Carey,*
   57 Mass. App. Ct. 1106 (2003) .............................................................................................14

*First National Bank in Lenox v. Brown,*
   181 N.W.2d 178 (Iowa 1970) ...............................................................................................13

*Graney Development Corp. v. Taksen,*
   400 N.Y.S.2d 717 (Sup. Ct.), *aff'd*, 411 N.Y.S.2d 756 (App. Div. 1978) ............................12

*Pembroke Country Club, Inc. v. Regency Savings Bank,*
   62 Mass. App. Ct. 34 (2004) .................................................................................14

*United Truck Leasing Corp. v. Geltman,*
   406 Mass. 811 (1990) .................................................................................8, 9

*Williams v. Coffee County Bank,*
   308 S.E.2d 430 (Ga. Ct. App. 1983) ..........................................................13

STATUTES & RULES

15 U.S.C. § 6801 ...........................................................................................13

15 U.S.C. § 6809(4)(B) .................................................................................13

16 C.F.R. § 313.3(p)(3)(ii) ............................................................................13

Fed. R. Civ. P. 56(c) .......................................................................................7

## PRELIMINARY STATEMENT

Defendants IBJTC Business Credit Corp. ("IBJ") and its former employee, David Molinario, submit this memorandum in support of their motion for summary judgment on all counts of the Second Amended Complaint of plaintiff ARY Jewelers, LLC ("ARY"). Summary judgment should be granted on all counts because each is based on the absurd allegation that defendants violated a "duty of confidentiality" by sending to a third party news articles published on the Internet by the Dow Jones News Service. As discussed further below, the information in those articles (which had also been published by other media outlets, including The New York Times), was necessarily *non*-confidential, and no statute or rule of common law even arguably would impose liability for the disclosure of such public information.

This case arises out of ARY's agreement in November 2000 to buy Krigel's, Inc. ("Krigel's"), a chain of jewelry stores. The purchase price was $16 million – $7.5 million in cash, plus the assumption of Krigel's $8.5 million debt to its secured lender, Foothill Capital Corp. ("Foothill"). ARY initially sought to have Foothill continue its financing, but the terms offered by Foothill were not to ARY's liking. It then sought financing from defendant IBJ, which proposed terms acceptable to ARY. A "term sheet" was signed memorializing the basic terms of a deal whereby IBJ would refinance Krigel's and replace Foothill as the company's secured lender. The refinancing was to be finalized after further due diligence by IBJ and the fulfillment of other conditions. Foothill was advised that ARY was negotiating a refinancing agreement with IBJ, and that Krigel's debt to Foothill would be repaid from the funds to be advanced by IBJ.

As part of its standard due diligence review, IBJ ordered a background check on ARY. The vendor who performed the check provided IBJ with news articles located on the Internet web site of the Dow Jones News Service. The articles reported that Abdul Razzak, ARY's

9847411_1.DOC

Chairman and owner, had perpetrated an illegal bribery scheme in order to secure a lucrative contract for ARY from the government of Pakistan, and that criminal charges had been brought against Razzak. ARY had not previously disclosed any of this to IBJ. After discussing the situation with Razzak's representative, IBJ decided not to do business with ARY, and therefore not to refinance Krigel's.

IBJ promptly notified both ARY and Foothill of its decision and, at Foothill's request, provided it with copies of the Dow Jones articles. Thereafter, ARY approached Foothill with a renewed request for financing. Foothill again made a proposal, but Razzak again rejected Foothill's terms, and he elected to terminate ARY's agreement to buy Krigel's. The company was later sold to another buyer for a substantially lower price than ARY had agreed to pay.

Two years later, ARY commenced this lawsuit. Each of its claims is based on the allegation that IBJ breached a supposed "duty of confidentiality" by sending the Dow Jones articles to Foothill, and that this somehow prevented ARY from purchasing Krigel's. Aside from the undisputed fact that ARY chose not to buy Krigel's for its own business reasons, ARY's claims fail as a matter of law:

**First**, the articles – which were located on *the Internet* – constitute public, not private or confidential, information. Indeed, it is difficult to conceive of information that is more in the public domain than articles published by a well-known news service on the Internet. Not surprisingly, no Massachusetts statute or rule of common law prohibits the transmission of public news articles, or supports the imposition of liability for the transmission of public information.[1]

**Second**, transmission of the articles had no impact on any potential loan agreement between ARY and Foothill because Foothill would have learned of the criminal

---

[1] The parties agree that Massachusetts law applies to this diversity action.

charges against Razzak in all events. Among other things, before entering into a financing agreement with ARY, Foothill would have done the same background check that led IBJ to discover the existence of the articles and the criminal charges against Razzak. Thus, there was no causal relationship between IBJ providing the articles to Foothill and ARY's failure to buy Krigel's.

**Third**, as to defendant David Molinario, ARY's claims are nothing short of outrageous. He was a junior loan officer at IBJ who did no more than physically provide the Dow Jones articles to Foothill at the direction of his boss. In recognition of the absence of any conceivable basis for its claims against Mr. Molinario, ARY's counsel represented the following to Mr. Molinario at the conclusion of his deposition:

> I hope someone publishes the fact that I'm going to recommend to my client that you be released from this lawsuit after this deposition and that Google erases any trace of your name as a defendant.

Cimini Aff. Ex. H (Molinario Dep.) at 194:9-13.[2] Thereafter ARY refused to drop Mr. Molinario as a defendant, a decision which it has refused to explain or defend. Inexplicably, ARY included Mr. Molinario as a defendant in its recently filed Second Amended Complaint.

For all the foregoing reasons, and others discussed below, the Court should grant summary judgment in favor of both IBJ and Mr. Molinario and dismiss this meritless case now.

## PARTIES AND PRIOR PROCEEDINGS

### The Parties

ARY is part of the ARY Group, a multinational, billion-dollar enterprise headquartered in Dubai in the United Arab Emirates. Cimini Aff. Ex. I (Razzak Dep.) at 7:2-9:10; Cimini Aff.

---

[2] Accompanying this memorandum are the following submissions by defendants: (1) Affidavit of Kate Cimini, Esq., dated October 24, 2005; (2) Affidavit of Francis J. O'Connor, dated August 2, 2005; (3) Affidavit of Steven Cole, dated October 20, 2005; and (4) Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried, dated October 24, 2005.

Ex. C. Through its affiliated companies, the ARY Group engages throughout the world in such businesses as gold and jewelry, foreign exchange, media and real estate. *Id.* The Chairman of the ARY Group is Abdul Razzak, who also is the principal owner of the ARY group of companies. Cimini Aff. Ex. I (Razzak Dep.) at 6:18-7:20.

During the relevant period, defendant IBJ was located in Braintree, MA, where it was in the business of providing financing to middle market companies. O'Connor Aff. ¶¶ 2-3. IBJ ceased operating as a going concern in 2002. *Id.* Defendant David Molinario was employed as a vice president and junior loan officer at IBJ. Cimini Aff. Ex. H (Molinario Dep.) at 20:16-18. He currently works in Boston and is a resident of Wrentham, MA.

**Prior Proceedings**

ARY commenced this action in the United States District Court for the Western District of Missouri in 2003, and shortly thereafter filed its First Amended Complaint. Defendants moved to dismiss for lack of personal jurisdiction or, alternatively, to transfer to this Court pursuant to 28 U.S.C. § 1404(a). The motion to transfer was granted, and on February 10, 2004, the case was transferred to this Court. Fact discovery was completed in June 2005. The Second Amended Complaint was filed on October 11, 2005. Defendants' answer to that pleading, which denies the material allegations therein, was filed on October 21, 2005.

## FACTS

On November 21, 2000, ARY and Scott Krigel entered into an agreement pursuant to which ARY was to purchase Krigel's stock for approximately $7.5 million in cash and the assumption of an $8.5 million debt owed to Krigel's lender, Foothill. O'Connor Aff. Ex. A; Cole Aff. ¶ 3. Krigel's was about to file for bankruptcy, and the purchase agreement contemplated that it would emerge from bankruptcy under ARY's ownership. O'Connor Aff. ¶ 4.

In December 2000, Foothill presented ARY with a proposal for the continued financing of Krigel's debt to Foothill, which ARY rejected. Cole Aff. ¶ 4. ARY then sought financing from IBJ, which made a preliminary proposal that ARY accepted. On January 24, 2001, an IBJ "term sheet" was signed. It set forth terms under which IBJ would refinance Krigel's and replace Foothill as the company's secured lender. O'Connor Aff. ¶¶ 6-7, Ex. B. These terms were to be embodied in a final agreement once IBJ's due diligence was satisfactorily completed, and other conditions were satisfied. O'Connor Aff. ¶ 7, Ex. B, at 3. In early February 2001, Foothill was advised that IBJ would be refinancing Krigel's, and that the refinancing would be used to pay off Krigel's $8.5 million debt to Foothill. Cole Aff. ¶ 5.

As part of its standard due diligence process, IBJ ordered a background check on ARY from an outside vendor, LCF Associates ("LCF"), which was located in Braintree, MA. O'Connor Aff. ¶ 7. LCF sent to IBJ two news articles published by Dow Jones Newswire on the Internet. O'Connor Aff. ¶ 8. The articles revealed that ARY's Chairman and owner, Abdul Razzak, had been criminally charged by Pakistani authorities with paying a $10 million bribe to the former Pakistani prime minister to secure a lucrative gold importation contract for ARY. *Id.* ¶ 8, Ex. C. The payment had also been reported by other media outlets, including The New York Times. Cimini Aff. Ex. B at 2, 8-9.[3] ARY had not previously disclosed the criminal charges to IBJ. O'Connor Aff. ¶ 8. After learning of them, Mr. O'Connor discussed the matter with Gohar Husain, ARY's representative in the U.S. *Id.* ¶ 9. Because that conversation did not allay Mr.

---

[3] The story in *The New York Times* entitled "Bhutto Clan Leaves Trail of Corruption in Pakistan," detailed the allegations against ARY and Mr. Razzak. Cimini Aff. Ex. B at 8-9. As reported in *The New York Times*: In January 1994, ARY deposited $10 million in a Citibank account controlled by Asif Zardiri, the husband of the then prime minister of Pakistan, Benazir Bhutto. In November 1994, ARY was granted a license by Pakistan which made it Pakistan's sole authorized gold importer. Mr. Razzak of ARY acknowledged in an interview that he had used the license to import more than $500 million in gold into Pakistan and that he had met several times with Bhutto and Zardiri. As for the deposits to the Citibank account, Razzak suggested to the *Times* that someone who wished to destroy Razzak's reputation had contrived to have ARY identified as the depositor. John F. Burns, *Bhutto Clan Leaves Trail of Corruption in Pakistan*, The New York Times, Jan. 9, 1998, at 1-2, 8 (Cimini Aff. Ex. B).

O'Connor's concerns, he decided that IBJ could not proceed with the financing for ARY/Krigel's. IBJ advised ARY of its decision on February 28, 2001. *Id.* ¶ 9, Ex. D.

Mr. O'Connor correctly understood that Foothill was expecting its outstanding loan to Krigel's to be repaid with proceeds from the anticipated IBJ refinancing. O'Connor Aff. ¶ 5; Cole Aff. ¶ 5. Under the circumstances, he decided that IBJ should give Foothill the courtesy of letting it know that IBJ would *not* be financing ARY. O'Connor Aff. ¶ 10. Accordingly, he instructed one of IBJ's junior loan officers, defendant David Molinario, to contact Foothill. O'Connor Aff. ¶ 10. On or about February 28, 2001, Mr. Molinario telephoned Foothill and advised it of IBJ's decision. After Foothill requested copies of the articles, Mr. O'Connor authorized Mr. Molinario to fax them to Foothill. O'Connor Aff. ¶ 10; Cimini Aff. Ex. H (Molinario Dep.) at 110:4-16.[4]

Throughout this lawsuit, ARY has strained to portray the transmission of the Dow Jones articles as an improper attempt by IBJ to prevent a "competitor" from winning a deal. But as ARY well knows, while Foothill and IBJ are "competitors" in the broad sense of the word, it is undisputed that the articles were sent *after IBJ decided not to do business with ARY*. Therefore, there can be no legitimate argument that IBJ was "competing" with Foothill for ARY's business, and that it sent the articles to prevent Foothill from "winning" that business.

After IBJ declined to refinance Krigel's, ARY renewed discussions with Foothill. Despite having learned of the criminal charges, on March 20, 2001, Foothill proposed financing terms to ARY. Cole Aff. ¶ 9. Changes were requested by Husain of ARY, and agreed to by Foothill. On March 27, 2001, it submitted a revised proposal to ARY. *Id.* ¶ 9. Husain

---

[4] It is undisputed that Mr. O'Connor made the decision to contact Foothill initially, and to send it the articles, and that Mr. Molinario's role was limited to carrying out Mr. O'Connor's directions. O'Connor Aff. ¶ 10; Cimini Aff. Ex. H (Molinario Dep.) at 110:4-16.

recommended that Razzak accept the revised proposal on behalf of ARY. Cimini Aff. Ex. D, ¶ 5.[5] However, Razzak had by that time decided not to go forward with the Krigel's transaction. Accordingly, he rejected the March 27 proposal, and chose not to pay cash to consummate the purchase of Krigel's.[6] Cimini Aff. Ex. E. Soon thereafter, Krigel's was sold to another buyer for $9.3 million, substantially less than the $16 million ARY had agreed to pay. Cimini Aff. Ex. F, p. 3, ¶ F.

Despite the fact that Foothill offered financing to ARY, and that ARY had other means to purchase Krigel's, ARY now comes to this Court seeking millions of dollars of "lost profit" damages, claiming that IBJ's transmission of the Dow Jones articles somehow prevented ARY from buying Krigel's, and reaping the profits this purchase supposedly would have garnered. But the undisputed facts are fatal to ARY's claims – including that each claim is based on the patently flawed premise that IBJ breached a "confidentiality" duty by transmitting the Dow Jones articles to Foothill. Accordingly, summary judgment should be granted to defendants.

## ARGUMENT

### I. THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A 'genuine' issue is one that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party."

---

[5] After Foothill had orally agreed to the changes he requested to the March 20 proposal, Husain wrote to Razzak, stating: "My point of view is that we accept the revised terms." Cimini Aff. Ex. D, ¶ 5. Husain explained that he was in the process of negotiating financing with another bank and that if ARY could strike a better deal with that bank, ARY could "get rid of" Foothill without paying any prepayment penalty. Id. ¶ 8.

[6] As Razzak admitted at his deposition, and other documents show, ARY could have been able to pay all cash for Krigel's if it wished to do so. Cimini Aff. Exs. G, ¶ 9, & I (Razzak Dep.) at 15:12-18.

*Garside v. Osco Drug*, 895 F.2d 46, 48 (1st Cir. 1990) (citation omitted). Here, there are no genuine issues of material fact, and summary judgment should be granted to defendants on all counts of the Second Amended Complaint.

## II. SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNT I OF THE SECOND AMENDED COMPLAINT

Count I alleges that defendants tortiously interfered with a prospective business advantage. In order to prevail on such a claim, a plaintiff must prove: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such contract; (3) the defendant's intentional interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct. *See Boyle v. Douglas Dynamics, L.L.C.*, 292 F. Supp. 2d 198, 213 (D. Mass. 2003), *aff'd*, No. 03-2430, 2004 WL 1171370 (1st Cir. May 25, 2004); *Trent Partners & Assocs. Inc. v. Digital Equip. Corp.*, 120 F. Supp. 2d 84, 112 (D. Mass. 1999). The uncontroverted evidence shows that ARY cannot prove each of these elements, and therefore that it is not entitled to present this claim to a jury.[7]

### A. There Was No Intentional Interference Through Improper Motive or Means

To show intentional interference through improper motive, ARY must prove that defendants acted out of "enmity" or to "hurt" ARY. *See Adcom Prods. Inc. v. Konica Bus. Machs. USA, Inc.*, 41 Mass. App. Ct. 101, 105 (1996); *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 817 (1990). Here, there is no such evidence. To the contrary, defendants had no motive, much less an improper one, to interfere with a potential Foothill-ARY loan agreement because *IBJ was not competing with Foothill for ARY's business*. Rather, IBJ had already decided *not* to do business with ARY, and therefore had no reason to attempt to cause ARY not

---

[7] A failure of proof concerning *any* element of ARY's claim mandates summary judgment in favor of defendants. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

to enter into a loan agreement with Foothill. As Mr. O'Connor has explained, he decided to contact Foothill concerning IBJ's decision not to refinance Krigel's because Foothill was expecting to be repaid some $8.5 million from funds it expected IBJ would be advancing to Krigel's. O'Connor Aff. ¶ 10; Cole Aff. ¶ 5. He therefore considered it to be a "professional courtesy" to let Foothill know that the anticipated refinancing would not happen. O'Connor Aff. ¶ 10. In view of this uncontroverted testimony, ARY cannot prove to a reasonable jury that IBJ intentionally interfered or that it acted to "hurt" ARY or out of "enmity" toward ARY.[8]

Nor can ARY prove that IBJ used improper means. To do so, it must show "that defendants violated a statute or rule of common law," *Boyle*, 292 F. Supp. 2d at 214, or that they made threats, defamatory statements, or misrepresentations of fact. *United Truck Leasing Corp.*, 406 Mass. at 817; *American Private Line Serv.*, 980 F.3d at 37. There is no allegation, much less evidence, that defendants here did any of these things. Instead, it is undisputed that they merely advised Foothill of a true fact – *i.e.*, that IBJ would not be financing ARY because of an issue related to IBJ's background check. As requested by Foothill, IBJ then faxed news articles which were not private or confidential, but which were *in the public domain*. There is no allegation or evidence that ARY vouched for the accuracy of the articles or purported to have independent knowledge of the criminal conduct described in the articles. And uncontradicted evidence shows that the articles were sent in the context of a communication initiated by IBJ for the sole purpose of advising Foothill that IBJ would not be refinancing Krigel's, and thus would not be providing the funds which Foothill expected to receive in repayment of its outstanding loan. In view of the

---

[8] Of course, even if IBJ *were* competing for ARY's business, that would not have constituted an improper motive for purposes of a tortious interference claim. *See American Private Line Servs., Inc. v. E. Microwave*, 980 F.2d 33, 37 (1st Cir. 1992) (quoting *Doliner v. Brown*, 21 Mass. App. 692 (1986) ("A competitor may interfere with another's contractual expectancy by picking the deal off for himself, if, in advancing his own interest, he refrains from employing unlawful means.")).

foregoing, no reasonable jury could conclude that defendants intentionally interfered through improper means.

### B. ARY Cannot Prove Causation – Any Lost Advantage Was Not The Direct Result of the Alleged Interference

Summary judgment should be granted as to Count I for the separate reason that ARY cannot prove that it lost a financing deal with Foothill as a "direct result" of IBJ sending Foothill the Dow Jones articles. *Boyle*, 292 F. Supp. 2d at 213.

First, ARY would have learned of the charges *when it did its own background check* prior to finalizing any agreement with ARY. Mr. Cole's affidavit establishes that the background check IBJ performed was standard practice for lenders, and that Foothill would have done essentially the same background check as IBJ, including a search of media databases. Cole Aff. ¶ 12; O'Connor Aff. ¶ 7. Therefore, as Mr. Cole states, there is *"no doubt that [Foothill's] background check would either have revealed the very same news articles that IBJ had sent to Foothill, and/or other news reports about the criminal charges filed against Mr. Razzak."* Cole Aff. ¶ 12 (emphasis added).[9]

Additionally, Foothill would have learned of the criminal charges because, under its lending procedures, a prospective borrower must execute a "litigation search," which requires disclosure of any litigation in which the borrower or its principals are involved. This is established both by Mr. Cole's affidavit, and deposition testimony from Thomas Morgan, a junior loan officer at Foothill who worked on the Krigel's account. Cole Aff. ¶ 11; Cimini Aff. Ex. J (Morgan Dep.) at 142:24-144:5. As their testimony makes clear, the "litigation search" condition would have required ARY "to disclose to Foothill the existence of the bribery charges

---

[9] As discussed, the Dow Jones articles were not the only places where Razzak's allegedly illicit dealings were publicly reported. For example, The New York Times reported on the matter in some detail. Cimini Aff. Ex. B at 2, 8-9.

prior to the closing of any financing agreement." Cole Aff. ¶ 11. For this additional reason, a reasonable jury could only conclude that Foothill would have learned, before entering into an agreement with ARY, of the bribery charges even had IBJ not sent Foothill the Dow Jones articles. Therefore, ARY cannot prove the causation element of its tortious interference claim.

### C. ARY Cannot Prove That There Was a Probable Agreement Between ARY and Foothill or That Defendants Knew of Any Such Agreement

Summary judgment should be granted on Count I for the further reason that ARY cannot prove, as it must, the existence of a probable financing agreement with Foothill at the time the articles were sent. *Boyle*, 292 F. Supp. 2d at 213 (plaintiff alleging tortious interference must, at a minimum, prove "a probable future business relationship"). The undisputed evidence shows that ARY and Foothill were *not* even in negotiations in late February 2001, when IBJ sent the articles to Foothill. Rather, it was only after the articles were sent that ARY and Foothill renewed discussions about possible financing. Cole Aff. ¶ 8. Thus, while a Foothill-ARY agreement was "possible" in late February 2001 when the articles were sent, there is no evidence from which a reasonable jury could conclude that such an agreement was "probable."

The fact that no agreement was probable means that ARY cannot prove, as it must, that IBJ or Mr. Molinario knew of a probable agreement at the time of the alleged tortious interference. *See Boyle*, 292 F. Supp. 2d at 213-14. Even assuming, *arguendo*, that a probable agreement between Foothill and ARY did exist, the evidence is uncontroverted that neither Mr. O'Connor nor Mr. Molinario of IBJ knew of it. O'Connor Aff. ¶ 11; Cimini Aff. Ex. H (Molinario Dep.) at 101:15-23.

In short, ARY cannot prove that it had a probable agreement with Foothill at the time of the alleged tortious interference, or that defendants knew of such an agreement. For each of these additional reasons, Count I must fail.

## III. SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNTS II AND III OF THE SECOND AMENDED COMPLAINT

Counts II and III of the Second Amended Complaint allege that in sending the Dow Jones articles to Foothill, IBJ breached a confidential or fiduciary duty owed to ARY. These Counts are meritless, as they are based on the nonsensical allegation that news articles on the Internet and otherwise in the public domain somehow constitute "confidential" information which cannot lawfully be disclosed.

Research has located no Massachusetts case recognizing a claim for "breach of confidentiality." In those jurisdictions that do recognize such a claim, courts generally have applied it only to physician-patient and bank-depositor relationships, and have *expressly excluded* bank-borrower relationships from its scope. *See, e.g., Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 449 (S.D.N.Y. 1988) ("New York recognizes an implied duty of confidentiality between a bank and its depositors, but not between a bank and its borrowers"); *Graney Dev. Corp. v. Taksen*, 400 N.Y.S.2d 717, 720 (Sup. Ct.), *aff'd*, 411 N.Y.S.2d 756 (App. Div. 1978). Thus, even in those jurisdictions, ARY, as a prospective borrower, would have no claim.

Of course, even if Massachusetts law recognized a cause of action for breach of a duty of confidentiality – which it does not – ARY's claim would be subject to dismissal, as it is based on the nonsensical premise that publicly-disseminated news articles obtained from the Internet can somehow be considered "confidential" information. ARY cannot muster any support for this absurd proposition.

In expert reports served by ARY in this case, its compensated "experts" point to a federal statute, the Financial Services Modernization Act (the "Act"), in support of an assertion that the current trend is for lenders not to disclose customer information whether public or not.

However, the Act shows that *Congress reached just the opposite conclusion*, and that the Act's provisions apply only to "nonpublic" information. *See* 15 U.S.C. § 6801. Thus, the Act provides that "publicly available information" is specifically excluded from any confidentiality requirements, 15 U.S.C. § 6809(4)(B). Moreover, the Final Rule issued by the Federal Trade Commission pursuant to the Act, which sets forth the regulations to be followed by banks and lending institutions, expressly states that "information from . . . a web site that is available to the general public" is the very definition of publicly available information which is *not* entitled to the Act's protection. *See* 16 CFR § 313.3(p)(3)(ii), Privacy of Consumer Financial Information. *See also Trans Union LLC v. FTC*, 295 F.3d 42 (D.C. Cir. 2002) (upholding FTC rule excluding publicly available information from protection). In short, the very statute cited by ARY and its experts – indeed, the *only* statute cited – confirms that the very public nature of the material at issue precludes any possible claim of breach of a duty of confidentiality.[10]

Finally, under Massachusetts law, absent special circumstances not present here, the relationship between a borrower and lender is not fiduciary in character. *See Capizzi v. F.D.I.C.*, Civ. A. No. 90-12775-S, 1993 WL 723477, at *11 (D. Mass. Mar. 9, 1993) ("Traditionally, Massachusetts courts have viewed a bank's relationship with its customers simply as one of creditor and debtor, a relationship not giving rise to fiduciary obligations.") (citation omitted). Here, where ARY was only a potential customer of IBJ, no fiduciary relationship existed.

---

[10] Courts that have considered the issue are in accord. *See, e.g., Williams v. Coffee County Bank*, 308 S.E.2d 430, 432 (Ga. Ct. App. 1983) (where information transmitted by bank to plaintiff's employer was public, there can be no claim of breach of any duty of confidentiality; "[i]t would be anomalous indeed to permit appellant to recover for appellees' breach of an implied duty of confidentiality when the only information disclosed was a matter of public record" and where the employer "could have obtained the same information from the appropriate public authorities"); *First Nat'l Bank in Lenox v. Brown*, 181 N.W.2d 178 (Iowa 1970) (bank has no obligation to protect information that is a matter of public record).

## IV. SUMMARY JUDGMENT SHOULD BE GRANTED ON COUNT IV OF THE SECOND AMENDED COMPLAINT

Count IV alleges a violation by IBJ of Massachusetts General Law Chapter 93A, under which "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Mass. Gen. L. ch.93A, § 2. It is alleged that IBJ's violation was "willfully or knowingly," committed thus entitling ARY to double or treble damages under § 11 of Chapter 93A. ARY also seeks an award of attorneys' fees under the statute.

As this Court explained in *Lane v. First National Bank of Boston*, 737 F. Supp. 118 (D. Mass. 1989) (Harrington, J.): "Whether a trade practice is 'unfair' is determined by whether the act is (1) within at least the penumbra of common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive or unscrupulous; and (3) whether it causes substantial injury to other businessmen. *Id.* at 119 (citations omitted).

The challenged conduct here – the sending of the Dow Jones articles to Foothill – cannot support liability under Chapter 93A for at least two reasons. First, IBJ's conduct does not meet the standard for unfair conduct set forth above. As discussed previously, the conduct violated no statute or common law rule. Moreover, it was not immoral, unethical or otherwise of a "reprehensible" nature sufficient to warrant liability under Chapter 93A. *Lane*, 737 F. Supp. at 120. There is no claim, nor could there be, that sending the articles was a "deceptive" practice.

Second, where, as here, a Chapter 93A claim is derivative of a deficient tortious interference claim, the Chapter 93A claim also must fail. *See Pembroke Country Club, Inc. v. Regency Sav. Bank*, 62 Mass. App. Ct. 34, 40-41 (2004) (where the record is insufficient to establish the tortious interference claim, it is "likewise insufficient to establish an ... unfair or deceptive act or practice"); *Bueller v. Carey*, 57 Mass. App. Ct. 1106, 1106 (2003) ("To the

extent that the plaintiffs' claim that the defendant committed an unfair or deceptive act or practice violative of G.L. c. 93A, § 2, refers to alleged tortious interference with an advantageous economic relationship, summary judgment on the tortious interference claim disposes of the related c. 93A claim as well."). Accordingly, if the Court grants summary judgment on ARY's tortious interference claim, the Chapter 93A claim should be dismissed as well.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the defendants' motion for summary judgment and dismiss the Second Amended Complaint in its entirety.

        IBJTC BUSINESS CREDIT CORPORATION
        and DAVID MOLINARIO
        By their attorneys,

        /s/ Christopher R. Dillon
        Christopher R. Dillon (BBO No. 640896)
        Kate Cimini (BBO No. 654336)
        Ropes & Gray LLP
        One International Place
        Boston, Massachusetts 02110-2624
        (617) 951-7000

        Robert S. Fischler (Admitted Pro Hac Vice)
        Ropes & Gray LLP
        45 Rockefeller Plaza
        New York, NY 10111
        (212) 841-5700

Dated: October 24, 2005