IN THE UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In Re | ) | Chapter 11 |
| | ) | |
| KRIGEL'S, INC., | ) | Case No. 01-40276—jwv |
| | ) | |
| Debtor. | ) | |
| | ) | |

### ORDER AUTHORIZING AND APPROVING (A) SALE OF ASSETS BY DEBTOR UNDER U.S.C. § 363(b) TO HANNOUSH JEWELERS, INC. PURSUANT TO TERMS OF ASSET PURCHASE AGREEMENT, OUTSIDE THE ORDINARY COURSE OF BUSINESS, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES, (B) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES UNDER ASSET PURCHASE AGREEMENT, AND (C) CONSUMMATION OF RELATED TRANSACTIONS

This matter came before the Court in accordance with the procedures established in this Court's Order dated April 17, 2001 (A) Approving Stalking Horse Bid; (B) Granting Authority to Sell Assets Pursuant to 11 U.S.C. § 363(b); (C) Establishing Certain Bidding Procedures; (D) Setting Deadline to Change Prior Acceptance or Rejection of Plan; (E) Approving Notice Procedures; (F) Granting Authority to Adopt Employee Retention and Performance Incentive Program; and (G) Authorizing Sales Without Interference or Restrictions in Lease (the "Bidding Order"), which provided, among other relief, for the establishment of certain bidding procedures for the sale of substantially all of the assets of Krigel's, Inc. (the "Debtor" or "Seller") and approval of the sale of certain of the Debtor's assets to the highest and best bidder at an auction to be held on April 27, 2001 (the "Auction"), free and clear of liens, claims, interests and encumbrances pursuant to § 363(b) of the Bankruptcy Code; and the Auction having been conducted on such date, and the Court having previously entered the Bidding Order; and upon the record established at the Auction, any objections thereto, and the evidence and arguments of all parties in interest at the Auction, it appearing and having been represented to the Court that Hannoush Jewelers, Inc. ("Hannoush" or "Buyer") has

{10817.01/269462;}

EXHIBIT

F

tabbies®

made the highest and best bid and that the sale to Hannoush by the Debtor of certain of its Assets (the "Purchased Assets") pursuant to an Asset Purchase Agreement dated as of April 30, 2001 (the "Agreement"), entered into by and between the Debtor and Hannoush, a copy of which is attached hereto as Exhibit "A" and incorporated by reference herein, is in the best interests of the Debtor, its estate, and all creditors and parties in interest; and after due deliberation, with good and sufficient cause appearing therefor

THE COURT HEREBY FINDS THAT:

A.     The Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334; venue of this proceeding in this district being proper pursuant to 28 U.S.C. §1409(a); the Sale Motion (as defined below) constitutes a "core" proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (N); the statutory predicates for the relief requested herein being Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 7052, 7062, 8005, 9014.

B.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall later be determined to be a conclusion of law it shall be so deemed, and vice versa. Unless otherwise indicated, capitalized terms used in this Order without definition shall have the meanings ascribed to such terms in the Agreement.

C.     Notice of the Auction was given to the creditors and parties in interest by the Debtor in accordance with the Bidding Order, as shown by the Certificate of Service duly filed.  A reasonable opportunity to object or be heard regarding Debtor's Motion for Order (A) Approving Stalking Horse Bid; (B) Granting Authority to Sell Assets Pursuant to 11 U.S.C. §363(b); (C) Establishing Certain Bidding Procedures; (D) Setting Deadline to Change Prior Acceptance or Rejection of Plan; (E) Approving Notice Procedures; (F) Granting Authority to Adopt Employee Retention and

Performance Incentive Program; and (G) Authorizing Sales Without Interference or Restrictions in Lease ("Sale Motion") was afforded to all interested persons and entities including, without limitation, (i) all parties who claim an interest in or liens upon the Purchased Assets; (ii) all governmental taxing authorities who had or who as a result of the sale of Purchased Assets, may have, claims, contingent or otherwise against the Debtor; (iii) all parties to executory contracts and unexpired leases of the Debtor listed on Schedule G of Debtor's schedules; (iv) all parties who filed notices of appearance and requests for notices in Debtor's bankruptcy case; and (v) all parties that expressed an interest in purchasing some or all of the Purchased Assets and all other potential bidders for all or any portion of the Purchased Assets identified to date.

D.    The foregoing notice provisions were due, sufficient, adequate and appropriate under the circumstances and satisfy the requirements of all applicable laws, including, without limitation, the Bankruptcy Code, the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Western District of Missouri, and the Due Process Clause of the United States Constitution.

E.    At the Auction, qualified bidders were afforded a fair and reasonable opportunity to bid on the Purchased Assets.

F.    As a result of the hearing immediately after the Auction, this Court determined that Hannoush submitted the highest and best offer pursuant to the terms of the Bidding Order. The value of Hannoush's offer was determined to be Nine Million Three Hundred Thirteen Thousand Two Hundred Dollars ($9,313,200), as more fully set forth in the bid comparison grid attached hereto as Exhibit "B." Pursuant to the terms of the Agreement, Hannoush is to pay Debtor eighty and one-tenth percent (80.1%) of the Cost Value of Debtor's Inventory (as such terms are defined in the Agreement) which Cost Value is approximately $10,200,000, or approximately $8,170,200.00 in

proceeds. In addition, Hannoush will pay Debtor the sum of $543,000.00 for other acquired assets, including all of Debtor's accounts receivable (including those previously written off), furniture, fixtures and equipment as set forth in the Agreement. Hannoush will also pay up to $126,000.00 of the costs of curing any defaults under Debtor's leases pursuant to 11 U.S.C. § 365(b)(1) in connection with the assumption and assignment of Debtor's leases to Hannoush under 11 U.S.C. § 365(a) and (f). Debtor will retain any and all of its assets not expressly sold to Hannoush under the Agreement, including but not limited to (i) layaway merchandise, (ii) deposits and prepaid expenses, and (iii) causes of action, including without limitation Debtor's cause of action against ARY Jewelers, LLC. **Goods allegedly held "on memo" or "on consignment" are not included in the Agreement.** These goods have been segregated and have been or are being shipped to Debtor's corporate headquarters. Hannoush shall act as the Debtor's agent with respect to the sale of layaway goods through and including May 31, 2001 (the "Pickup Date"). With respect to any and all layaway goods not redeemed by customers on or before the Pickup Date, Hannoush shall purchase such layaway goods from Debtor for a price of seventy-three percent (73%) of the Cost Value of such layaway goods. Hannoush shall have up to ten (10) days after Closing (as defined below) to identify which of Debtor's leases it wishes to have assigned to Hannoush. During such ten-day period, Hannoush shall be responsible for the cost of occupancy expenses (as more fully described in the Agreement) with respect to such leases. Hannoush shall have the right, for 90 days after Closing, to conduct Inventory Liquidation or store closing sales on any of Debtor's leased premises, provided Hannoush is responsible for all occupancy expenses during such time (as more fully described in the Agreement).

G.      Hilco Merchant Resources, LLC and Silverman Consultants, Inc., the stalking horse bidder pursuant to the Sale Order, shall be entitled to receive a Breakup Fee in accordance with the Bidding Order in the amount of $25,000.00 from Debtor's proceeds.

H.      The Debtor is the owner of the Purchased Assets described in the Agreement, and said Purchased Assets are property of the Debtor's estate pursuant to 11 U.S.C. §541.

I.      The Debtor has (a) full corporate power and authority to execute the Agreement and all other documents contemplated thereby and the sale of the Purchased Assets has been duly and validly authorized by all necessary corporate actions of the Debtor; and (b) all the corporate power and authority necessary to consummate the transaction contemplated by the Agreement, and no consents or approvals, other than expressly provided in the Agreement, are required for the Debtor to consummate such transactions.

J.      As established by the outcome of the Auction and the evidence, testimony and arguments presented to the Court at the Auction, the Agreement represents the highest and best offer the Debtor has received for the Purchased Assets of those bids received in accordance with the Bidding Order and, accordingly, the sale and transfer of the Purchased Assets to Hannoush pursuant to the Agreement, and the consummation of the other transactions contemplated thereby, are fair, reasonable, and in the best interests of the Debtor, its bankruptcy estate and all creditors and parties in interest. The consideration to be conveyed by Hannoush to the Debtor in exchange for the Purchased Assets and consummation of the transactions contemplated by the Agreement constitutes fair consideration and reasonably equivalent value under the Bankruptcy Code and applicable state law and was the highest and best offer received for the Purchased Assets in accordance with the Bidding Order. The record establishes that there are good, valid, and sound business purposes for the sale by the Debtor of the Purchased Assets to Hannoush, and consummation of the other

transactions contemplated by the Agreement, and the Debtor's determination to enter into these transactions constitutes the reasonable exercise of its business judgment. Cause exists for the sale of the Purchased Assets on an emergency basis and its attendant procedures because any further delay in the sale of the Purchased Assets would cause the Debtor substantial expense for the continued preservation and protection of estate assets, which expenses are not provided for under the Debtor's DIP Financing arrangement with Foothill Capital Corporation. ("Foothill") or available from other sources. The Debtor has satisfied the standards of In re Lionel Corp., 722 F.2d 1063 (2nd Cir. 1983).

K.      Foothill consents to the sale to Hannoush pursuant to § 363(f)(2) of the Bankruptcy Code, subject to the terms of this Order.

L.      Hannoush has acted in good faith in accordance with the standards of applicable law. Hannoush is not affiliated with or related to the Debtor or any of its affiliates or any of their respective insiders. Hannoush is a good faith purchaser under § 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby. In the absence of a stay of this Order, Hannoush will be acting in good faith within the meaning of § 363(m) of the Bankruptcy Code by consummating the transactions contemplated in the Agreement and approved herein at any time after entry of this Order. No party has engaged in any conduct that would cause or permit any sale pursuant hereto to be avoided under § 363(n) of the Bankruptcy Code. The Agreement has been negotiated at arm's length and in good faith between the Debtor and Hannoush. As disclosed to the Court, Hannoush has or is negotiating a non-competition and/or consulting agreement ("Noncompete Agreement") with Scott Krigel, an insider of the Debtor, the finalization and consummation of which does not affect the arms-length nature of the transaction. Under the Noncompete Agreement, Scott Krigel is to receive total payments of approximately $325,000.00 over approximately three years, which payments are reasonable under the circumstances.

{10817.01/269462:}                                      6

M.    Upon payment by the Debtor of any and all amounts necessary to cure any defaults in connection with the assumption and assignment of Debtor's leases (the "Assumed Leases") under the Agreement (subject to payment by Hannoush of up to $126,000.00 of the cost of such cures as provided in the Agreement), all outstanding defaults with respect to such leases will be cured in accordance with § 365(b)(1) of the Bankruptcy Code. Hannoush has or will provide adequate assurance of future performance under the Assumed Leases, in accordance with § 365(f)(2)(B) of the Bankruptcy Code. The nondebtor parties to the Assumed Leases were given reasonable notice of, and an opportunity to object to, the assumption and assignment of the Assumed Leases and the payment of any amounts in default thereunder pursuant to the Debtor's Motion for Order: (A) Authorizing Assumption and Assignment of Leases and Executory Contracts; and (B) for Extension of Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (the "Assignment Motion"), upon which the Court held a hearing on April 25, 2001, and entered an Order approving the Assignment Motion on April 26, 2001, subject to certain rights of Kenwood Plaza Limited Partnership, n/k/a OTR ("OTR") to object through May 1, 2001 at 12:00 p.m. to any proposed assignee of their respective leases. Hycel Partners I, L.P. ("Hycel") objected to the Assignment Motion to the extent it sought an assignment to an unknown third party, and Hycel's rights to object were also reserved through May 1, 2001. However, Hycel's objection specifically consented to an assignment to Hannoush. By failing to object to the Assignment Motion, each of these nondebtor parties, other than OTR and Hycel to the extent limited by the Order approving the Assignment Motion, is deemed to have accepted (i) the payment of any amounts in default pursuant to the terms of the Assignment Motion, and (ii) the assumption and assignment of the applicable Assumed Leases to Hannoush.

Accordingly, it is hereby

ORDERED, ADJUDGED and DECREED that the sale of the Purchased Assets of Krigel's, Inc., as set forth in the Agreement and Exhibits thereto, or otherwise referenced therein, is hereby authorized and confirmed, to Hannoush Jewelers, Inc. under the terms and conditions set forth in the Agreement, the transfer of which shall be free and clear of any and all mortgages, judgments, liens, claims, interests and encumbrances as set forth below. The terms and conditions of the proposed sale, assignment, conveyance and/or transfer of the Purchased Assets from the debtor to Hannoush as reflected in the Agreement and the other transactions contemplated thereby are approved in all respects, pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 6004 and 6006. Accordingly, the Debtor is authorized and directed, in accordance with the terms of the Agreement, to sell, assign, convey, and/or otherwise transfer to Hannoush all of the Purchased Assets and to execute and deliver all instruments, certificates, documents, or other agreements that may be reasonably necessary or desirable to do so, and to take all further actions as may reasonably be requested by Hannoush for the purpose of selling, assigning, conveying, or transferring to Hannoush each and every one of the Purchased Assets and consummating each of the other transactions contemplated under the Agreement. The Agreement (including any subsequent nonmaterial amendments thereto, notice of which shall have been given to all secured creditors regarding the Purchased Assets, including without limitation, Foothill, and the Official Committee of Unsecured Creditors) and the transactions contemplated thereby be, and hereby are, approved in all respects. It is further

ORDERED, ADJUGED and DECREED that all objections, if any, to the Bidding Order and the Auction or the relief requested and approved thereby that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are overruled on the merits. It is further

ORDERED, ADJUDGED and DECREED that pursuant to Bankruptcy Rules 8005 and 7062, made applicable by Bankruptcy Rule 9014, the provisions of this Order relating to § 363 of the Bankruptcy Code, including § 363(m), shall be effective immediately and shall not be stayed during the period after its entry. The ten-day stay periods pursuant to Bankruptcy Rules 6004(g) and 6006(d) are hereby lifted and waived for cause shown. Without limiting the foregoing in any manner, the Debtor is hereby authorized and directed in accordance with the terms of the Agreement to:

(a)    Execute, deliver and perform its obligations under each ancillary agreement referenced in the Agreement including, without limitation, the assumption and assignment agreements and the bills of sale.

(b)    Take all actions necessary or appropriate to (i) complete the sale, assignment, conveyance, and/or transfer of each category of Purchased Assets identified in the Agreement to Hannoush, and (ii) complete the assumption and assignment, pursuant to §365 of the Bankruptcy Code, of the Assumed Leases identified in the Agreement pursuant to the provisions of the Agreement, including, without limitation, curing all defaults under all of the Assumed Leases that occurred or existed on or before the Closing Date.

(c)    From and after the Closing Date, and without any requirement of other or further notice to any person or entity and without any further order, authorization, or approval of this Court, the Debtor shall comply with the Agreement and perform all of its obligations thereunder. It is further

ORDERED, ADJUDGED and DECREED that the sale by Debtor of the Purchased Assets to Hannoush shall be consummated pursuant to a Closing on or before Wednesday, May 2, 2001 ("Closing Date"). It is further

ORDERED, ADJUDGED and DECREED that except for those liabilities 'specifically assumed in writing by Buyer pursuant to the Agreement or this Order (if any), the Buyer is not assuming and shall not be bound by or liable for any claims, obligations, suits against or liabilities of the Debtor (or any entities which may be liable with the Debtor) of any kind or nature, whether absolute, accrued, contingent or otherwise and whether due or to become due and whether or not asserted, and whether known or unknown including, without limitation (i) all outstanding and accrued obligations under the Assumed Leases arising in the period prior to the Closing Date, except for payment of up to $126,000.00 in cure payments as described above, (ii) any liabilities or obligations with respect to taxes (or any penalties of any nature), (iii) any claim (as defined under Section 101(5) of the Bankruptcy Code) and any other potential liability, whether known or unknown arising out of or relating to the operations of the Debtor or its predecessors or affiliates (hereinafter "Claim"), (iv) any Claim by parties to any executory contract with the Debtor which is not assumed and assigned by Order of this Court, (v) the obligations associated with merchandise returns, gift certificates, store credits, coupons, due bills, deposits, rain checks, discount cards or other promotional items, and special orders existing as of the Closing Date, (vi) any Claim by a governmental entity or private party arising under the Environmental Laws (as defined herein), (vii) any obligations of the Debtor under any pension or employee benefit plans, including such employee related matters as vacation and severance pay, (viii) any employment or termination of employment of any person, including any liability under any federal, state or local law, including but not limited to the Nations Labor Relations Act, Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, the Worker Adjustment and Retraining Notification Act, and the Fair Labor Standards Act, (ix) any administrative claims of the Debtor, including, without limitation, compensation of professionals allowed pursuant to Sections 326 through 331 of the Bankruptcy Code, and (x) any debtor-in-possession financing

loan(s) to the Debtor. "Environmental Laws" shall mean all local, state or federal environmental laws, regulations, injunctions order, permits, approvals and requirements of common law related to the protection of the environment, including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, and their State analogs. It is further

ORDERED, ADJUDGED and DECREED that Buyer is not and shall not be deemed to be a successor to the Debtor or its affiliates for any reason or purpose whatsoever, and the transaction approved herein is neither a consolidation nor merger. It is further

ORDERED, ADJUDGED and DECREED that pursuant to and consistent with the terms of the Agreement, this Order and § 1146(c) of the Bankruptcy Code, the transfer of the Purchase Assets will be exempt from any and all taxes under any law imposing a stamp tax or similar tax. It is further

ORDERED, ADJUDGED and DECREED that the Buyer and Debtor shall not be bound by, liable under, or required to comply with any and all state laws, statutes or regulations to which the sale of the Purchased Assets may be subject regarding bulk sales of inventory or other property, unemployment contributions, sales and use taxes and/or any other similar or related taxes. It is further

ORDERED, ADJUDGED and DECREED that the commencement or continuation of any action, the employment of process, or any act to collect, recover, or offset any debt in respect of the Purchased Assets (either directly or indirectly) from the Buyer and the Buyer's affiliates, officers, parents, subsidiaries, directors, shareholders, agents, employees and professionals, existing as of the Closing Date is hereby permanently enjoined, stayed and restrained. It is further

ORDERED, ADJUDGED and DECREED that at the Closing, the Debtor shall surrender possession of the Purchased Assets to the Buyer and shall surrender and/or deliver to the Buyer all documents, instruments, files, records and personal property in its possession respecting or relating

to the ownership, use or operation of the Purchased Assets; provided, however, that Debtor shall be entitled to reasonable access to such documents and records as may necessary to fully effectuate the sale. It is further

ORDERED, ADJUDGED and DECREED that the Debtor is authorized to assume and, in accordance with Section 1(k) of the Agreement, assign to Buyer those leases set forth on Schedule 1(k) of the Agreement in accordance with § 365 and § 105 of the Bankruptcy Code. The Debtor shall be solely responsible for curing all costs and expenses relating to the assumption and assignment of such leases under § 365(b)(1) and § 365(f) of the Bankruptcy Code, subject to Buyer's agreement to pay up to $126,000.00 of the cost of such cures as part of the purchase price for the Purchased Assets as set forth in the Agreement. It is further,

ORDERED, ADJUDGED and DECREED that the Buyer shall have the right to conduct going out of business and/or liquidation sales ("GOB Sales") at any or all of Debtor's stores, as provided in the Agreement, beginning on or after the Closing Date and continuing through no later than August 15, 2001, subject to the Guidelines for Conduct of Store Closing Sales set forth in this Court's Order Approving Form of Agency Agreement dated April 26, 2001, which Guidelines are hereby incorporated by reference. The Buyer shall be entitled to all of the proceeds from GOB Sales and shall have the right to supplement GOB Sales with additional inventory (as described below) of the Buyer at the Buyer's cost and expense. The Buyer shall have the right to occupy Debtor's stores (even stores subject to leases that Buyer does not elect to have assigned to it) for GOB Sales, provided, however, the Buyer shall be responsible for all costs and expenses incurred in connection with GOB Sales and the occupancy expenses of the stores during the sale term, including but not limited to rent, utilities and lease equipment payments, for which appropriate payment shall be made to or on behalf of the Seller as appropriate. It is further

ORDERED, ADJUDGED and DECREED that Hannoush is authorized to augment the GOB Sales at the Stores with additional goods of like kind and quality as presently in the Stores (the "Additional Merchandise"), notwithstanding federal, state, or local laws that purport to restrict or prohibit augmentation of such sales. It is further

ORDERED, ADJUDGED and DECREED that Hannoush is hereby authorized and empowered to conduct the GOB Sales, and take all actions reasonably related thereto or arising in connection therewith, including, without limitation, advertising such sales as "clearance sales," "store closing sales," "going out of business sales," "liquidation sales" or through use of language of similar import in media advertisements, and on interior and exterior banners and other signage that Hannoush deems appropriate, (i) notwithstanding any consent requirement in, or restrictive provision of, any lease, reciprocal easement agreement or related documents purporting to limit such actions, and Bankruptcy Code § 365(d)(3) does not preclude the relief granted in this paragraph; and (ii) without complying with federal, state or local laws, rules, statutes, ordinances, licensing requirements, regulations and procedures of any kind or nature, including, without limitation, laws, rules, statutes, ordinances, licensing or consent requirements, regulations and procedures with respect to licenses and permits, state and local waiting periods or time limits, advertising and transferring merchandise between locations; provided, however, that Hannoush shall comply with health and safety laws and regulations. It is further

ORDERED, ADJUDGED and DECREED that all parties and persons of every nature and description, including but not limited to landlords, utility companies, governmental agencies, sheriffs, marshals or other public officers, creditors, newspapers, other advertising mediums, and all those acting for or on their behalf are hereby restrained and enjoined from (a) charging advertising rates in excess of the rates charged pursuant to the Debtor's pre-petition advertising agreements, or, if no

{10817.01/269462:}                                    13

such agreements exist, charging advertising rates in excess of rates regularly charged to non-bankrupt customers in the ordinary course of business; and (b) in any way interfering with or otherwise impeding the conduct of the GOB Sales pursuant to the Agreement.  It is further

ORDERED, ADJUDGED and DECREED that the sale of the Debtor's Purchased Assets shall be free and clear of any and all security interests, liens, judgments, claims, interests, and encumbrances, whether prior to or subsequent to the filing of the Chapter 11 petitions initiating these cases, and whether imposed by agreement, understanding, law, equity or otherwise, which are divested hereby, including, without limitation, Foothill Capital Corporation.  It is further

ORDERED, ADJUDGED and DECREED that any and all security interests, judgments, liens, claims, encumbrances and interests divested hereby shall attach to the proceeds of the sale according to their validity, priority and amount.  It is further

ORDERED, ADJUDGED and DECREED that all proceeds of the sale shall be paid directly to Foothill for the benefit of Debtor (in accordance with its written instructions to be provided to Debtor prior to Closing), and shall be deemed paid to Debtor and simultaneously transferred by Debtor to Foothill, for application against the obligations of Debtor to Foothill under the Post-Petition Financing previously approved by this Court, without offset or deduction, to the extent necessary to satisfy Debtor's obligations to Foothill under such Post-Petition Financing. Such payment shall not constitute a distribution under Debtor's Plan of Reorganization.  It is further

ORDERED, ADJUDGED and DECREED that each federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the sale of the Purchased Assets to the Buyer or administer the Debtor's estate.  It is further

ORDERED, ADJUDGED and DECREED that all documents required to effectuate the sale of the Purchased Assets to the Buyer shall be effective and enforceable in accordance with their terms without further Order of Court. It is further

ORDERED, ADJUDGED and DECREED that this Court shall retain jurisdiction over, and may grant injunctive relief and/or adjudicate any disputes that may arise in connection with or out of the sale of the Purchased Assets to the Buyer and enter orders relating thereto including, without limitation, determination of the Cost Value of Inventory as provided under the Agreement, the assertion by any party of a lien against or interest in the Purchased Assets, or the assertion of a Claim (as defined herein), including, without limitation, products liability claims. The Court further shall retain jurisdiction as necessary to approve any further documents that may be necessary to effectuate the purposes of such sale. It is further

ORDERED, ADJUDGED and DECREED that the provisions of this Order shall bind the Debtor, and is binding upon and governs the acts of all other persons including, without limitation, all filing agents or officers, title agents or companies, recorders, registrars, administrative agencies, governmental units and departments, agencies or officials thereof, secretaries of state, and all other persons who may be required by law, the duties of their office, or contract to accept, file register, record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Purchased Assets. It is further

ORDERED, ADJUDGED and DECREED that the Purchased Assets be bargained, transferred and conveyed to the Buyer upon execution and delivery of the appropriate documents at the Closing. It is further

ORDERED, ADJUDGED and DECREED that the Sale to the Buyer shall be consummated by the Debtor and the Buyer as provided under the Agreement without necessity of further Order of

{10817.01/269462:}                          15

Court, consistent with the terms and provisions of this Order, unless otherwise set forth in the Agreement or as mutually agreed by the parties.  It is further

ORDERED, ADJUDGED and DECREED that the Buyer shall acquire the Purchased Assets from the Debtor free and clear of all liens, claims, judgments, security interests, encumbrances, and interests of any kind or nature (including, without limitation, any liens, claims, encumbrances or interests, whether presently known or unknown, in any way relating to or arising from the operations of Krigels, Inc. prior to the Closing) in accordance with, and as contemplated by, inter alia, Sections 105(a), 363 and 1107 of the Bankruptcy Code subject to the terms and conditions set forth herein. It is further

ORDERED, ADJUDGED and DECREED that the Buyer is a purchaser "in good faith" within the meaning of § 363(m) of the Bankruptcy Code and is entitled to the protections thereunder should this Order be reversed or modified on appeal.

ORDERED, ADJUDGED and DECREED that the terms and conditions of the Agreement and its ancillary documents, together with the terms and provisions of this Order shall be binding in all respects upon, and shall inure to the benefit of the Debtor, its creditors, estate and shareholders, the Buyer, and their respective successors and assigns, notwithstanding any subsequent appointment of any trustee for the Debtor under any Chapter of Title 11 of the United States Code, 11 U.S.C. §101 et. seq., as to which trustee such terms and provisions likewise shall be binding in all respects. In the event the Debtor's Chapter 11 case is dismissed or converted to Chapter 7, or a trustee is appointed, neither the dismissal nor conversion of the case, nor the appointment of a trustee, shall affect in any manner the rights of the Debtor or Hannoush under the Agreement or this Order, and all of the rights and remedies of the Debtor and Hannoush under this Order and the Agreement shall remain in full force and effect as if the case had not been dismissed or converted or a trustee

{10817.01/269462;}                                16

appointed. This Court shall retain jurisdiction, even after the closing of the Debtor's Chapter 11 case or after any conversion or dismissal thereof, to interpret, implement, and enforce the terms of this Order and the Agreement, and further to protect Hannoush against imposition upon it of any liability or obligation of the Debtor not expressly assumed by Hannoush under the Agreement. It is further

ORDERED, ADJUDGED and DECREED that nothing contained in any plan of reorganization confirmed in this case shall conflict with or derogate from the provisions of the Asset Purchase Agreement or the terms of this Order without the prior written consent of the Buyer. It is further

ORDERED, ADJUDGED and DECREED, that to the extent of any inconsistency between this Order and the other relevant documents, including without limitation the Agreement, the documents and/or Agreement shall control, as the case may be. It is further

ORDERED, ADJUDGED and DECREED that any and all objections, if any, to the sale hereunder, be, and the same are, hereby overruled for reasons set forth in this Order. It is further

ORDERED, ADJUDGED and DECREED that the employment and compensation of Debtor's officers, directors and key executives as set forth in this Court's Order Granting Debtor's Motion to Modify Order Authorizing Employment and Fixing Compensation for Officers, Directors and Key Executives of Debtor dated April 3, 2001 is hereby extended through the Closing Date.

SO ORDERED this 1st day of May, 2001

/s/ Jerry W. Venters
United States Bankruptcy Judge

Jim Bird to Serve

{10817.01/269462}                                      17

Order agreed as to form and content by:

POLSINELLI, SHALTON & WELTE, P.C.

By: /s/ James E. Bird
JAMES E. BIRD (MO # 28833)
GERALD W. BRENNEMAN (MO #35132)
DIANE C. BROWNING (MO #52077)
700 W. 47th St., Suite 1000
Kansas City, MO  64112
(816) 753-1000
(816) 753-1536 (fax)

Counsel for Debtor
Krigel's, Inc.


SHOOK, HARDY & BACON L.L.P.

By: /s/ Dennis R. Dow
DENNIS R. DOW
One Kansas City Place
1200 Main Street
Kansas City, MO  64105-2118
(816) 474-6550
(816) 421-5547 (fax)

COUNSEL FOR HANNOUSH JEWELERS, INC.


853992