UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARY Jewelers, LLC.,<br>            Plaintiff, | )<br>)<br>) |
| v. | )   CIVIL ACTION NO. 04:-CV-10281 EFH<br>) |
| IBJTC Business Credit Corp. and<br>David Molinario,<br>            Defendants. | )<br>)<br>) |

**SUPPLEMENTAL STATEMENT OF MATERIAL FACTS
OF RECORD AS TO WHICH IT IS CONTENDED
THAT THERE EXISTS A GENUINE ISSUE TO BE TRIED**

TO THE UNITED STATES DISTRICT COURT:

Pursuant to Locale Rule 56.1, Plaintiff ARY Jewelers, LLC. submits this Supplemental Statement of Material Facts of Record as to Which it is Contended that there Exists a Genuine Issue to be Tried in support of its Opposition and Supplemental Opposition to Defendants' Motion for Summary Judgment. ARY incorporates all exhibits, deposition transcripts, and affidavits referenced herein and in the Statement of Facts filed on September 15, 2005 ("Sept. 15 Statement").

In addition to contentions set forth in ARY's Sept. 15 Statement, ARY contests the following statements contained in Defendants' Statement of Material Facts as to Which There is No Genuine Issue to be Tried:

**ARY Discontinued Negotiations with Foothill After the December 15 Term Sheet**

To the extent Defendants contend that ARY discontinued negotiations with Foothill for funding after the December 15 proposal (implied in Defendants' Statement by its assertion that it

1

"turned back to Foothill as a potential funding source only after IBJ [declined to finance]", ARY disputes Defendants' implication and statement and contends that throughout the relevant time period it continued to negotiate with Foothill for funding. This position is evidenced by the following:[1]

1. ARY requested from Foothill and received an extension on the closing date in Foothill's term sheet from February 28, 2001 to April 1, 2001, while ARY continued to consider Foothills' proposed terms, resulting in a revised proposal letter dated January 31, 2001 extending the date from February 28, 2001 to April 1, 2001 (there was no change in terms, in this January term sheet other than the closing date and the date Krigel's was expected to file for bankruptcy). Deposition of Thomas Morgan, taken in the Krigel Litigation on May 21-22, 2001 (Exhibit 1 to Supplemental Affidavit of Barry Pickens) ("Morgan Depo."), at 128:6-129:7;135:25-136:3; Exhibits to Tom Morgan Affidavit ("Morgan Aff.").

2. Foothill first became aware that ARY was talking to its competitors on February 28, 2001 when David Molinario with IBJ informed Tom Morgan of this in a telephone conversation initiated by David Molinario. Morgan Depo., at 144: 18-25. Molinario also told Morgan he knew that Foothill would be trying to retain the deal. Morgan Depo. At 144:9-148:21.

3. Foothill's term sheet to ARY dated January 31, 2001 with a deadline of April 1, 2001 was still viable and outstanding to ARY at the time (February 28, 2001) that the information was conveyed from IBJ to Whitehall. Morgan Depo., at 128:6 - 129:7;135:25-136:3; 153:9-154:12; Exhibits to Morgan Aff.

---

[1] Any specific references to evidence with record cites is in addition to those already set forth in the Sept. 15 Statement.

4. "The information that we received from Molinario was the driving force behind changing the terms of the term sheet." Morgan Depo., at 169:25-170:2.

5. ARY's representative had communicated to Tom Morgan prior to IBJ's conveyance of the information to Foothill's terms contained in their terms sheet of January 31, 2001 that it wanted to accept the terms. The information received by Foothill from IBJ caused Foothill to withdraw these terms before ARY could formally accept them. Morgan Depo. at 181:8-182:2.

6. Sometime in the week prior to February 28th, ARY representative Gohar Husain called Foothill and communicated that ARY wanted to accept the extended date later in the January 31 Proposal. Morgan Depo. at 181:8-182:2;183:16-20.

**Husain and Krigel advised Foothill that IBJ would be refinancing Krigel's and that the refinancing would be used, among other things, to pay off Krigel's $8M debt to Foothill**

1. Contrary to Defendants' assertion, Foothill was not aware before February 28, 2001 that ARY was even talking to competitors. It was on this date that Foothill first found out when Molinario told Morgan, in a telephone conversation initiated by Molinario, that IBJ had been talking to ARY about a loan and that IBJ would not be funding the loan because of the criminal allegations. Morgan Depo., at 144:9-148:21.

2. Steve Cole first learned of IBJ's potential involvement from Tom Morgan on or shortly after February 28, 2001. Morgan Depo., at 14418-148:21; 153:9- 154:12.

3. Morgan does not recall a meeting prior to February 28, 2001 between Steve Cole, Scott Krigel, and Gohar Husain where Cole was informed that Krigel's and ARY were negotiating with IBJ to provide the required financing. Affidavit of Thomas Morgan.

**Defendants acted out of "professional courtesy"**

1. The evidence set forth above – that IBJ never informed Foothill that it was going to pay off the Krigel's loan – refutes this contention.

2. Frank O'Connor acknowledged in his deposition that it was standard practice at financial institutions in general, and IBJ in particular, to keep nonpublic information confidential. Deposition of Frank O'Connor, taken June 16, 2005, ("O'Connor Depo.) at 62:1-17; 133:12-134-10 (Ex. 3 to Groff Aff.).

3. O'Connor testified that the information that IBJ was not going to fund the loan to ARY was nonpublic information. O'Connor Depo. at 110:12-111:4.

4. O'Connor testified that they had never disclosed information to a competitor other than in this instance. O'Connor Depo at 63:10-19; 113-22.

**Foothill requested copies of the articles**

1. Molinario told Morgan he would fax the information to him. Morgan 148:4-8.

2. Molinario initiated the February 28, 2001 telephone call to Morgan and told him that IBJ would not be funding the loan and that there were alleged criminal charges against ARY principals. Morgan Depo., at 144:22-25; 145: 4-7; 146: 7-8; 147:14 - 148:3.

**Additional background check and litigation search necessary (para. 22 & 23) and Foothill would have conducted a background check which would have revealed the same information**

1. Prior to February 28, 2001, Morgan was not aware of further due diligence or background checks that were either necessary or had been requested. Morgan Affidavit .

2. Cole's reaction [to the information from Defendants] was that Foothill "really needed to take a look and do some further due diligence as to who we might be doing business with," and

4

depending on the additional information gathered, "we will revisit the proposal." Morgan Depo., at 153:9- 154:12.

**The sale to Hannoush was substantially less than what ARY would have paid.**

This statement is irrelevant and ARY has moved to strike that part of Cimini's affidavit and exhibit (bankruptcy order) on which it is based (attached to Ms. Cimini's affidavit). Nevertheless, it is simply factually incorrect and it is comparing apples to oranges. Hannoush bought only the *assets* of Krigel's at a bankruptcy auction, while ARY was to buy a going concern with its attendant goodwill. Cimini Aff., Exhibit F (Bankruptcy Order). Such difference in the deals certainly would account for a discounted price, if indeed it was discounted to Hannoush. Alternatively, Hannoush actually paid more for the assets because if one compares the prices and calculates it as Defendants do, had Hannoush also assumed the debt of $8.5 million, it would have paid $ 17.8 million in total ($9.3 million purchase price + $8.5 million in debt assumption). Therefore, this argument is nonsensical.

                Respectfully submitted,
                THE CARRIGAN LAW FIRM, L.L.P.

By: /s/ Stephen P. Carrigan
Stephen P. Carrigan (Admitted Pro Hac Vice)
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)
*Attorney-in-Charge for Plaintiff*

OF COUNSEL:

| **THE CARRIGAN LAW FIRM, L.L.P.** | **MAHENDRU, P.C.** |
|---|---|
| Jill L. Groff (Admitted Pro Hac Vice) | Ashish Mahendru BBO#647661 |
| 2 Houston Center | 1111 Bagby, Suite 2000 |

909 Fannin, Suite 1575  
Houston, Texas 77010  
(713) 739-0810 (telephone)  
(713) 739-0821 (telefax)  
*Of Counsel for Plaintiff*  
Dated:    November 7, 2005

Houston, Texas 77002  
(713) 571-1519 (telephone)  
(713) 651-0776 (telefax)  
*Of counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded as indicated below by certified mail, facsimile and/or hand delivery, return receipt requested in accordance with the Federal Rules of Civil Procedure on this 7 day of November, 2005.

Robert S. Fischler  
ROPES & GRAY, L.L.P.  
45 Rockefeller Plaza  
New York, NY 10111  
Tel: (212)841-0444

Christopher R. Dillon  
Kate Cimini  
Ropes & Gray, LLP  
One International Place  
Boston, MA 02110-2624

*Jill Groff by bm*  
Jill L. Groff