UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
ARY JEWELERS, LLC,                  )
                                    )
           Plaintiff,               )
                                    )    Civil Action No. 04-10281 (EFH)
      v.                            )
                                    )    **Oral Argument Requested**
IBJTC BUSINESS CREDIT CORP.         )
AND DAVID MOLINARIO,                )
                                    )
           Defendants.              )
                                    )
_____ )

**REPLY MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Christopher R. Dillon (BBO No. 640896)
Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Robert S. Fischler (Admitted Pro Hac Vice)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700

# TABLE OF CONTENTS

Page(s)

I. TO AVOID SUMMARY JUDGMENT, ARY MUST
   IDENTIFY SPECIFIC CONTROVERTING FACTS..........................................................2

II. SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT I ..................................3

   A. ARY has Failed to Create a Triable Issue as to Whether Defendants Acted
      Through Improper Motive or Means..................................................................3

   B. ARY has Failed to Create a Triable Issue on the Element of Causation ................4

   C. ARY has Failed to Create a Triable Issue as to Defendants' Knowledge ...............5

III. SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNTS II AND IV ..............6

IV. SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT III.............................7

CONCLUSION..................................................................................................................8

# TABLE OF AUTHORITIES

## CASES

*American Private Line Services, Inc. v. E. Microwave, Inc.*, 980 F.2d 33
   (1st Cir. 1992) ........................................................................................................... 4

*Boyle v. Douglas Dynamics, L.L.C.*, 292 F. Supp. 2d 198 (D. Mass. 2003), *aff'd*,
   No. 03-2430, 2004 WL 1171370 (1st Cir. May 25, 2004) ........................................ 4

*Cadle Co. v. Hayes*, 116 F.3d 957 (1st Cir. 1997) ......................................................... 2, 3

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................................................................. 3

*Djowharzadeh v. City National Bank and Trust Co. of Norman*, 646 P.2d 616
   (Okla. Ct. App. 1982) ............................................................................................ 6, 7

*Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir. 1990) .................................................. 3

*Moreau v. Local Union No. 247*, 851 F.2d 516 (1st Cir. 1988) ........................................ 6

*Serapion v. Martinez*, 119 F.3d 982 (1st Cir. 1997) ......................................................... 2

## **PRELIMINARY STATEMENT**

As discussed in defendants' moving papers, each of ARY's claims rests on the untenable assertion that a "duty of confidentiality" precluded defendants from sending news articles that had been published on the Internet by the Dow Jones News Service. (For the Court's convenience, a copy of these news articles, which are attached as Exhibit C to the O'Connor Affidavit, are attached hereto as Tab A) Nothing in ARY's opposition papers supports the conclusion that either tort or contract liability under Massachusetts law can be based on the transmission of such public information. For this fundamental reason, the Court should enter summary judgment for defendants on each of ARY's claims.

Unable to cite authority for its position, ARY has opted for the age-old strategy of filing a huge volume of paper in the hope that the Court will conclude that there must be a triable issue of fact *somewhere* in the massive submission before it. The vast bulk of the material filed by ARY is completely irrelevant to the issues raised by defendants' motion, and therefore can simply be ignored.

More specifically, the Court can ignore the affidavits of Shirley Webster, Barry Pickens, and Joseph Thompson submitted by ARY. All three affidavits are irrelevant, as they are devoted entirely to an issue not raised by defendants' motion – the alleged amount of ARY's damages. Similarly, the affidavit of Ijaz-Ul-Ahsan can be ignored. The sole issue addressed in this bulky submission is whether the criminal charges brought against Mr. Razzak in Pakistan are valid. But as ARY well knows, the issue of Razzak's guilt or innocence of the bribery charges brought against him in Pakistan has no bearing on defendants' entitlement to summary judgment.

ARY also has submitted the "expert" affidavits of John Baerst and Thomas Bonville, which purport to opine on banking "ethics" or "practice" concerning *confidential* information. However, it is undisputed that this case concerns public news articles, *not* "confidential"

9865940_1

information. Nor are banking "ethics" or "practices" in issue. Finally, ARY's opposition brief continues to oppose arguments that, although at issue in the original summary judgment motion, are not at issue here. For example, ARY spends several pages at the outset of its brief arguing that "judicial estoppel" does not bar ARY's claims, even though judicial estoppel is not argued by defendants.

Try as it may to obscure the fundamental flaw in it case, ARY cannot avoid the conclusion that it was not an unlawful breach of "confidentiality" for defendants to transmit *public* news articles to a third party. Nor can it obscure the fact that it was not competing with Foothill for ARY's business. Nor can it obscure the fact that it was obligated to disclose to Foothill the information in these public news articles. In short, ARY has sued the defendants for transmitting public news articles that contained information that ARY itself was obligated to disclose, and which Foothill's due diligence would have discovered. ARY's theory must be that it was not going to disclose, and Foothill would not have caught them; but this is not a basis for imposing liability on the defendants.

## ARGUMENT

I. **TO AVOID SUMMARY JUDGMENT, ARY MUST IDENTIFY SPECIFIC CONTROVERTING FACTS**

Where, as here, a party seeking summary judgment has made a preliminary showing that there is no genuine issue of material fact requiring resolution at trial, the burden shifts to the opposing party to "demonstrate, through specific facts, that a trialworthy issue remains." *Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997). An opposing party cannot rely on "effusive rhetoric and optimistic surmise," (*id.*) and the Court "may ignore unsupported conclusions, rank speculation, and opprobrious epithets." *Serapion v. Martinez*, 119 F.3d 982, 987 (1st Cir. 1997).

"A 'genuine' issue is one that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir. 1990) (internal quotation marks omitted ) (citation omitted). "A 'material' issue is one that affects the outcome of the suit." *Id.* (citation omitted). If the evidence adduced in opposition is "merely colorable, or is not significantly probative, summary judgment may be granted." *Cadle*, 116 F.3d at 960 (citation omitted). A failure of proof concerning *any* essential element of the nonmoving party's case mandates summary judgment for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

ARY has failed to create a trialworthy issue, and summary judgment should be entered for defendants. Indeed, ARY has implicitly conceded that its evidence does not create a triable issue of fact by seeking a continuance on the ground that ARY required additional discovery in order to oppose defendants' motion. However ARY failed, as required by Rule 56(f) of the Federal Rules, to demonstrate how additional discovery would allow it to defeat summary judgment, and on November 8, the Court properly denied the motion for a continuance.

II. **SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT I**

   A. **ARY has Failed to Create a Triable Issue as to Whether Defendants Acted Through Improper Motive or Means**

ARY has not come forward with any evidence sufficient to create a triable issue on whether defendants intentionally interfered through improper motive or means. *See* Def. Br. at 8-10. As to motive, it is uncontroverted that IBJ decided not to extend financing to ARY *before* it sent the articles to Foothill. Therefore, defendants had nothing to gain from ARY and Foothill not reaching a financing agreement. *Id.*; O'Connor Aff. ¶¶ 9-10.

ARY's only answer to this is to refer to inadmissible deposition testimony from another lawsuit, in which neither defendant herein was a party, for the unremarkable proposition that

ARY and IBJ were "competitors". Pl. Br. at 12. But that oft-repeated refrain gets ARY nowhere. While ARY and IBJ obviously were competitors in the broad sense of the word, it is uncontroverted that they were *not* competing with respect to ARY at the time of the alleged interference. Moreover, it is undisputed that, as a legal matter, a competitor is free to interfere so long as it does not employ "unlawful means" in doing so. *See* Def. Br. at 9, fn. 1.

As to improper means, ARY has submitted no evidence that defendants "threatened [plaintiff], misrepresented any facts, defamed anyone, or used any other improper means." *American Private Line Servs., Inc. v. E. Microwave, Inc.*, 980 F.2d 33, 37 (1st Cir. 1992). And there is "no evidence that 'defendants' violated a statute or a rule of common law." *Boyle v. Douglas Dynamics, L.L.C.*, 292 F. Supp. 2d 198, 214 (D. Mass. 2003), *aff'd*, No. 03-2430, 2004 WL 1171370 (1st Cir. May 25, 2004). Rather, it is undisputed that defendants merely transmitted *public* news articles, which Foothill had every right to see and which it would have seen eventually in all events. Cole Aff. ¶ 12.

    **B.**    **ARY has Failed to Create a Triable Issue on the Element of Causation**

As explained in Mr. Cole's affidavit, in accord with industry practice, before entering into any loan agreement with ARY, Foothill would have conducted its own background check of ARY and its principals, and thus uncovered the Dow Jones articles and/or other news stories involving the charges pending against Razzak. Cole Aff. ¶ 12; Def. Br. at 10-11. In response to this devastating record evidence, ARY offers only a recently-crafted affidavit from Mr. Cole's former subordinate, Thomas Morgan, stating that he was "*not aware* of any further due diligence or background checks that were either necessary or had been requested." Morgan Aff. ¶ 4 (emphasis added). Notably, Morgan does *not* state that no background check was required, or that Cole's affidavit is wrong. Thus, the Morgan affidavit fails to create a genuine issue of

material fact on the issue of Foothill's inevitable discovery of the criminal charges against Razzak.

Even if the Morgan affidavit created a triable issue (which it does not), ARY's evidence fails on the issue of causation for a separate reason: *ARY would have been required to disclose the criminal charges against Razzak to Foothill before any financing agreement was finalized.* This undisputed fact is established by the testimony of both Mr. Cole and Mr. Morgan. Cole Aff. ¶ 11; Cimini Aff. Ex. J (Morgan Dep.) at 142:24-44:5. ARY, unable to controvert this devastating testimony, simply ignores it. Thus, on the record before the Court, it is undisputed that even if defendants did not send the articles to Foothill, ARY itself would have had to disclose the criminal charges against Razzak.

### C. ARY has Failed to Create a Triable Issue as to Defendants' Knowledge

As stated in Mr. Cole's affidavit, at the time the Dow Jones articles were sent to Foothill, "there were no ongoing negotiations between ARY and Foothill". Cole Aff. ¶ 7. Rather, the negotiations which allegedly would have led to an agreement but for defendants' interference, did not begin until sometime thereafter. *Id.* at 8. This evidence from the Cole affidavit is unrefuted. As there was no impending agreement between ARY and Foothill when the articles were sent, defendants could not have had the requisite knowledge of any such agreement.

Additionally, the record includes Mr. O'Connor's unequivocal denial of knowledge. O'Connor Aff. ¶ 11. ARY's only response to this is to speculate that even if O'Connor had no knowledge, defendant Molinario, his subordinate, must have. Pl. Br. at 11. However, like so many of ARY's arguments, this one is not supported by citation to any record evidence. Moreover, ARY has no answer to the undisputed fact that O'Connor made the decision to contact Foothill in the first instance, and to fax the Dow Jones articles after Foothill requested

them. Molinario was merely the messenger. O'Connor Aff. ¶ 10. Therefore, it is O'Connor's knowledge, not Molinario's, that is relevant.[1]

Unable to point to competent evidence that O'Connor (or, for that matter, Molinario) "knew" of a probable Foothill-ARY contract, ARY resorts to arguing that O'Connor's uncontroverted affidavit is not credible. However, this meritless attack on Mr. O'Connor is no substitute for admissible evidence and cannot defeat summary judgment.[2] *See Moreau v. Local Union No. 247*, 851 F.2d 516, 519-20 (1st Cir. 1988) ("a mere challenge to the credibility of a movant's witnesses without any supporting evidence does not create a genuine issue of material fact.").

### III. SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNTS II AND IV[3]

ARY does not dispute that Massachusetts law does not recognize a claim for "breach of confidentiality". Def. Br. at 12. Nor does ARY cite any case, from Massachusetts or elsewhere, where a bank was found liable to a customer or prospective customer for disclosing information, such as Internet news articles, already in the public domain. Finally, ARY does not dispute that the federal statute on which its "experts" rely does not in any way bar the transmission of public information such as that at issue here. Def. Br. at 12-13.

ARY relies primarily on a case from Oklahoma, *Djowharzadeh v. City Nat. Bank and Trust Co. of Norman*, 646 P.2d 616 (Okla. Ct. App. 1982). However, even that case does not

---

[1] ARY offers no response whatsoever to the point that its lead counsel has conceded, *on the record*, that there is no legal basis for the claims ARY alleges against defendant David Molinario. *See* Def. Br. at 3. In view of this, and the undisputed fact that Mr. Molinario was merely a conduit for transmitting the articles at issue, it is outrageous that ARY has refused to dismiss Mr. Molinario as a defendant. At a minimum, the Court should enter summary judgment in favor of Mr. Molinario.

[2] In all events, ARY's principal argument – that O'Connor could have checked with ARY before authorizing Molinario to fax the articles – is not persuasive. Merely because O'Connor *could* have checked with ARY cannot support an inference that he knew of a contemplated ARY-Foothill contract.

[3] In Point III of their moving brief, defendants mistakenly refer to Count III instead of Count IV.

support ARY because it involved "confidential information" of a customer which a bank used to compete with its customer. *Id.* at 620. The case provides no support whatsoever for concluding that Massachusetts law (or Oklahoma law for that matter), would impose liability on a bank for disclosing *public* information of the sort at issue here.

This Court should decline ARY's invitation to create new law. Existing Massachusetts law plainly requires that Counts II and IV of the Second Amended Complaint be dismissed.

## IV.   SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT III[4]

As discussed in defendants' moving brief, Massachusetts law requires dismissal of a Chapter 93(a) claim where the claim is derivative of a deficient tortious interference claim Def. Br. at 14. ARY offers no rebuttal to this point. If the Court dismisses the tortious interference claim, for that reason alone it should dismiss Count III as well.

The Chapter 93(a) claim should be dismissed for other reasons. ARY contends that IBJ may be held liable under Chapter 93(a) because its conduct was "unfair" to ARY. This argument fails as a matter of law. As this Court explained in *Lane*, an unfair trade practice actionable under Chapter 93(a) is one, among other things, within an "established concept of unfairness." Def. Br. at 14. ARY cites no authority for the proposition that the transmission of public news articles is within an "established concept of unfairness."

Moreover, there can be no Chapter 93(a) liability here because the transmission of the news articles was not in any way unfair to ARY, unless one assumes that ARY was entitled to conceal from prospective lenders truthful, public information that ARY's owner had been charged with a crime. Of course, ARY was not so entitled; to the contrary, as discussed above, the undisputed evidence in this case establishes that ARY had an affirmative obligation, under

---

[4] In Point IV of their moving brief, defendants mistakenly refer to Count IV instead of Count III.

Foothill's lending procedures, to disclose that its owner/Chairman had been charged with criminal wrongdoing. Cole Aff. ¶ 11.

## CONCLUSION

For all the foregoing reasons, and those set forth in defendants' moving papers, defendants respectfully request that the Court grant summary judgment dismissing the Second Amended Complaint in its entirety. At a minimum, the Court should dismiss the Second Amended Complaint as to defendant David Molinario, as to whom ARY's counsel has conceded there is no basis for the claims herein.

Dated:  November 16, 2005

          ROPES & GRAY LLP

          By: /s/_____
               Christopher R. Dillon (BBO No. 640896)
               Kate Cimini (BBO No. 654336)
               One International Place
               Boston, Massachusetts 02110-2624
               (617) 951-7000

               Robert S. Fischler (Admitted Pro Hac Vice)
               45 Rockefeller Plaza
               New York, NY  10111-0087
               (212) 841-5700

               Attorneys for Defendants

# TAB A

a2Feb.28. 2001; 5:55PM a1841BJW-RETAIL      OF ASSOCIATES INC    No.1343   P. 2   a2
Dow Jones Interactive

Page 1 of 2



Article 1



Return to He

# DOW JONES NEWSWIRES™

**Pakistani Fugitive Gives Australian Authorities The Slip**

03/06/1998
Dow Jones International News
(Copyright (c) 1998, Dow Jones & Company, Inc.)

CANBERRA (AP)—Pakistani authorities said Friday they are upset that a former bank president facing embezzlement charges slipped through the fingers of Australian immigration authorities and escaped to Dubai.

Hussain Lawai, 52, was detained by immigration authorities in Perth after he arrived Tuesday in Australia on a visa the authorities believed had been improperly obtained.

A spokesman for Immigration Minister Phillip Ruddock said Lawai was put on a plane and deported to Pakistan.

But Pakistan's High Commissioner, Khawar Zaman, told The Associated Press on Friday that Lawai had in fact been put on a plane to Singapore.

From there, Lawai had caught a connecting flight back to Dubai, where he has been living for several years, Zaman said.

Zaman told The Associated Press the paperwork necessary for Lawai's arrest had been issued by Interpol and he could not understand why he was not arrested.

But an official of Australia's Attorney General's Department, which would have had to authorize Lawai's arrest in this country, insisted the documents had not arrived from Pakistan until the day after Lawai left Australia.

Zaman said Lawai is alleged to have embezzled U.S. $10 million from one of Pakistan's biggest banks, the Muslim Commercial Bank.

Lawai was appointed president of the Muslim Commercial Bank and Prime Minister Benazir Bhutto's financial adviser shortly before her government was dismissed in 1996 on charges of corruption and mismanagement.

Zaman said Lawai is wanted by Interpol and Australia's Federal Police had started moves to have him arrested when he was deported.

Zaman, who formerly headed The Ehtesab (accountability) Bureau, an investigative agency that filed the original charges against Lawai, said Pakistani authorities are upset at the fugitive's escape.

(END) Dow Jones Newswires 06-03-98

0658GMT

http://ptg.djnr.com/ccroot/asp/publib/story.asp                02/28/2001

F 00549

82 Feb-28- 2001 5:55PM B1841BJW-RETAIL        LCF ASSOCIATES INC       No.1543  P.3/9  83
Dow Jones Interactive
Page 1 of 2

Article 9

Return to Headlines

News
**Scandal Hits Games Firm**
By Janine Macdonald
10/12/1998
The Age
5
Copyright of John Fairfax Group Pty Ltd

CANBERRA -- A Middle Eastern company chosen to distribute Sydney 2000 Olympic coins is embroiled in a bribery controversy involving former Pakistani Prime Minister Ms Benazir Bhutto and is also linked to an international fugitive refused entry to Australia.

ARY Traders, a Dubai-based general merchant and gold bullion dealer, was awarded the contract in April as sole distributor for the limited-edition coins in Pakistan and the United Arab Emirates.

But Pakistani Government sources say its owner and directors have since been charged with bribing Ms Bhutto, her spouse and senior government officials to get a contract for importing gold into Pakistan, a charge they have denied.

ARY's group executive director, Mr Mohammad Iqbal, tried in March to enter Australia with a Pakistani fugitive wanted by Interpol.

When stopped at Perth airport in March, Mr Iqbal said he was en route to a gold conference in Kalgoorlie, Western Australia, and the fugitive, Mr Hussain Lawai, was his financial adviser. Mr Lawai was a former adviser to Ms Bhutto and was wanted in Islamabad on money-laundering and fraud charges.

Australian immigration authorities had inadvertently issued a visa to Mr Lawai before they found he was wanted by Interpol.

At the time, the Pakistani high commissioner in Australia blamed a bureaucratic bungle by Australian authorities for putting Mr Lawai back on a plane instead of detaining him for arrest by Interpol officers, who were on their way to Australia.

In the ARY case, before the Ehtesab (Accountability) bench of the Lahore high court, Ms Bhutto and others were charged with receiving a $10 million bribe for granting a gold import licence to the company, a move said to have cost the country millions in lost revenue. Last week, Ms Bhutto and senator Mr Asif Ali Zardari were indicted on other corruption charges.

The Sydney 2000 contract was announced in early April - less than a month after the ARY executive came to Australia with Mr Lawai - and is part of the worldwide distribution of gold, silver and bronze-based coins. Sydney Olympic officials hope to raise $250million through the coin program. A spokesman for Olympics Minister Mr Michael Knight yesterday said he was not aware of the allegations. He said it was the responsibility of the Perth and Royal Australian mints, not SOCOG, to check the bona fides of the company.

http://ptg.djnr.com/ccroot/asp/publib/story.asp                              02/28/2001

F 00550

Feb-28. 2001 5:55PM 81841BJW-RETAIL    LCF ASSOCIATES INC    No.1543   P. 4/3   B4
Dow Jones Interactive

Page 1 of 2

Article 8

News
**Charged Gold Firm Keeps Games Role**
By Janine Macdonald

10/13/1998
The Age
7

Copyright of John Fairfax Group Pty Ltd

Sydney 2000 Olympic souvenir coins will still be distributed by a company involved in a Pakistani bribery scandal and linked to an international fugitive, the Olympic coin program's organisers said yesterday.

The Royal Australian Mint and the Perth Mint, joint organisers the $250million coin program, issued a brief statement saying charges in Pakistan and the United Arab Emirates against the company it selected to distribute the souvenir coins had not been proven.

They did not say when they became aware of the allegations.

In March, they signed a contract with Dubai-based general merchant and gold bullion dealers ARY Traders. That month, the company's group director, Mr Mohammed Iqbal, was stopped at Perth Airport because he was travelling with a Pakistani man wanted by Interpol.

ARY's owner and directors were later charged with bribing the former Pakistani Prime Minister, Ms Benazir Bhutto, her spouse and senior government officials to get a contract for importing gold into Pakistan, a charge they have denied.

The Perth Mint, responsible for overseas distribution of the coins, said the firm was one of the largest precious metal dealers in the region and the agreement had not changed.

—JANINE MacDONALD

Display as: Full Article                    Return to Headlines

Copyright ©2000 Dow Jones & Company, Inc. All rights reserved.

http://ptg.djnr.com/ccroot/asp/publib/story.asp                02/28/2001

F 00551

D1012

Feb-28. 2001: 5:55PM a1841BJW-RETAIL     LCF. ASSOCIATES INC     No.1545  P. 5/5. 85
Dow Jones Interactive

Page 1 of 1



Article 9

Return to Headlines

**NBW issued for Hussain Lawai and others**

09/28/1999
Pakistan Press International Information Services Limited
Copyright (C) 1999 Pakistan Press International Information; Source: World Reporter (TM) - Asia Pulse Limited.

Karachi Sept 28 (PPI) Non-bailable arrest warrants of Hussain Lawai, ex-President of Muslim Commercial Bank (MCB), and others were issued by Special Judge for offences in Banks Karachi, Syed Abdul Rehman, in a bank fraud case, registered by Federal Investigation Agency (FIA), Commercial Bank Circle (CBC), Karachi.

Investigating officer FIA, today submitted final challan of the case before the learned judge, in which he showed all accused namely Hussain Lawai, Mohammad Iqbal Khan, Mohammad Asghar Bizenjo, and Shahid Umerani as absconders.

It was submitted that all accused persons were close associates of PPP Senator Asif Ali Zardari and their loans were sanctioned on his directives.

FIA alleged in FIRs that these persons took loan of Rs. 140 millions and Rs. 237.524 millions from MCB, in 1995 in the name of Zeshan Builders and Shandar Builders, for construction of buildings in Karachi.

The accused mortgaged land of Karachi Port Trust (KPT), against the loan, which had already been allotted to the employees of Maritime Security Agency.

(THROUGH ASIA PULSE) 28-09 1999

Display as: Full Article

Return to Headlines



*Copyright ©2000 Dow Jones & Company, Inc. All rights reserved.*

http://ptg.djnr.com/ccroot/asp/publib/story.asp                         02/28/2001

F 00552

D1013

LCF ASSOCIATES INC    No.1343    P.53   86

Dow Jones Interactive

Page 1 of 1




Article 5

Return to Headlines

**MCB to move Interpol to arrest Razzaq and Lawai**
Our Commerce Reporter

11/12/1999
The Nation (Pakistan)
Copyright (C) 1999 The Nation Publications (PVT) Ltd.; Source: World Reporter (TM)

LAHORE-The Muslim Commercial Bank (MCB) is moving through interpol for the arrest of former chief of the MCB, Hussain Lawai and the International gold trading tycoon and owner proprietor of Dubai-based ARY Gold, Haji Abdul Razzaq.

According to a press release issued by the MCB, a Dubai Court of Appeal has declined to issue decree in favour of Haji Abdul Razzaq and Hussain Lawai, while dismissing their suit for the damages worth dirham 100 million filed by them against the MCB.

They had filed a damaging suit in the Dubai court saying that the said FIR launched by the MCB spoil their reputation.

The MCB had filed an FIR in Pakistan against Hussain Lawai for an unauthorized remittance of worth $ 10 million in 1995 and 1996 on the behalf of Haji Abdul Razzaq. Subsequently, both Lawai and Haji Razzaq, being from the same clan of Memon filed a damages suit against the MCB.

First court in the Dubai had dismissed their damages suit earlier this year. The ARY went into appeal, which was again dismissed, the news release added.

Display as: Full Article

Return to Headlines

Copyright ©2000 Dow Jones & Company, Inc. All rights reserved.

http://ptg.djnr.com/ccroot/asp/publib/story.asp                    02/28/2001

F 00553

D1014

Feb-28-2001 5:56PM 81-21BJW-RETAIL          LCF ASSOCIATES INC        No.1543    P.78   87
Dow Jones Interactive
                                                                              Page 1 of 2



Article 4                                                         Return to Headlines

**Pakistan bank dealt another blow in case against exchange house**
Ashfaq Ahmed

12/10/2000
Gulf News
Copyright (C) 2000 Al Nisr Publishing LLC; Source: World Reporter (TM)

Sharjah - Pakistan's Muslim Commercial Bank (MCB) suffered another blow as its latest attempt to recover $10 million from Dubai-based ARY International Exchange was dismissed by the Dubai Court of Appeal.

The MCB argued that one defendant, Hussain Lawai, former chief executive officer of MCB, had illegally transferred $10 million in collusion with the three other defendants, including ARY International Exchange director Haji Abdul Razzak and its employee Mohammed Rafiq, from the MCB to an ARY Exchange account in American Express Bank Ltd in New York. The bank claimed that the $10 million was transferred in three installments on October 5 and 6, 1994, and February 23, 1995, respectively.

The Dubai Court of Appeal on November 8, 2000, dismissed as without merit an appeal by the MCB against the judgment of the Dubai Court of First Instance, thus confirming that the $10 million was legally transferred from the Pakistan bank to the U.S. bank account of ARY International Exchange in 1994-95.

On November 25, 1998, the lower court dismissed MCB's case as "baseless" and warned the bank that it "should not fabricate proof to serve its interests". The court concluded that the money was due and payable by the MCB.

Giving details of the cases at a press conference yesterday, Haji Abdul Razzak said that this was the fourth time in as many years that the MCB's allegations about the "illegal transfer" of $10 million had been rejected by Dubai's legal authorities as baseless.

"First, in September 1997 the prosecutor declared that there were no grounds for filing a court case. In December 1997 the Court of Appeal rejected an MCB appeal against the prosecutor's order, stating that the bank was not entitled to file the appeal. In November 1998 a civil case by the MCB was dismissed by the Court of First Instance," Haji Razzak said.

In the latest judgment, the Court of Appeal said it had allowed the appeal by the MCB for hearing in matter of form, but found that the reasoning and conclusion of the lower court were correct on the basis of the facts and were in accordance with the law.

"Therefore, the judgment of the Court of First Instance is entitled to be upheld and the appeal is liable to be dismissed," Haji said, quoting from the court ruling. The MCB had filed similar cases in Pakistani courts accusing its former CEO Hussian Lawai, Haji Razzak and other defendants of "illegal transfer" of money and demanded that the court order it returned.

"Those cases in Pakistan are still pending as there has been no hearing in these cases for a long time," Haji said. He added that the Dubai Court's judgment would help them win exoneration in Pakistan as well.

Former CEO of the MCB Hussain Lawai, a major defendant, is currently wanted in Pakistan. "Lawai, who is in London, should also be exonerated from these 'so called cases' by the MCB after this latest judgment," Haji Razzak said.

http://ptg.djnr.com/ccroot/asp/publib/story.asp                    02/28/2001

F 00554

D1015

e2Feb.28. 2001: 5:56PM B1841BJW-RETAIL    LCF ASSOCIATES, INC    No.1849    P. 3/3   88
Dow Jones Interactive                                                                Page 2 of 2

Hussain Lawai managed to escape from Pakistan when these cases were filed against him after former Prime Minister Benazir Bhutto's government was toppled in 1996. He stayed in Dubai for a few months and finally managed to go to London after a failed attempt to go to Australia. According to informed sources, his name is still on the Exit Control List in Pakistan.

Display as: [Full Article]    Return to Headlines

[Forward to Next Story]

Copyright ©2000 Dow Jones & Company, Inc. All rights reserved.

http://ptg.djnr.com/ccroot/asp/publib/story.asp                    02/28/2001

F 00555

D1016