**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ARY Jewelers, LLC., ) | |
|         Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04:-CV-10281 EFH |
| ) | |
| IBJTC Business Credit Corp. and ) | |
| David Molinario, ) | |
|         Defendants. ) | |

**PLAINTIFF ARY JEWELERS, LLC.'S OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE EXPERT REPORT AND TO ENTER JUDGMENT DISMISSING
THE SOLE REMAINING COUNT OF THE SECOND AMENDED COMPLAINT**

The Carrigan Law Firm, L.L.P.
Stephen P. Carrigan
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
(713) 739-0810 (telephone)
(713) 739-0821 (telefax)

OF COUNSEL:

The Carrigan Law Firm, L.L.P.
Jill L. Groff
2 Houston Center
909 Fannin, Suite 1575
Houston, Texas 77010
713) 739-0810 (telephone)
(713) 739-0821 (telefax)

Ashish Mahendru
1111 Bagby, Suite 2000
Houston, Texas 77002
(713) 571-1519 (telephone)
(713) 651-0776 (telefax)

TO THE UNITED STATES DISTRICT COURT:

Plaintiff ARY Jewelers, LLC ("ARY") hereby files its opposition to Defendant's Motion To Strike Expert Report and to Enter Judgment Dismissing the Sole Remaining Count of the Second Amended Complaint. Pursuant to Local Rule 7.1(b)(2), the reasons and authority are set forth herein.

I.

SUMMARY OF ARGUMENT

This Court should reject Defendant's last ditch effort to avoid a trial on the merits of this case. The Court has already *considered and rejected* Defendant's argument in its order denying Defendant's Motion to Strike Certain Material Filed By Plaintiff in Opposition to Defendants' Motion for Summary Judgment ("First Motion to Strike") (dated October 11, 2005) and again in its order denying Defendant's Motion for Summary Judgment ("Defendant's Summary Judgment Motion") (dated February 2006).[1] By asserting the argument yet again, Defendant is not only wasting time on issues already decided, but trying to circumvent this Court's scheduling order requiring summary judgment motions to be filed by February 8, 2006. This Motion to Strike ("Second Motion to Strike") is nothing more than another motion for summary judgment.

Additionally, Defendant's argument fails on the merits. Even assuming that the interest rate differential is the measure of damages in a breach of contract case, this case sounds is tort which allows recovery of lost profits. Moreover, even in contract cases, lost profits are recoverable where

---

[1] ARY recognizes that the Court granted Defendants' Summary Judgment Motion in part, but denied it as to tortious interference, which is the count relevant to Defendant's current motion.

they are foreseeable – and they were certainly foreseeable in this case where the financing was for purchase of a company out of a prepackaged bankruptcy with certain deadlines and requirements. At the very least, this issue presents a fact question and cannot be resolved via a motion to strike an expert report.

Defendant's other argument, that Ms. Webster's opinion involves speculative damages, also fails because lost profits need not be proven with mathematical certainty. An element of uncertainty is allowed, especially in business tort cases where the critical focus is on the wrongfulness of the defendant's conduct.

Finally, even if the Court accepts Defendant's argument, ARY is still entitled to recover damages for the attorney's fees and costs it incurred in the Krigel litigation which resulted from Defendant's tortious conduct. Defendant makes no attempt to strike the report of Barry Pickens.

## II.

## ARGUMENT AND AUTHORITIES

### A.    This Court Has Previously Rejected Defendant's Argument

Defendant simply reasserts arguments this Court has rejected in denying the First Motion to Strike and Defendant's Summary Judgment Motion.[2] In both of these motions, Defendant previously argued that lost profits are not recoverable in this case. On page 8 of its Memorandum of Law in support of the First Motion to Strike and pages 17-19 of its Memorandum of Law filed in support of the Motion for Summary Judgment, which Defendant incorporated into its First Motion to Strike,

---

[2] Defendant actually filed two summary judgment motions. The first one was filed on August 11, 2005 and contained the specific argument that the proper measure of damages was the interest rate differential. The Court denied this motion as moot because the Court had granted ARY's motion to file second amended complaint. Thereafter, on October 24, 2005, Defendants filed another motion for summary judgment, and, while not specifically making the proper measure of damages argument, did assert that ARY had no evidence to prove *any* of the elements of tortious interference.

Defendant argued that the proper measure of damages in this case is the difference between the contract rate and the replacement rate of financing. For the Court's convenience, attached hereto are true and correct copies of the First Motion to Strike and Memorandum of Law in Support thereof (Exhibit A) and Defendants' Motion for Summary Judgment and Memorandum of Law in Support thereof (without exhibits and filed on August 11, 2005) (Exhibit B), both of which are incorporated herein.

Plaintiff addressed Defendant's argument at pages 14-16 of its Opposition to Defendants' Motion for Summary Judgment ("Opposition to Summary Judgment") setting forth damages for lost profits (supported by Shirley Webster's affidavit) and attorney's fees (supported by Barry Pickens' and Joseph G. Thompson's affidavits). A true and correct copy of the Opposition to Summary Judgment (without exhibits) and Mr. Pickens' Affidavit (without exhibits and which was attached to Plaintiff's Opposition) are attached hereto as Exhibit C and are incorporated herein. Ms. Webster's affidavit and report are attached to Defendant's Second Motion to Strike as Exhibit D and are incorporated herein.

This Court, either implicitly or explicitly, has already rejected Defendant's argument. In its order denying summary judgment, the Court set forth the four elements of tortious interference, including that "the plaintiff's loss of advantage directly result[ed] from the defendant's conduct." This last element necessarily incorporates the causation and damages elements. The Court stated, "ARY has presented competent evidence to enable a factfinder to decide that *all four* elements are satisfied." Opinion at 5, Exhibit A to Christopher Dillon's Affirmation, attached to Defendant's Second Motion to Strike. Elsewhere in the opinion, the Court stated, "ARY has also shown that a genuine issue exists with respect to whether *its damages were directly caused* by IBJ", thus finding

that ARY provided sufficient evidence of damages (in this case lost profits and attorney's fees from Krigel's litigation). *Id*. at 8 (emphasis added). The Court further found that "[ARY provided] sufficient basis upon which a reasonable factfinder could conclude that IBJ directly caused ARY to *lose the prospective business relationship embodied in Foothill's December offer, and consequently, the Krigel's stock purchase."Id*. at 9 (emphasis added).

That the Court has already rejected Defendant's argument is even more evident by the fact that the substance of Ms. Webster's report was included in her affidavit, which was attached as summary judgment evidence to the Opposition to Summary Judgment. Defendant is wrong when it states that ARY served Ms. Webster's report *after* the Court issued its order denying summary judgment. Ms. Webster's report is dated July 27, 2005 and was served on Defendant on or about that date – almost three months *before* the Court denied its First Motion to Strike and more than six months *before* this Court denied summary judgment on the merits. Ms. Webster's affidavit and report clearly set forth the lost profits damages, basis, and analysis and were before the Court when it issued both rulings.

If for no other reason, the Court should deny the Second Motion to Strike because Defendant is simply attempting to circumvent this Court's scheduling order requiring summary judgment motions to be filed by February 8, 2006, and by trying to avoid the procedural and other requirements associated with a summary judgment motion. A true and correct copy of the Joint Statement Pursuant to Local Rule 16.1(D) setting forth the summary judgment deadline, is attached hereto as Exhibit D and is incorporated herein. The deadline for filing summary judgment motions was extended from the original deadline of November 10, 2005, pursuant to the Assented to Motion to Extend the time for Fact Discovery, a true and correct copy of which is attached hereto as Exhibit

E and incorporated herein. The Court should reject Defendant's veiled attempt to assert another summary judgment because the Court has already found that ARY has presented sufficient evidence on all four elements of the tortious interference claim to go to trial.

### A. Plaintiff Seeks, and is Entitled to, Tort Damages

Having rejected Defendant's argument, even if the Court reconsiders it, Defendant is just wrong on the law and the facts and has offered no relevant authority to support its position. Defendant's cited cases either involve only breach of contract or do not support its assertion that the only measure of damages in this case is the interest rate differential. One case Defendant cites from Iowa initially involved tortious interference. *Harsha v. State Savings Bank*, 346 N.W.2d 791, 796-97 (Iowa). However, the intermediate appellate court reversed the jury's finding on tortious interference, so only breach of contract damages were before the Iowa Supreme Court. Thus, *Harsha*, too, stands only for the applicable recovery in a breach of contract case.

Defendant overstates the court's holding in the only other case it cites which includes a tort as well as breach of contract. Moreover, when analyzing the opinion, the case actually supports Plaintiff's position. *Sun First Nat'l Bank of Lake Wales v. Stegall*, 395 So.2d 1248 (Fla. Dist. Ct. App. 1981). In *Sun First*, when plaintiff bank sued defendant Stegall to collect money allegedly owed the bank, Stegall counterclaimed for breach of the duty of secrecy based on a telephone call the bank made to another lender of Stegall. The trial court found for Stegall; however, the court of appeals reversed finding that Stegall failed to show a causal connection between the telephone call and his damages. In fact, it appears that the court would have allowed damages of lost profits if Stegall had shown a causal connection – "He [Stegall] claimed that he did $200,000 less business the year after the call was made, yet he did not connect the loss of business with the telephone call."

*Id*. at 1249.  At the most, *Sun First* stands for the proposition that the plaintiff must make a causal connection between the tort and the damages, which this Court has already found sufficient evidence of to deny summary judgment on those grounds. ("[ARY provided] sufficient basis upon which a reasonable factfinder could conclude that IBJ directly caused ARY to *lose the prospective business relationship embodied in Foothill's December offer, and consequently, the Krigel's stock purchase.*"*Id*. at 9 (emphasis added)).

This is a tort case requiring recovery of tort damages.  Massachusetts has long held that lost profits are recoverable in business tort cases, including tortious interference. *First Act Inc. v. Brook Mays Music Co., Inc.*, 429 F.Supp.2d 429, 435 (D.Mass. 2006)(jury awarded general damages for lost profits and future lost profits where cause of action included tortious interference); *Ricky Cherick Distributors, Inc. v. Polar Corp.*, 41 Mass.App.Ct. 125, 128-29, 669 N.E.2d 218, 221 (1996); *Melo-Tone Vending v. Sherry Vending, Inc.*, 39 Mass. App. Ct. 315, 320, 656 N.W.2d 312 (Mass App. Ct. 1995); *see Powers v. Leno,* 24 Mass.App.Ct. 381, 385, 509 N.E.2d 46 (1987) (future profits recoverable for tortious interference with prospective business relationship where plaintiff has reasonable expectancy of financial benefit); *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc.,* 14 Mass.App.Ct. 396, 426, 440 N.E.2d 29 (1982)( lost profits recognized recovery in business tort cases).

Massachusetts courts recognize the distinction between the two remedies. *See Gentile Bros., Corp. v. Rowena Homes, Inc.*, 352 Mass. 584, 591-592 (Mass. 1967).  In *Gentile*, the court held that an award of specific performance was not precluded by money damages awarded for tortious interference.  The court reasoned that "[t]he damages assessed for interference with a contractual

relationship are 'not for breach of contract but for tort, and include such loss of profits as the plaintiff can prove resulted directly and proximately from the wrongful acts of the defendants.'" *Id*. Thus, the limitations that may be placed on recovery of lost profits under a contract theory should not be applied when recovery sounds in tort. Tort actions focus on the nature of the wrong and the defendant's conduct. *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.* 439 Mass. 387, 413, 788 N.E.2d 522 (Mass. 2003)(in finding that lost profits need not be proved with mathematical precision, the court stated that in business torts, the critical focus is on the defendant's wrongful conduct); *see Jet Spray Cooler, Inc. v. Crampton*, 377 Mass. 159, 385 N.E.2d 1349 (Mass. 1979)(measure of damages in cases involving business torts such as misappropriation of trade secrets entitles plaintiff to recover full compensation for his lost profits and requires defendant to surrender profits which he realized from his tortious conduct).

Additionally, different rights are protected under the two theories. *See R.E.T. Corp. v. Frank Paxton Co., Inc.*, 329 N.W.2d 416, 420 (Iowa)(recognizing a clear distinction between contract and tort theories of recovery – "'damages not even anticipated are recoverable in tort, while only such damages as were reasonably contemplated by the parties at the time of entering into the agreement are recoverable for a breach thereof.'", citing 25 C.J.S. *Damages* sec. 80 at 888 (1996)). Violation of a property right requires stronger remedies than violation of a contract right. *See* The Legal Infrastructure of Markets: The Role of Contract and Property Law, 73 B.U. L. Rev. 389, 396 (1993); *see Snepp v. United States*, 444 U.S. 507 (1979) (demonstrating the difference between contract and property remedies).[3] Another case supporting ARY's position that its damages are not limited is

---

[3] Tortious interference recognizes the principle that a person's business is property that is entitled to protection from harm by anyone who is not acting in the exercise of a right, such as the right to compete for business. Shafir v. Steele Recognizes New Tort of Intentional Interference With Plaintiff's Contractual Performance, 45-FEB

*Pleas v. City of Seattle,* 112 Wash.2d 794, 774 P.2d 1158 (Wash.1989). In this case, as a result of the City's tortious interference with a builder's plans to demolish buildings on his property and build a high-rise apartment complex, plaintiff's award included damages for lost profits *and* loss of favorable financing. Obviously, there was no restriction on awarding lost profits where one of plaintiff's injuries was loss of favorable financing as ARY also experienced.

Here, the duty IBJ breached arises out of tort, not contract. IBJ did not merely breach a contractual duty requiring it to provide financing, but rather, it breached a tort duty prohibiting interference with ARY's contract and business expectancies with Foothill. As such, the damages awarded should be tort, not contract.

ARY's position finds further support by looking at the last element of a claim for tortious interference with contract or business expectancies. This element is that the plaintiff's loss of advantage directly resulted from the defendant's conduct. *Boyle v. Douglas Dynamics, L.L.C.*, 292 F.Supp. 2d 198, 213 (D. Mass 2003); *Gentile Bros.,* 352 Mass. at 591-592. This Court aptly recognized the meaning of this last element of damages as being *the loss of advantage* when it stated in its order denying the summary judgment, " [ARY provided] a sufficient basis upon which a reasonable factfinder could conclude that IBJ directly caused ARY to *lose the prospective business relationship embodied in Foothill's December offer, and consequently, the Krigel's stock purchase."Id*. at 9 (emphasis added).

**B.     Defendant's Second Motion is A Veiled Attempt at Another Summary Judgment Motion**

Defendant's arguments regarding alternative financing and ARY's ability to pay cash further

---

B. B.J. 14

demonstrate this Second Motion is a veiled attempt at another summary judgment motion. Defendant's theory that alternative financing is readily available on the open market does not hold water in this case. Credit was obviously not readily available to ARY where IBJ was thwarting its financing efforts as it did here. Additionally, because Krigel's was in bankruptcy, ARY had only a limited time within which it could close the Krigel's deal. The bankruptcy time factor also counters Defendant's argument of readily available credit, or at the least, raises a question of fact. Additionally, the *ability* to pay cash and whether it is economically or strategically viable present two separate matters.

Defendant also claims that the only damages ARY incurred is the additional cost of financing, and that the terms set forth in the March 27 term sheet do not differ from those in the December 15th term sheet. This position is factually incorrect. The difference was not just the change in financing rate, but other factors as well, such as reducing the percentage advanced against inventory to 70 percent of net retail liquidation value and requiring a background evaluation of ARY's owners and management. Webster Aff. at 5; Webster Report at 6 (Exhibit D to Second Motion to Strike).

At the very least, these matters are more appropriate for summary judgment and Defendant should not be allowed to raise them after the summary judgment deadline. Additionally, these matters raise fact questions which should be brought before the trier of fact.[4] More importantly, the Court has already rejected these arguments, which Defendant made in its First Motion to Strike.

Moreover, even despite Defendant's argument, it recognizes that lost profits are recoverable

---

[4]Additionally, the affidavit of Max Jevinsky upon which Defendant relies is inadmissable hearsay and Plaintiff objects to it.

as special/consequential damages even in a contract case. Again, at the most, this presents a question of fact, which must be tried on the merits.

        C.     **ARY's Lost Profits Are Not Hypothetical**

Defendant claims that ARY's claim for lost profits are hypothetical. Defendant's argument does not even make sense as future lost profits are always based a projection of what the plaintiff would have earned. In it's order denying summary judgment, this Court has implicitly rejected Defendant's argument when it found ARY presented sufficient evidence on all elements of the tortious interference claim. Additionally, like its argument that lost profits are not recoverable for tortious interference, this argument is more properly the subject of summary judgment, the deadline for which has already passed.

If the Court does consider the argument, however, Ms. Webster's calculation is appropriate and not hypothetical. Prospective profits may be recovered when their loss appears to have been the direct result of the wrong complained of and when they are capable of proof to a reasonable degree of certainty. *Sullivan,* 439 Mass. at 413 (Mass. 2003)(lost profits need not be proved with mathematical precision). An award of damages can stand on less than substantial evidence ... particularly [in] the case of business torts, where the critical focus is on the wrongfulness of the defendant's conduct. *Ricky Smith Pontiac,* 14 Mass.App.Ct. at 426; *Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 777, 489 N.E.2d 185 (1986). Ms. Webster's report and affidavit filed in support of the Opposition to Summary Judgment (Exhibit D to Defendant's Second Motion to Strike) provide a rationale basis on which to base lost profits and proof to a reasonable degree of certainty.

### D. Even Without Lost Profits Damages, ARY Still Has Attorney's Fees and Punitive Damages, Which Preclude Dismissal of the Case

Assuming, *arguendo*, that the Court grants Defendant's Second Motion to Strike, it would not dispose of the entire case as ARY can still recover for attorney's fees and costs incurred in the Krigel litigation and punitive damages. Attorney's fees and costs incurred in separate litigation are recoverable where they result from the tortious conduct of another. *Mutual Fire, Marine and Inland Insurance Co. v. Costa*, 789 F.2d 83, 88-89 (1st Cir. 1986); *M.F. Roach Co. v. Provincetown*, 355 Mass. 731, 732, 247 N.E.2d 377, 378-79 (1969). When the natural consequence of a defendant's tortious conduct proximately cause the plaintiff to become involved in litigation with a third party, the plaintiff may recover from defendant attorney's fees associated with that litigation. *Costa*, 789 F.2d at 88 - 89. Barry Pickens' report states that Defendant's actions proximately caused ARY to incur attorney's fees and expenses in the Krigel ligation. The Second Motion to Strike does not challenge Mr. Pickens' report. Thus, the issue is not before the Court and attorney's fees and costs ARY incurred in defending itself in the Krigel's litigation as a result of Defendant's conduct remain viable damages and preclude dismissal of ARY's case.

Likewise, since punitive damages are allowed even with minimal damages (like interest rate differential) the case cannot be dismissed. *See Powell v. Alexander*, 391 F.3d 1, 18 (1st Cir. 2004)(to recover for punitive damages, plaintiff must establish either compensatory or nominal damages).

### III.

### CONCLUSION

For the foregoing reasons, ARY respectfully requests that the Court deny Defendant's Motion to Strike Ms. Webster's Report and Enter Judgment Dismissing the Sole Remaining Count of the

Second Amended Complaint. In the unlikely event that the Court reconsiders Defendant's argument and in the even further unlikely event that the Court strikes Ms. Webster's report, ARY respectfully requests that Ms. Webster be given the opportunity to revise her report to calculate the interest rate differential.


Dated:       October 9, 2006

>                             Respectfully submitted,
>
>                             THE CARRIGAN LAW FIRM, L.L.P.
>
>                             By:    /s/ Stephen P. Carrigan
>                                    Stephen P. Carrigan (Admitted Pro Hac Vice)
>                                    2 Houston Center
>                                    909 Fannin, Suite 1575
>                                    Houston, Texas 77010
>                                    (713) 739-0810 (telephone)
>                                    (713) 739-0821 (telefax)
>                                    *Attorney-in-Charge for Plaintiff*

OF COUNSEL:

| **THE CARRIGAN LAW FIRM, L.L.P.** | **MAHENDRU, P.C.** |
|---|---|
| Jill L. Groff (Admitted Pro Hac Vice) | Ashish Mahendru BBO#647661 |
| 2 Houston Center | 1111 Bagby, Suite 2000 |
| 909 Fannin, Suite 1575 | Houston, Texas 77002 |
| Houston, Texas 77010 | (713) 571-1519 (telephone) |
| (713) 739-0810 (telephone) | (713) 651-0776 (telefax) |
| (713) 739-0821 (telefax) | *Of counsel for Plaintiff* |
| *Of Counsel for Plaintiff* | |


## CERTIFICATE OF SERVICE

_____ The undersigned hereby certifies that a true and correct copy of the foregoing instrument was forwarded as indicated below by certified mail, facsimile and/or hand delivery, return receipt requested in accordance with the Federal Rules of Civil Procedure on this <u>9th</u> day of October, 2006.

Imanage 67892                                    12

Robert S. Fischler
ROPES & GRAY, L.L.P.
45 Rockefeller Plaza
New York, NY 10111
(212)841-0444

Christopher Dillon
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

                                                /s/ Stephen P. Carrigan
                                                Stephen P. Carrigan/Jill L. Groff