## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARY JEWELERS, LLC,<br><br>       Plaintiff,<br><br>     v.<br><br>IBJTC BUSINESS CREDIT CORPORATION<br>and DAVID MOLINARIO,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 04-10281-EFH<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants IBJTC Business

Credit Corporation and David Molinario respectfully move for summary judgment against the

plaintiff, ARY Jewelers, LLC on both counts of its First Amended Complaint.  In support of this

Motion, the defendants submit the accompanying Statement of Undisputed Material Facts

pursuant to Local Rule 56.1, the Affidavit of Steven Cole with attached exhibits, the Affidavit of

Francis D. O'Connor, Jr. with attached exhibits, the Affidavit of Kate Cimini, Esq. with attached

exhibits, and a Memorandum of Law in Support of their Motion.  As these materials

demonstrate, there is no genuine issue of material fact, and the defendants are entitled to

judgment as a matter of law.

WHEREFORE, defendants respectfully request that their Motion be allowed and that the

First Amended Complaint be dismissed in its entirety.



IBJTC BUSINESS CREDIT CORPORATION
and DAVID MOLINARIO
By their attorneys,

/s/ Kate Cimini
Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Robert S. Fischler (Admitted *pro hac vice*)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700

Dated:  August 11, 2005

## Local Rule 7.1(A)(2) Certification

I, Robert S. Fischler, attorney for the IBJTC Business Credit Corporation and David Molinario hereby certify that I have conferred with counsel for ARY Jewelers, LLC regarding the subject of the instant motion and we attempted in good faith to resolve or narrow the issues raised by the instant motion.

/s/ Robert S. Fischler
Robert S. Fischler

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2005, copies of the foregoing Motion for Summary Judgment, Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Affidavit of Kate Cimini and attached exhibits, Affidavit of Steven Cole and attached exhibits, and Affidavit of Francis D. O'Connor, Jr. and attached exhibits were served on counsel for the plaintiff Stephen P. Carrigan, The Carrigan Law Firm, LLP, 1331 Lamar, Suite 1550, Houston, TX 77010 by United States mail.

/s/ Kate Cimini
Kate Cimini

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARY JEWELERS, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>IBJTC BUSINESS CREDIT CORP.<br>AND DAVID MOLINARIO,<br><br>　　　　　　Defendants. | Civil Action No. 04-10281 (EFH) |

## MEMORANDUM OF LAW IN
## SUPPORT OF DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Kate Cimini (BBO No. 654336)
Ropes & Gray LLP
One International Place
Boston, Massachusetts 02110-2624
(617) 951-7000

Robert S. Fischler (Admitted Pro Hac Vice)
Ropes & Gray LLP
45 Rockefeller Plaza
New York, NY 10111
(212) 841-5700

## TABLE OF CONTENTS

**Page**

I.    THE STANDARD FOR SUMMARY JUDGMENT..........................................................4

II.   SUMMARY JUDGMENT SHOULD BE ENTERED ON COUNT I
      OF THE FIRST AMENDED COMPLAINT......................................................................5

    A.    ARY Cannot Show That A Foothill Credit Facility Was Probable
        At the Time of the Alleged Interference .................................................... 5

            1.   ARY Would Have Agreed Only to "Same Terms"
                 Financing From Foothill .............................................................. 6

                  (a)   The Contemporaneous Correspondence ...................................... 6

                  (b)   Razzak's Deposition Testimony in This Case ............................ 7

                  (c)   Judicial Admissions ..................................................................... 8

                      (i)    The Fabrikant Litigation.................................... 9

                      (ii)   The Krigel Litigation....................................... 10

            2.   Foothill Decided Before the Alleged Interference By IBJ
                 Not to Extend "Same Terms" Financing .................................. 11

            3.   ARY Cannot Establish That Foothill's Credit  Committee
                 Would Have Approved a Credit Facility for ARY/Krigel's.................... 12

    B.    ARY Cannot Prove Causation – Any Lost Advantage Was Not
        The Direct Result Of The Alleged Interference.................................... 13

    C.    ARY Cannot Show That IBJ or Mr. Molinario Knew Of The Alleged
        Contemplated Contract........................................................................ 14

    D.    ARY Cannot Show That IBJ or Mr. Molinario Intentionally Interfered Or Had An
        Improper Motive Or Used Improper Means ........................................ 15

    E.    ARY Cannot Prove Actual Damages.................................................. 17

III.  SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS
      ON COUNT II OF THE FIRST AMENDED COMPLAINT...........................................19

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Alternative System Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23 (1st Cir. 2004)...............8, 9, 11

*American Private Line Serv., Inc. v. Eastern Microwave,* 980 F.2d 33 (1st Cir. 1992) ...........5, 17

*Boyle v. Douglas Dynamics, L.L.C.,* 292 F. Supp. 2d 198 (D. Mass. 2003).......5, 6, 13, 14, 15, 17

*Brown v. Armstrong,* 957 F. Supp. 1293 (D. Mass. 1997) .............................................................15

*Capizzi v. F.D.I.C.,* 1993 WL 723477 (D. Mass. March 9, 1993) .................................................19

*Mass. Cash Register Inc. v. Comtrex Systems Corp.,*
    901 F. Supp. 404 (D.Mass. 1995) ...............................................................................16, 17, 18

*Trent Partners and Associates Inc. v. Digital Equipment Corp.,*
    120 F. Supp. 2d 84 (D. Mass. 1999) ..........................................................................5, 15, 16

### STATE CASES

*ARY Jewelers, LLC v. Krigel,* 82 P.3d 460 (Kan. 2003) .................................................7, 10, 11,13

*Adcom Products Inc. v. Konica Business Machines USA, Inc.,*
    41 Mass. App. Ct. 101 (1996) .............................................................................................16, 17

*Chemawa Country Golf, Inc. v. Wnuk,* 9 Mass. App. Ct. 506, (1980) ...........................................18

*Harsha v. State Savings Bank,* 346 N.W.2d 791 (Iowa 1984) ..................................................18, 19

*Sparks v. Farmers Federal Saving Loan,* 395 S.E.2d 559 (W.Va. 1990) .....................................18

*United Truck Leasing Corp. v. Geltman,* 406 Mass. 811 (1990) ............................................16, 17

*U.S. Funding, Inc. of America v. Bank of Boston Corporation,*
    28 Mass. App. Ct. 404 (1990) .................................................................................................18

### OTHER AUTHORITIES

5 *Corbin, Contracts,* §1078.............................................................................................................19

25 *Williston on Contracts* §66:100 (4th ed.).................................................................................18

*Restatement (Second) of Contracts,* §351, comment (e) ........................................................18, 19

## PRELIMINARY STATEMENT

Defendants IBJTC Business Credit Corp. ("IBJ") and its former employee, David Molinario, move for summary judgment, pursuant to Fed. R. Civ. P. 56(b), on both Counts of the First Amended Complaint of plaintiff ARY Jewelers, LLC ("ARY").

ARY's principal claim, set forth in Count I, is that IBJ tortiously interfered with a prospective financing agreement between ARY and Foothill Capital Corp. ("Foothill") by sending Foothill copies of news articles published by the Dow Jones Newswire on its Internet website. The articles discussed criminal charges pending against ARY's chairman and others. ARY claims that transmission of the articles to Foothill in February 2001 caused Foothill to withdraw a December 15, 2000 financing proposal (the "December Proposal"). Although ARY did not accept the December Proposal when it was made, ARY now says that it eventually would have accepted the December Proposal if it had not been withdrawn by Foothill after its receipt of the Dow Jones articles. But the allegation that ARY would have accepted the December Proposal is a recent invention, as demonstrated by ARY's conduct at the time and its repeated admissions – in two prior litigations, in contemporaneous documents, and in deposition testimony in this case. Those admissions show conclusively that Foothill and ARY did not proceed with the December Proposal because of ARY's dissatisfaction with it, not IBJ's transmission of the Dow Jones articles.

The background of the December Proposal is as follows. In November 2000, ARY entered into an agreement to purchase Krigel's, Inc. ("Krigel's"), which operated a chain of retail jewelry stores. Foothill was Krigel's secured lender. The purchase agreement permitted ARY to avoid the agreement if Foothill did not commit, by December 19, 2000, to continue its existing credit facility after ARY purchased Krigel's. Foothill determined in December, *months prior to*

*its receipt of the Dow Jones articles,* that it would not continue to finance on the same terms if ARY acquired Krigel's. However, it was willing to consider financing on different terms, and thus made the December Proposal, the terms of which varied significantly from the then-existing Foothill-Krigel's credit facility.

Thus, well before Foothill received the Dow Jones articles from IBJ, it had decided *not* to provide "same terms" financing. Given this reality, and ARY's admitted unwillingness to accept different terms, ARY cannot meet its burden of establishing the first element of its tortious interference claim – that the defendants interfered with a "probable" business relationship. Indeed, having stated in a sworn declaration in a prior judicial proceeding that the continuation of Foothill's existing financing was an *"absolute prerequisite"* to any transaction, ARY may not, under principles of judicial estoppel, now assert that it would have accepted the significantly different terms contained in the December Proposal.

The admissions described above alone require the entry of summary judgment for defendants, as they negate an essential element of ARY's tortious interference claim. There are, moreover, a host of additional reasons why the tortious interference claim cannot survive, including the following:

• *First*, ARY cannot establish a probable agreement with Foothill for the additional reason that there is no evidence that Foothill's credit committee, the approval of which was required before Foothill could commit to finance, would have approved a loan to ARY on the terms contained in the December Proposal. Indeed, ARY itself argued in a prior litigation that Foothill had never committed to the December Proposal.

• *Second*, ARY cannot establish the essential element of causation. Uncontroverted evidence establishes that IBJ uncovered the Dow Jones articles in a routine background check

during its due diligence process, and that the articles (or others disclosing the same criminal charges) would have been uncovered by Foothill during *its* due diligence process. Additionally, under Foothill's procedures ARY would have been required to disclose to Foothill the facts concerning the charges pending against its principals.

• *Third*, ARY cannot establish, as it must, that IBJ knew of a probable financing agreement between Foothill and ARY. Indeed, there is *no* evidence that any such agreement was even being negotiated at the time the Dow Jones articles were sent to Foothill. In all events, uncontroverted evidence shows that at the time IBJ sent the Dow Jones articles to Foothill, defendants were unaware of any negotiation, much less a probable financing agreement, between Foothill and ARY.

• *Fourth*, ARY cannot prove that defendants acted out of an improper motive or used improper means, an essential element of a tortious interference claim. To the contrary, the undisputed facts show that IBJ was not competing with Foothill for ARY's business, and thus had no motive to interfere with a potential loan from Foothill to ARY. As IBJ's expected financing was to repay Foothill's then-existing loan to Krigel's, IBJ merely extended the professional courtesy of letting Foothill know that IBJ's financing would not be forthcoming. The transmission of the publicly disseminated Dow Jones articles was neither unlawful nor improper, and it is ludicrous for ARY to claim an expectation of privacy regarding the information in those articles.

• *Fifth*, ARY cannot establish, as it must, that it sustained actual damages due to IBJ's alleged interference with the December Proposal. Where, as here, replacement financing is available, a prospective borrower's measure of damages is the difference in financing costs between the desired financing and the replacement financing. It is indisputable that replacement

financing from Foothill was offered to ARY, but that ARY's chairman, for his own reasons, rejected the financing, and abandoned any effort to buy Krigel's. ARY had the right to make this decision, but having done so, it incurred no additional financing costs, and thus cannot prove the actual damages element of a tortious interference claim.

Finally, ARY's claim in Count II of the First Amended Complaint, that IBJ breached a confidential or fiduciary duty owed to ARY, is frivolous. There simply is no legal or factual basis for claiming that any "confidential" or "fiduciary" relationship existed between ARY and IBJ, or that news articles published by Dow Jones on its Internet website somehow constituted confidential information.

**FACTS**

In accordance with Local Rule 56.1, defendants have submitted herewith a Statement of Material Facts as to Which There is no Genuine Issue to be Tried, with appropriate citations. Defendants respectfully refer the Court to their Rule 56.1 Statement, which they incorporate by reference herein. Where relevant, defendants refer below to the facts contained in the Rule 56.1 Statement.

**ARGUMENT**

**I.  THE STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, the undisputed facts establish that there is no genuine issue of material fact, and that defendants are entitled to judgment as a matter of law.

## II. SUMMARY JUDGMENT SHOULD BE ENTERED
## ON COUNT I OF THE FIRST AMENDED COMPLAINT

Count I alleges that defendants tortiously interfered with a prospective business advantage. In order to prevail on such a claim, a plaintiff must prove: (1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such contract; (3) the defendant's intentional interference with it through improper motive or means; and (4) the plaintiffs loss of advantage directly resulting from the defendant's conduct. *See Boyle v. Douglas Dynamics, L.L.C.*, 292 F. Supp. 2d 198, 213 (D. Mass. 2003), aff'd, 99 Fed. Appx. 243, 2004 WL 1171370 (1st Cir. 2004); *Trent Partners and Assocs. Inc. v. Digital Equipment Corp.*, 120 F. Supp. 2d 84, 112 (D. Mass. 1999).

In order to avoid summary judgment, ARY must come forward with admissible evidence establishing, at the least, a triable issue of fact on every element of its tortious interference claim. However, there is no triable issue on *any* element of this claim.

### A.   ARY Cannot Show That A Foothill Credit Facility Was
### Probable At the Time of the Alleged Interference

ARY cannot satisfy the first element of its tortious inference claim, *i.e.*, that it had a "business relationship or contemplated contract of economic benefit." To satisfy this element, ARY "need not prove that it had a binding contract, rather a probable future business relationship anticipating a reasonable expectancy of financial benefit." *See Boyle*, 292 F. Supp. 2d at 213. *See American Private Line Serv., Inc. v. Eastern Microwave*, 980 F.2d 33, 36 (1st Cir. 1992) (plaintiff must show at least a "probable future business relationship anticipating a reasonable expectancy of financial benefit"). Thus ARY must prove that a financing agreement with Foothill was at least *probable* on the date of the alleged interference by IBJ. ARY cannot do so. Uncontroverted evidence shows that ARY would accept only "same terms" financing from

Foothill, and that Foothill decided not to extend "same terms" financing to ARY in December 2000 – months before the alleged interference by IBJ.

### 1.    ARY Would Have Agreed Only to "Same Terms" Financing From Foothill

As discussed, ARY alleges that after rejecting Foothill's December Proposal in December 2000, it would have accepted it in March 2001 but for the alleged tortious interference by IBJ. Yet the record is replete with admissions by ARY that it would not have accepted the December Proposal, but only continued financing from Foothill on the same terms it had previously extended to Krigel's. These admissions are found in: (1) contemporaneous letters from Mr. Razzak to Scott Krigel; (2) Mr. Razzak's deposition testimony in this case; (3) a sworn declaration and other papers filed by ARY in the Fabrikant Litigation and the Krigel Litigation. Thus, to avoid summary judgment ARY must come forward with specific facts showing that, in late February 2001 – the time of the alleged "interference" by IBJ – a *same terms* agreement between ARY and Foothill was at least probable. *See Boyle*, 292 F. Supp. 2d at 213. ARY cannot meet this burden.

### (a)    The Contemporaneous Correspondence

ARY admitted in two letters authored by its Chairman before this litigation began that it would have accepted only "same terms" financing from Foothill. The first letter was sent to Scott Krigel on March 28, 2001, one day after Mr. Razzak rejected Mr. Husain's recommendation to accept Foothill's March 27 Proposal. In the letter, Mr. Razzak stated that ARY would consummate the SPA only if Foothill agreed to finance ARY *"upon the same terms and conditions as were in effect at the time the [SPA] was entered into."* Cimini Aff. Ex. H (emphasis added). As the Supreme Court of Kansas put it: "Finally, on March 28, ARY notified Krigel's Inc. that if Foothill did not approve continued financing on the same terms as Krigel's

Inc. had enjoyed prior to insolvency, ARY would consider the SPA void." *ARY Jewelers, LLC v.*

*Krigel,* 82 P.3d 460, 465 (Kan. 2003) ("Krigel Litigation") (Cimini Aff. Ex. A).

Mr. Razzak's other letter, dated April 5, 2001, stated that, after further discussion

between ARY and Foothill, Foothill had "categorically" refused to extend financing on the

*"same terms and conditions as were in effect at the time the [SPA] was entered into."* Mr.

Razzak went on to say that, as a result, ARY was *"left with little option but to declare that the*

*[SPA] and related agreements are null and void pursuant to Section 4(c) of the SPA since*

*Foothill Capital has not given its consent to the continued financing of Krigel's Inc.'s*

*obligations to Foothill."* Cimini Aff. Ex. I (emphasis added).

In stark contrast to ARY's current litigation position, neither letter makes any reference

whatsoever to the December Proposal. Rather, both letters state unequivocally that ARY was

unwilling to proceed with a transaction because Foothill had refused to continue financing on the

*same terms* previously extended to Krigel's.

        **(b)**    **Razzak's Deposition Testimony in This Case**

In deposition testimony concerning his efforts to obtain financing from Foothill in March

2001, after IBJ declined to finance, Mr. Razzak confirmed that ARY considered "same terms"

financing from Foothill a prerequisite to any transaction. Mr. Razzak testified as follows:

> Q:    Did you tell [Foothill] that you wanted Foothill to continue financing on
>     the same terms that had been provided previously?
> A:    Yes.[1]
>     ...
> Q:    Did Mr. Krigel tell you that Foothill would not continue financing on the
>     same terms?

---

[1] This admission is telling. Rather than asking for the December Proposal, which ARY now claims it wanted, Mr. Razzak admits that in this March 2001 time frame, he told Foothill that ARY wanted "same terms" financing. Of course, that is also what he said in his letters to Mr. Krigel of March 28 and April 5, 2001. In his deposition testimony, Mr. Razzak admitted that these letters were true statements of ARY's position at the time. Razzak Dep. at 43:4-25 (Cimini Aff. Ex. O).

A:      Yes.  And after that, the terms and conditions they offered were not acceptable at all.

Q:      If Foothill had offered to continue financing on the same terms, would that have been acceptable to you?

A:      Hundred percent why I come over here.
        . . .

Q:      Who was not honoring their commitment?

A:      It was Krigel, Scott Krigel.

Q:      In what way did Mr. Krigel not honor his agreement?

A:      They were to provide financing from the bank.  The way they were getting that.

Q:      Meaning on the same terms?

A:      Yes.

Q:      And because they did not do that, you decided not to proceed.

A:      So who's the culprit now?

Q:      I'm trying to get a yes or no.

A:      *That's the reason.*
        . . .

Q:      Let me see if I can understand what you have said.  Are you saying Mr. Krigel's obligation was to arrange for the bank to provide financing on the same terms they had provided previously, and that Mr. Krigel failed to arrange for that?

A:      Yes.

Q:      And that was his failure to honor his commitment?

A:      Yes.  Then we decided –

Q:      And because of that you decided not to proceed.

A:      *Yes.*

Razzak dep. 21:20-23, 22:22-23:8, 33:3-34:8 (Cimini Aff. Ex. O).  Thus, consistent with his

March 28 and April 5, 2001 letters to Mr. Krigel, Mr. Razzak conceded in his deposition that

"the reason" for ARY's decision not to proceed with the Krigel's financing was Foothill's

refusal to continue financing on the same terms previously provided to Krigel's.

### (c)    Judicial Admissions

The evidentiary admissions discussed above demolish ARY's newly-minted position that

it would have accepted the December Proposal if that proposal were still available in March

2001. However, even were those admissions not before the Court, ARY's new position would

be foreclosed because, under the doctrine of judicial estoppel, ARY may not assert here a

position inconsistent with one it took in earlier litigation.  *See Alternative System Concepts, Inc.*

*v. Synopsys, Inc.*, 374 F.3d 23, 32-33 (1st Cir. 2004) (Doctrine of judicial estoppel "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding"). ARY successfully asserted a position in two prior litigations which directly contradicts its assertion here that it would have accepted the December Proposal.

## (i)     The Fabrikant Litigation

In the Fabrikant Litigation, Krigel's unsecured creditors alleged that ARY breached the SPA, and they sought a preliminary injunction freezing ARY's domestic assets. ARY argued that it did not breach because Foothill had not agreed, by the date specified in the SPA, to "same terms" financing. *See* ARY Jewelers, LLC's Suggestions In Opposition to Plaintiffs' Emergency Motion For Temporary Restraining Order at 4 (Cimini Aff. Ex. D)[2] ("Rather than continuing the financing available to Krigel's, Foothill proposed terms on December 15 that were *very different*.") (emphasis supplied). In addition, ARY made clear, in a sworn declaration filed by Mr. Razzak, that it was unwilling to close the Krigel's transaction unless Foothill agreed to continue the same financing then in place. Indeed, Mr. Razzak swore in his declaration that

> ... the foundation of all of the discussions between Foothill, ARY and Mr. Krigel in February, March, and April 2001 was the fact that continued financing was *an absolute prerequisite to closing the transaction*.

Declaration of Haji Abdul Razzak, sworn to August 1, 2001 (Cimini Aff. Ex. F, p. 3). This sworn statement, of course, is fatal to ARY's newly-minted position that it would have accepted the "very different" terms set forth in the December Proposal.

---

[2] ARY's brief in opposition to the creditors' motion for a temporary restraining order was incorporated by reference in ARY's subsequent brief in opposition to the motion for a preliminary injunction. ARY Jewelers, LLC's Supplemental Suggestions In Opposition to Motion For a Preliminary Injunction at 3 (Cimini Aff. Ex. E).

In the Fabrikant Litigation, the Western District of Missouri upheld ARY's position, and denied the creditors' motion for a preliminary injunction.   The unsecured creditors then dismissed the lawsuit.  Brief of Appellee ARY Jewelers, LLC at 10 (Cimini Aff. Ex. C).

### (ii)    The Krigel Litigation

In the Krigel Litigation, which involved ARY's right to the funds escrowed under the SPA, ARY again argued that its refusal to consummate the SPA was not a breach of the agreement because Foothill refused to finance *"on the same terms that were currently in effect with Krigel's"*.  Brief of ARY Jewelers, LLC at 7 (Cimini Aff. Ex. C) (emphasis added).  The Supreme Court of Kansas agreed, and it affirmed summary judgment in ARY's favor.  The court held that Foothill's decision to offer only "significantly different" terms to ARY in December 2000, Krigel Litigation, 82 P.3d at 465,  did not satisfy the SPA's financing condition, and that ARY therefore had no obligation to purchase Krigel's.  Cimini Aff. Ex. A.

In short, ARY prevailed in both the Fabrikant Litigation and the Krigel Litigation by expressly arguing, in a sworn declaration from its Chairman and in other court filings, that continued financing on the same terms in the then-existing Foothill credit facility was essential – indeed an *"absolute prerequisite"* – to the potential transaction with Krigel's.  Having successfully asserted that position before the Western District of Missouri and the Kansas state courts, ARY cannot now come into this Court and assert – directly contrary to its prior position – that it was willing to accept the December Proposal, which, as noted above, ARY itself has characterized as "very different" than the then-existing Foothill facility.[3]  ARY's attempt to play "fast and loose" with the courts in this manner mocks the judiciary and must be rejected as a

---

[3]  In another pleading, ARY characterized the December Proposal as "markedly different" than the existing Foothill facility.  Cimini Aff. Ex. B ¶ 15.

matter of law under the doctrine of judicial estoppel. *Alternative Systems Concepts*, 374 F.3d at 32-34.

### 2. Foothill Decided Before the Alleged Interference By IBJ Not to Extend "Same Terms" Financing

As set forth in the Affidavit of Steven Cole, and in the opinion of the Kansas Supreme Court in the Krigel Litigation, Foothill decided prior to December 19, 2000 that it would not provide "same terms" financing to ARY. Cole Aff. ¶ 5; Krigel Litigation, 82 P.3d at 463-64. The reason was Krigel's "distressed financial condition and highly uncertain prospects." Cole Aff. ¶ 5. As Mr. Cole explains, Foothill was willing to consider different terms at that time, and thus made the December Proposal. *Id.* Moreover, by the time ARY again sought financing from Foothill in March 2001, Krigel's operating performance had declined even further, leading Foothill to revise the December Proposal. Cole Aff. ¶¶ 9, 10. Thus, the undisputed evidence shows that Foothill decided in December 2000 – *well before it received the Dow Jones articles* in late February or early March 2001 – not to continue the same financing it had been providing to Krigel's.

In sum, ARY's admissions show it was prepared to accept nothing less than "same terms" financing from Foothill -- and that Foothill, for reasons unrelated to IBJ, was not prepared to extend such financing to ARY. Therefore, ARY cannot establish that, but for the alleged interference by IBJ, it was probable that ARY would have entered into a credit agreement with Foothill. For this reason alone, Count I of the First Amended Complaint should be dismissed as to both defendants.

3.    **ARY Cannot Establish That Foothill's Credit Committee Would Have Approved a Credit Facility for ARY/Krigel's**

ARY cannot show that the December Proposal constituted a "probable" agreement in March 2001 for the additional reason that the agreement would have been subject to approval of Foothill's credit committee, and there is no evidence that that committee would have approved the transaction. Cole Aff. ¶ 6, Ex. A.[4]  Indeed, as Mr. Cole of Foothill states in his affidavit, one can only speculate as to how Foothill's credit committee would have reacted to any credit facility it might have been asked to approve. Cole Aff. ¶ 15.

In the Krigel Litigation, ARY took full advantage of the fact that the December Proposal was preliminary and subject, among other things, to approval by Foothill's credit committee. Specifically, it asserted that the financing condition in paragraph 4(c) of the SPA was not satisfied, in part, because Foothill's proposals were not a "commitment to lend," but rather were "subject to, among other things, Foothill Capital's Credit Committee approval." Cimini Aff. Ex. B, ¶19.  And ARY argued to the Kansas Supreme Court that "[a]t no time did Foothill Capital commit in writing, or otherwise, to the continued financing of Krigel's on any terms, much less on the same terms that were currently in effect with Krigel's." Cimini Aff. Ex B, ¶ 19.  In short, ARY itself has emphasized the conditional nature of the December Proposal when it was to ARY's advantage to do so.

The speculative nature of ARY's position is further evident from its pleadings in the Krigel Litigation.  It asserted there that because "Foothill Capital never issued a commitment, pursuant to the terms of paragraph 4(c) of the SPA, the agreement and related agreements became void and of no further effect on December 19, 2000." Cimini Aff. Ex. B, ¶36.  The

---

[4] The December Proposal and the later proposals all state that they "should not be considered a commitment to lend" and that "[a]ny commitment to lend would be subject to, among other things, Foothill Capital's Credit Committee approval." Cole Aff. Ex. A.

Supreme Court of Kansas agreed.  Krigel Litigation, 82 P.3d at 466 (Cimini Aff. Ex. A).

Accordingly, even *if* ARY had reached a final agreement with Foothill on a credit facility in

March 2001, by ARY's own admission, it would have been required to reach a new agreement to

buy Krigel's, as the SPA was void as of December 19, 2000.  There is no evidence that a new

agreement would have been reached.

## B.    ARY Cannot Prove Causation – Any Lost Advantage Was Not The Direct Result Of The Alleged Interference

Summary judgment should be entered for defendants on Count I for the additional reason

that ARY cannot demonstrate that it lost an advantageous financing agreement with Foothill as a

"direct result" of the alleged interference by IBJ. *See Boyle*, 292 F. Supp.2d at 214.

As discussed above, ARY was willing to accept only "same terms" financing from

Foothill, and Foothill decided not to extend such financing to ARY for reasons unrelated to IBJ.

It follows that the failure of Foothill and ARY to enter into a credit agreement was not the result,

much less the "direct result," of IBJ's communications with Foothill.

Additionally, the requisite causation cannot be shown because it is undisputed that even if

Foothill had not received the Dow Jones articles from IBJ, it would have seen them, or otherwise

have learned of the criminal charges against Mr. Razzak, *when it did its own background check*

*prior to finalizing any agreement with ARY.*  Uncontroverted evidence establishes that the

background check IBJ performed was standard practice for lenders, and that Foothill would have

done a background check that would have included a search of various media data bases.  Cole

Aff. ¶ 16; O'Connor Aff. ¶ 7.[5]  Therefore, as Mr. Cole of Foothill states in his affidavit, there is

---

[5]  In addition, pursuant to the terms of the December Proposal, and as part of Foothill's standard requirements, ARY would have been required to disclose to Foothill, prior to closing, information concerning any litigation that involved it or its parent entity, ARY Trading.  Cole Aff. Ex. A, ¶ 10(e); Morgan Dep. at 143:2-44:5 (Cimini Aff. Ex. P).  This would have required ARY to disclose to Foothill the litigation referred to in the Dow Jones articles.

"*no doubt that [Foothill's] background check would either have revealed the very same news articles that IBJ had sent to Foothill, and/or other news reports about the criminal charges filed against Mr. Razzak.*" Cole Aff. ¶16 (emphasis added). In short, the undisputed evidence establishes that Foothill would have learned of ARY's criminal problems whether or not IBJ sent the Dow Jones articles.[6] Therefore, ARY cannot prove the essential element of causation.

### C.    ARY Cannot Show That IBJ or Mr. Molinario Knew Of The Alleged Contemplated Contract

Summary judgment on Count I should be entered for IBJ for the additional, and independent reason that ARY cannot demonstrate a triable issue as to whether IBJ had knowledge of the alleged contemplated contact between ARY and Foothill. *See Boyle*, 292 F.Supp. 2d at 213-14. Indeed, there is no evidence that Foothill was even in negotiation with ARY at the time the Dow Jones articles were sent Foothill, much less that the parties were close to a deal.

Frank O'Connor was the senior IBJ lending officer who authorized sending the Dow Jones articles to Foothill. It is uncontroverted that, at the time, he did *not* know of any contemplated financing arrangement between Foothill and ARY. O'Connor Aff. ¶ 7. Indeed, as Mr. O'Connor has explained, after ARY accepted IBJ's January 24, 2001 term sheet, he reasonably believed that ARY would be working exclusively with IBJ in accord with common industry practice. O'Connor Aff. ¶ 11.

---

Morgan Dep. at 144:2-5 (Cimini Aff. Ex. P).

[6] In addition to the Dow Jones articles available on the Internet, there were several news stories concerning the criminal charges against ARY. For example, a January 1998 story in *The New York Times* entitled "Bhutto Clan Leaves Trail of Corruption in Pakistan," detailed the allegations against ARY and Mr. Razzak. Cimini Aff. Ex. J at 8-9. This article appeared on *The New York Times* website. The contents of this article are summarized in defendants' Rule 56.1 Statement at footnote 1.

Moreover, there is no evidence that anyone else at IBJ had knowledge of any contemplated ARY-Foothill financing agreement as of February 28, 2001. As to Mr. Molinario, he testified, without contradiction, that prior to contacting Foothill, he understood that ARY had "elected to go with [IBJ's] term sheet." Molinario Dep. at 101:15-23 (Cimini Aff. Ex. N).

### D. ARY Cannot Show That IBJ or Mr. Molinario Intentionally Interfered Or Had An Improper Motive Or Used Improper Means

Summary judgment should be entered for ARY for the additional reason that it cannot establish the third element of its tortious interference claim – that the defendant intentionally interfered through improper motive or means. *See Boyle*, 292 F. Supp. 2d at 213; *Trent Partners*, 120 F. Supp. 2d at 112; *see also Brown v. Armstrong*, 957 F. Supp. 1293, 1305 (D. Mass. 1997), *aff'd* 129 F.3d 1252 (granting summary judgment to defendants on claim of tortious interference with a prospective business relationship where there was "no evidence that Defendants intentionally and improperly interfered. . . .").

There is no evidence that IBJ or Mr. Molinario *intentionally* interfered with a probable credit agreement between Foothill and ARY. Indeed, it is clear that any interference was unintentional. First, as discussed under Section II.B. above, the evidence is undisputed that Mr. O'Connor of IBJ, who authorized sending the Dow Jones articles to Foothill, did not know of any contemplated Foothill-Krigel contract at the time he did so. Second, it is undisputed that IBJ decided *before* contacting Foothill and sending the Dow Jones articles to it in February 2001 that IBJ would not provide financing to ARY/Krigel's. Molinario Dep. 94:2-95:20, 103:18-23 (Cimini Aff. Ex. N); O'Connor Aff. ¶¶ 9-10. Indeed, the sole purpose of contacting Foothill was to let it know that IBJ was *not* going to be financing Krigel's. Therefore, at the time the Dow Jones articles were sent, IBJ was not competing with Foothill for ARY's business, and thus had

nothing to gain from interfering with a potential Foothill-ARY agreement. O'Connor Aff. ¶¶ 10-12.

As to Mr. Molinario, the uncontroverted evidence is that he acted at the direction of Mr. O'Connor in contacting Foothill, and thus was merely a conduit, not a decision-maker, regarding the communications with Foothill. Nor is there a shred of evidence that Mr. Molinario acted in his personal capacity in connection with the events at issue here.[7]

Nor can ARY demonstrate a triable issue on the question of improper motive. For purposes of tortious interference with prospective advantage, improper motive exists where a defendant acts out of "enmity" or to "hurt" the defendant. *See Adcom Products Inc. v. Konica Business Machines USA, Inc.*, 41 Mass. App. Ct. 101 (1996); *United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 817 (1990). If the defendant is motivated by financial benefit or was acting for legitimate business reasons, its motive is not improper. *Id.*; *See Trent Partners*, 120 F. Supp. 2d at 87; *Mass. Cash Register Inc. v. Comtrex Systems Corp.*, 901 F. Supp. 404, 422 (D.Mass. 1995). There is no evidence here that IBJ or Mr. Molinario was motivated to hurt ARY or that IBJ acted out of spite or enmity. In fact, there is no evidence of any enmity, hostility, or animus between ARY and anyone at IBJ. In all events, the undisputed evidence shows that Mr. O'Connor of IBJ decided to contact Foothill about IBJ's decision not to finance ARY as a professional courtesy, because he believed (correctly) that Foothill was expecting Krigel's debt to Foothill to be repaid with IBJ funds. O'Connor Aff. ¶ 10; Cole Aff. ¶ 7.

---

[7] ARY's counsel plainly appreciates the absence of any legal basis for the claims against Mr. Molinario. At the conclusion of Mr. Molinario's deposition, ARY's counsel stated to Mr. Molinario: "I hope someone publishes the fact that I'm going to recommend to my client that you be released from this lawsuit after this deposition and that Google erases any trace of your name as a defendant." Molinario Dep. at 194:9-12 (Cimini Aff. Ex. N). Thereafter, when asked to make good on this pledge, ARY's counsel refused to do so unless ARY received a quid pro quo in the form of unwarranted additional discovery from IBJ, well after the cutoff date for such discovery. Cimini Aff. Ex M.

Finally, ARY cannot create a triable issue of fact as to whether IBJ or Mr. Molinario used improper means. To prove improper means, a plaintiff must show the violation of a rule or statute, the use of threats, defamatory statements, or the misrepresentation of facts. *See American Private Line Serv.*, 980 F.3d at 37; *Boyle*, 292 F. Supp. 2d at 214; *Geltman*, 406 Mass. at 817.[8] Statements may be "improper means" where the statements "are false, misleading, laden with innuendo, extortionate, or otherwise threatening." *See Adcom Products*, 41 Mass. App. Ct. at 110 . As noted in *Adcom*, ("[i]t is important that proof of claims of wrongful interference with prospective contractual relations be subject to rigorous standards lest persons in commerce be intimidated into silence and passivity.") Here, there is no evidence that IBJ's communications with Foothill were "improper means" sufficient to support a claim of tortious interference with prospective contractual relations.

The evidence establishes that when IBJ contacted Foothill on February 28, 2001, it did two things, neither of which was unlawful or otherwise "improper." First, IBJ advised Foothill of a true fact – *i.e.*, that IBJ would not be financing ARY because of an issue related to IBJ's background check. Second, IBJ faxed to Foothill news articles which were not confidential or proprietary, but which already were *in the public domain*, and which Foothill would have located when it did its own background check. Cole Aff. ¶ 16. For all these reasons, there is no triable issue as to whether IBJ or Mr. Molinario used improper means.

### E.   AR Y Cannot Prove Actual Damages

Finally, summary judgment should be entered for the separate and independent reason that ARY cannot prove the element of actual pecuniary damages. *See Mass Cash Register, Inc.*,

---

[8] As the Court further explained in *Geltman*, the conduct musts be "wrongful by some measure beyond the fact of the interference itself." *See Geltman*, 406 Mass. at 816.

901 F. Supp. at 422 (actual pecuniary damages is required to sustain a claim for intentional interference with an advantageous business relationship).[9]   Where, as here, a prospective borrower alleges that it was wrongfully denied financing, the measure of damages is "the expense of getting another loan, consisting principally of the difference between the interest that the borrower contracted to pay and what he or she was compelled to pay to procure a replacement loan ...." 25 *Williston on Contracts* §66:100 (4th ed.).   "The borrower's basic recovery is limited, at best, to nominal damages where no actual damages of this nature are proved." *Id.*; *see Restatement (Second) of Contracts,* §351, comment (e) (1981)("In most cases...the lender's liability will be limited to the relatively small additional amount that it would ordinarily cost to get a similar loan from another lender."); *Sparks v. Farmers Fed. Saving Loan,* 395 S.E.2d 559 (W.Va. 1990) ("Generally the measure of damages for the breach of a contract to lend money is the difference between the interest at the contract rate and the subsequent rate which the borrower is compelled to pay upon securing replacement financing.").[10]

Actual damages beyond those based on the difference between the contact rate and the replacement rate are available only if such damages are foreseeable and *"if substitute financing is unavailable." U.S. Funding, Inc. of America v. Bank of Boston Corporation,* 28 Mass.App.Ct. 404, 407 (1990)(emphasis added); *see Harsha v. State Savings Bank,* 346 N.W.2d 791, 796-97

---

[9]  The damages cannot be speculative or conjectural. *See Chemawa Country Golf, Inc. v. Wnuk*, 9 Mass.App.Ct. 506 (1980) ("It is of the essence, in an action for wrongful interference with contractual relationships, that plaintiffs suffer damages as a consequence of defendant's conduct, and those damages cannot be speculative or conjectural losses.").

[10]  The measure of damages is the same here even though ARY does not assert a claim for breach of a lending agreement.  Where a plaintiff claims tortious interference with a prospective lending agreement, as ARY does here, there is no basis for allowing greater damages than would be permitted had a lending agreement been entered into, but not honored by the lender. In both instances, the borrower's loss, if any, results from its inability to obtain financing from the lender.

Memorandum of Law.doc                              18

(Iowa. 1984); 5 *Corbin, Contracts,* §1078; *Restatement (Second) of Contracts,* §351, comment e (1981).

Here, it is indisputable that ARY was offered the March 27 Proposal as replacement financing for the December Proposal. But ARY chose for its own reasons not to accept the March 27 Proposal, and to terminate discussions with Foothill. [11]  Cole Aff. ¶¶ 12-13. Thus, ARY did not incur interest costs or other financing costs beyond what the December Proposal would have entailed. As a result, ARY cannot prove that it suffered actual damages, an essential element of a tortious interference claim.

### III. SUMMARY JUDGMENT SHOULD BE ENTERED FOR DEFENDANTS ON COUNT II OF THE FIRST AMENDED COMPLAINT

Count II of the First Amended Complaint alleges that in sending the Dow Jones articles to Foothill, IBJ breached a confidential or fiduciary duty owed to ARY. This Count is frivolous, as it appears to be predicated on the notion that news articles in the public domain somehow constitute "confidential" information which cannot lawfully be disclosed.

Moreover, under Massachusetts law, absent special circumstances not present here, the relationship between a borrower and lender is not fiduciary in character. *See Capizzi v. F.D.I.C.,* 1993 WL 723477 at *11 (D. Mass. March 9, 1993) ("Traditionally, Massachusetts courts have viewed a bank's relationship with its customers simply as one of creditor and debtor, a relationship not giving rise to fiduciary obligations.") (citation omitted). Here, where ARY was only a potential customer of IBJ, no fiduciary relationship existed.

---

[11]  It may be that Mr. Razzak finally realized that in the SPA, ARY had agreed to pay more than Krigel's was worth. Indeed, soon after ARY decided not to proceed with the SPA, under which it was to pay $16 million for Krigel's, the company was sold to another purchaser for $9.3 million. This seems even more likely when it is considered that in affidavits filed by ARY in the Fabrikant Litigation, ARY readily admitted "that ARY's financial backers could, if they wished, pay cash to buy out Foothill." Cimini Aff. Ex. D at 16-17.

Memorandum of Law.doc                    19

Finally, Court II fails for the additional reason that ARY cannot prove that the alleged

breach by IBJ was the legal cause of any damages allegedly suffered by ARY.  (*See* Section

II.B., <u>supra</u>).

### <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant the defendants' motion for

summary judgment and dismiss the First Amended Complaint in its entirety.


          IBJTC BUSINESS CREDIT CORPORATION
          and DAVID MOLINARIO
          By their attorneys,


           <u>/s/ Kate Cimini</u>
           Kate Cimini (BBO No. 654336)
           Ropes & Gray LLP
           One International Place
           Boston, Massachusetts 02110-2624
           (617) 951-7000


           Robert S. Fischler (Admitted Pro Hac Vice)
           Ropes & Gray LLP
           45 Rockefeller Plaza
           New York, NY 10111
           (212) 841-5700


Dated: August 11, 2005