UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARY JEWELERS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>IBJTC BUSINESS CREDIT CORPORATION )<br>and DAVID MOLINARIO, )<br>)<br>Defendants. )<br>) | Civil Action No. 04-10281-EFH |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO STRIKE EXPERT REPORT AND TO ENTER JUDGMENT DISMISSING
THE SOLE REMAINING COUNT OF THE SECOND AMENDED COMPLAINT**

IBJ submits this reply memorandum in further support of its *Motion to Strike Expert Report and to Enter Judgment Dismissing the Sole Remaining Count of the Second Amended Complaint*. The issues presented by this motion are straightforward and readily susceptible to summary disposition.

ARY's argument in support of lost profits damages rests on the hornbook rule that such damages may be recoverable in "business tort" cases. This rule is not in dispute, but it does not help ARY here. ARY alleges that IBJ interfered with one contract, but it seeks lost profits associated with a different contract. Specifically, Count I alleges that IBJ tortiously interfered with a prospective loan agreement (the December Terms) between ARY and Foothill. If that interference is proven, ARY would be entitled to damages equal to the costs associated with procuring substitute financing. But ARY does not seek, and Ms. Webster's expert report does not set forth, those damages. Instead, ARY seeks lost profits damages that supposedly resulted

from ARY's failure to consummate its contract to buy Krigel's. Thus, there is a fundamental dichotomy between the case ARY has brought and the one it now argues to this Court.

For these reasons, and because it is undisputed that ARY could have bought Krigel's by accepting the substitute financing (the March Terms) offered by Foothill, or by paying cash, ARY cannot recover lost profits related to the contract with Krigel's or any other "consequential" damages. ARY's damages are limited to the cost of substitute financing, of which there admittedly were none. Accordingly, Count I should be dismissed prior to trial.

## ARGUMENT

### I. ARY CANNOT PROVE COMPENSABLE DAMAGES

#### A. Lost Profits Are Not Recoverable

In Point I of its moving brief, IBJ showed that where, as here, a prospective borrower claims that it was wrongfully denied financing, the proper measure of damages is the "expense of getting another loan, consisting principally of the difference between the interest the borrower contracted to pay and what he or she was compelled to pay to procure a replacement loan." Moving Br. at 4. In its opposition brief, ARY does not dispute this damages rule where the plaintiff alleges breach of contract by the lender. But ARY argues that a different measure of damages applies where the disappointed borrower's claim "sounds in tort". Opp. Br. at 7. ARY is mistaken. Notwithstanding the availability of lost profits damages in certain types of tort actions, where the plaintiff's claim is based on a failure to procure financing, damages are limited to the additional cost of substitute financing—regardless of whether the claim sounds in contract or tort.

If Count I alleged tortious interference with the ARY-Krigel's contract—which it does not—ARY might be able to recover lost profits based on its failure to consummate that

contract.[1]  But, as logic would suggest, ARY may not recover damages for its failure to consummate a contract that Count I does not allege IBJ interfered with.  See American Telephone and Telegraph Co. v. IMR Capital Corp., 888 F. Supp 221, 246 (D. Mass. 1995) (tortious interference claim dismissed because plaintiff failed to allege that defendant "directly interfered" with the party with which plaintiff had a contract, notwithstanding that defendant's conduct rendered the plaintiff's contract less profitable).[2]  Rather, any compensable damages must be limited to those that directly result from ARY's failure to obtain the prospective contract—the December Terms proposed by Foothill—that IBJ allegedly prevented ARY from obtaining.

ARY is correct that many of the cases relied on by IBJ involved financing agreements that arose in the context of breach of contract, not tortious interference with contract, actions.  But that distinction is unavailing to ARY.  Under Massachusetts law and that of numerous other jurisdictions, a prospective borrower's damages are limited to the cost of obtaining alternative financing; consequential damages beyond the cost of alternative financing

---

[1] It is beyond dispute that the prospective contract ARY alleges IBJ interfered with was the December Terms between ARY and Foothill.  As ARY alleges in Count I of its Second Amended Complaint, "Upon information and belief Defendants intentionally interfered with Plaintiff's business relationship, and/or reasonable expectancy of business relations with Foothill Capital, inducing or causing a breach of the business relations, and/or expectancy." (Sec. Am. Comp. ¶ 19); see also The Court's February 7 Order at 8 ("The gravamen of ARY's claim is that IBJ's February 28, 2001 disclosures to Foothill caused Foothill to rescind its December 2000 offer and ultimately replace it with a less favorable offer in March 2001.").

[2] In *AT&T*, IMR Capital Corporation ("IMR") sued AT&T and New England Telephone ("NET") alleging, among other things, that NET had tortiously interfered with contracts between IMR and property owners to place coin-operated pay phones on the owners' property.  888 F. Supp. 221, 231-34 (D. Mass. 1995).  IMR alleged that NET, which controlled access to the telephone grid and owned pay phones in competition with those owned by IMR, had failed to provide IMR adequate service, or to block fraudulent calls made on IMR pay phones, and had offered below-market prices to "location owners" in order to drive IMR from the market.  *Id.* at 231-34, 240-41, 246.  The Court granted NET's motion to dismiss IMR's tortious interference claim, reasoning that "[i]n the absence of an allegation that NET directly interfered with location owners with whom IMR had a contract, IMR has failed to state a claim for tortious interference with contractual relations." *Id.* at 246.  Similarly, in this case, Count I does not allege, nor could it, that IBJ directly interfered with Krigel's or with ARY's contract to purchase Krigel's.  Rather, Count I alleges interference with the December Terms offered by Foothill.  Thus, as in *AT&T*, the plaintiff here may not recover damages that allegedly resulted from the termination of a contract with which the defendant did not directly interfere.

may be recovered only where, among other things, "substitute financing is unavailable." U.S. Funding, Inc. of America v. Bank of Boston Corp., 28 Mass. App. Ct. 404, 407 (1990); see Moving Br. at 4-6.  Massachusetts courts have recognized that the damages flowing from a breach of contract and damages flowing from a claim of tortious interference generally overlap. See Charles River Constr. Co., Inc. v. Kirksey, 480 N.E.2d 315, 322-23 (Mass. App. Ct. 1985) (noting that although a recovery based upon tort principles in excess of contract damages is "theoretically possible" in situations where the plaintiff has incurred an out-of-pocket loss, tortious interference damages generally overlap with breach of contract damages).

Significantly, ARY cites no Massachusetts or out-of-state case awarding lost profits damages for tortious interference with a loan agreement.  Nor does ARY dispute that such a claim logically should result in the same damages that would be awarded for the lender's breach of a contract to provide a loan agreement.  First, in both instances, the disappointed borrower's position is exactly the same.  Second, the contract rule, conceded by ARY, that a potential borrower cannot recover lost profits where substitute financing is available does not depend on principles that are unique to contract law.  Rather the rule is based on such commonsense concerns as the uncertainty of causation, mitigation of damages, and the reluctance to calculate speculative damages.  These concerns are present regardless of whether the plaintiff's claim "sounds" in contract or in tort.[3]

---

[3]  Indeed, courts in Texas and Illinois have squarely held that the damages recoverable in a case alleging that a contract was tortiously interfered with are equal to those that would be awarded if the claim were that the contract were breached.  Klaff v. Wieboldt Stores, Inc., No. 84 C 0090, 1988 WL 142163, at *2 (N.D. Ill. Dec. 23, 1988) ("The aim of awarding damages for tortious interference is the same as that of awarding damages for breach of contract – to place the injured party in the same economic position it would have been in had the contract not been breached."); American Nat'l Petroleum Co. v. Transcon. Gas Pipeline Corp., 798 S.W.2d 274, 278 (Tex. 1990) ("The basic measure of actual damages for tortious interference with contract is the same as the measure of damages for breach of the contract interfered with, to put the plaintiff in the same economic position he would have been in had the contract interfered with been actually performed."). See DAN B. DOBBS, ET AL., PROSSER AND KEETON ON TORTS 1004 (5th ed. 1984) (noting, with respect to tortious interference cases, that "[w]here the contract is an ordinary commercial contract in which it is perfectly proper for the contracting party to 'buy out' by paying full

In addition, basic causation principles are fatal to ARY's lost profits argument. ARY concedes that to prevail in this case, it must prove, inter alia, that its "loss of advantage *directly resulted* from the defendant's conduct." Opp. Brief at 8 (citing Boyle v. Douglas Dynamics, LLC, 292 F. Supp. 2d 198, 213 (D. Mass. 2003)) (emphasis added). As discussed above, Count I alleges that the "advantage" ARY lost due to IBJ's conduct was the opportunity to obtain the December Terms from Foothill. ARY cannot prove the requisite causation because it is undisputed that after Foothill withdrew the December Terms and offered ARY the March Terms, ARY made the business decisions not to accept the March Terms and to terminate the ARY-Krigel's contract. ARY, of course, had every right to make those decisions. However, it cannot, recover lost profits from not consummating the ARY-Krigel's contract, by now seeking to attribute its failure to consummate that contract to IBJ's communications with Foothill. Any lost profits from not proceeding with the ARY-Krigel's contract "directly resulted" from ARY's business decisions, not IBJ's alleged interference with the December Terms proffered by Foothill.

Finally, lost profits may not be recovered because ARY does not dispute that it had the financial ability to pay cash for Krigel's in the absence of financing from Foothill or any other lender. Moving Br. at 6. This undisputed fact provides yet another basis for concluding that ARY may not recover consequential damages, including lost profits, due to its inability to obtain the December Terms from Foothill. See Rayman v. American Charter Federal Savings and Loan Ass'n, 75 F.3d 349, 355-56 (8th Cir. 1996) (damages limited to cost of alternative financing where plaintiff "had the financial ability" to invest its own funds to maintain investment opportunity).

---

damages [as in this case] . . . , it seems especially inappropriate to hold the interfering defendant for damages in excess of the ordinary contract measure.").

10225439_1                                            5

### B.     Attorney Fees From Other Litigation Are Not Recoverable

ARY seeks to avoid dismissal by arguing that even if it may not recover lost profits damages, it may recover other consequential damages in the form of attorneys' fees ARY expended in litigation with Krigel's after ARY terminated its contract to buy Krigel's.  Opp. Br. at 11.  This argument fails because, for the reasons set forth above, ARY's damages are limited to the costs of procuring substitute financing, and here no such costs were incurred.  Consequential damages—for alleged lost profits or attorneys' fees expended in other litigation—may not be recovered.  The attempt to recover attorneys' fees also fails for the same causation-related reasons discussed above that are fatal to ARY's lost profits claim.  That is, ARY's legal fees relate to an alleged breach of the ARY-Krigel's contract, and not to any loan agreement offered by Foothill.  Krigel's claim against ARY was not the "direct result" of IBJ's conduct, but of ARY's own decisions not to proceed with the March Terms or the ARY-Krigel's contract.

### II.     THE WEBSTER REPORT SHOULD BE STRICKEN

In its moving brief, IBJ showed that the expert report proffered by Shirley Webster should be stricken because it applies the wrong measure of damages and calculates hypothetical damages, not actual damages as required by Massachusetts law.  Moving Br. at 7-8.  ARY argues that Ms. Webster's calculation of lost profits is appropriate because "future lost profits are always based on a projection of what the plaintiff would have earned."  Opp. Br. at 10.  This argument misses the point.  The fundamental problem with Ms. Webster's calculation is not that it projects future profits, but that it is based on the false hypothesis that ARY accepted the March Terms from Foothill and operated Krigel's under those terms.  Because that did not occur, the lost profits calculated by Ms. Webster represent a hypothetical, not an actual loss to ARY.

Ms. Webster's calculation is telling because it highlights the point made previously by IBJ that ARY's compensable damages musts be keyed to the December Terms with which IBJ allegedly interfered, and not the ARY-Krigel's contract. Ms. Webster recognizes this and, thus, focuses on purported differences between the December Terms and the March Terms later offered by Foothill. However, in order to conclude that ARY, in fact, suffered damages, she is forced to perform a calculation that necessarily assumes ARY operated Krigel's under the March Terms and, thus, realized lower profits than it would have under the December Terms. For the reasons discussed previously, this alchemy is at odds with the admitted facts.

Ms. Webster's report illustrates the dichotomy between the case ARY has brought and the one it argues to this Court. If ARY's claim were for tortious interference with the ARY-Krigel's contract, this might be an appropriate case for lost profits damages, and Ms. Webster would have done what experts commonly do in such cases—project the profits that Krigel's would have generated under ARY's ownership. But because the claim here is interference with a prospective loan agreement with Foothill, the standard approach to calculating lost profit damages does not work. Accordingly, Ms. Webster has attempted to square a circle, with the end result an irrelevant calculation that is at odds with the facts and with the claim in Count I that IBJ interfered with a prospective loan agreement with Foothill, not the ARY-Krigel's contract.

### III. JUDICIAL EFFICIENCY WARRANTS DECIDING THE MEASURE OF DAMAGES NOW

ARY's protestations regarding the timing of this motion are not persuasive. Contrary to ARY's argument, the issues raised by the motion have not been decided. Because the motion, if granted, would effectively resolve the case, IBJ respectfully requests that the Court decide the issue now, so as to avoid the time and expense associated with a bench trial on all issues.

As ARY notes, IBJ has been aware of the damages issue and, indeed, included it in its first motion for summary judgment. But, that motion[4] was never presented to the Court for decision. Rather, because ARY filed its Second Amended Complaint while that motion was pending, IBJ withdrew the motion and later filed a revised summary judgment motion directed to the Second Amended Complaint. The revised motion, which was decided by the Court in its February 7, 2006 opinion, did not raise the issue of the measure of damages, and that issue has never been presented to or resolved by the Court.

It is true that IBJ could have moved for summary judgment on damages; the potential difficulties involved in ARY's proof were certainly apparent at that stage as even the Court itself recognized during oral argument. But IBJ's decision not to include damages in its summary judgment motion does not somehow preclude it from moving to strike Ms. Webster's expert report and to enter judgment dismissing Count I. The present motion to strike is timely, meritorious, and, if granted, dispositive of the entire action. With the date for the bench trial of this case approaching, IBJ submits that judicial efficiency would best be served by addressing the issues raised by this motion at the Court's earliest convenience prior to the trial.

---

[4] Although in its summary judgment decision the Court addressed whether IBJ's actions caused Foothill to change the terms it offered ARY, it never addressed the issue of whether the change in terms caused ARY any damages.

## CONCLUSION

In sum, there is no reason to try this case. The undisputed facts demonstrate that, as a matter of law, ARY cannot prove compensable damages directly caused by IBJ, and thus cannot satisfy an essential element of its claim. We therefore ask the Court to strike Ms. Webster's report and enter judgment dismissing Count I of the Second Amended Complaint.

Dated: October 13, 2006

                        ROPES & GRAY LLP

                        By: /s/ Christopher Dillon
                              Robert S. Fischler (Admitted Pro Hac Vice)
                              Christopher R. Dillon (BBO No. 640896)

                              One International Place
                              Boston, Massachusetts 02110-2624
                              (617) 951-7000

                              *Attorneys for Defendant IBJTC Business Credit Corp.*

## CERTIFICATE OF SERVICE

I, Christopher R. Dillon, hereby certify that, pursuant to Fed. R. Civ. P. 5.4(c), a true copy of this document was electronically served upon counsel of record for the plaintiff in this action on October 13, 2006.

                        By: /s/ Christopher Dillon
                              Christopher R. Dillon (BBO No. 640896)