UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| ARY JEWELERS, LLC, </br></br>        Plaintiff, </br></br>    v. </br></br>IBJTC BUSINESS CREDIT CORPORATION and DAVID MOLINARIO, </br></br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )   Civil Action No. 04-10281-EFH |

**DEFENDANT IBJTC BUSINESS CREDIT CORP.'S OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
<u>STRIKING EXPERT REPORT OF SHIRLEY WEBSTER</u>**

In its Order of October 24, 2006, the Court struck the expert report of Shirley Webster because it calculated lost profits damages allegedly suffered by ARY due to its failure to consummate its contract to buy Krigel's. The Court held that the measure of damages here does "not include lost profits flowing a separate contract between ARY and Krigel's Inc. (Krigel's) . . . but only those damages flowing from defendant's alleged interference with ARY's financial relationship with Foothill Capital Corporation ("Foothill")." Order at 2. The Court's reasoning makes it clear that the only viable damages in this case are those representing the cost, if any, of "obtaining replacement financing" for the Foothill financing with which IBJ allegedly interfered. Order at 1.

ARY now seeks reconsideration of the Court's decision to strike Ms. Webster's report. In doing so, ARY does not contend, as it did previously, that Ms. Webster properly used a "lost profits" measure of damages. Instead, ARY now argues that Ms. Webster's report merely

"refers" to lost profits, but actually calculates the cost (at $3.1 million) of obtaining replacement financing, and therefore is consistent with the measure of damages set by the Court. ARY's position is not credible. As demonstrated below, it is beyond dispute that Ms. Webster employs a "lost profits methodology" to calculate the profits ARY allegedly lost by failing to consummate its agreement to buy Krigel's under the "December Terms" ARY claims would have been available from Foothill but for IBJ's alleged interference. Accordingly, her report was properly stricken, and ARY's motion for reconsideration should be denied.

    1.    Ms. Webster's Report Calculates Lost Profits And Not The Additional Cost Of Obtaining Replacement Financing.

In opposing IBJ's motion to strike, ARY did not even try to argue that Ms. Webster's report measured the cost of obtaining another loan. Rather, ARY argued that the appropriate measure of damages was its lost profits. *See Plaintiff ARY Jewelers, LLC's Opposition to Defendant's Motion to Strike Expert Report and to Enter Judgment Dismissing the Sole Remaining Count of the Second Amended Complaint* at 5-7 (Docket No. 118) (asserting that lost profits were the appropriate measure of damages).

More to the point, there is no credible argument that the Webster report calculates the cost of obtaining another loan. In her "Summary of Opinions," Ms. Webster concludes "It is my opinion that ARY's economic damages under this *lost profits methodology* is approximately $3.1 million, excluding prejudgment interest." Webster Report at ¶ 4 (italics added).[1] This $3.1 million figure comes from Exhibit 3 titled "ARY Lost Profits," which purports to compare the profit under Krigel's December operating performance projection (Exhibit 4) with the profit under Krigel's March operating performance projection (Exhibit 5). ARY asserts that although

---

[1] A copy of Ms. Webster's report is attached as Exhibit B to the Affidavit of Christopher Dillon (Docket Entry 116) submitted in support of IBJ's motion to strike.

Exhibit 3 is titled "ARY Lost Profit" that "the calculation shows *the cost to ARY* of the financing under the March 27 terms versus the December 15 terms." However, a review of Ms. Webster's report demonstrates that it is, as advertised, an analysis of lost profits and not a calculation of the "relatively small additional amount that it would ordinarily cost to get a similar loan from another lender." Order at 2.

The Court need look no further than the first line of the second column of Exhibit 4 and Exhibit 5 to see that Ms. Webster's calculation is based on the performance of Krigel's and not a calculation of the difference in the cost to obtain substitute financing. Exhibit 4 (December) projects that Krigel's would have merchandise sales of $30,788,419 in 2002; whereas, Exhibit 5 (March) projects that Krigel's would have merchandise sales of $28,543,203 in 2002. *This $2.2 million difference in merchandise sales cannot in any conceivable way be tied to a measurement of the incremental cost of obtaining substitute financing*. Similarly a number of store expenses are different between Exhibit 4 and Exhibit 5 (e.g., wages, check guarantee, credit card commission, and merchandise shortages). Like merchandise sales, the difference in merchandise shortages – shoplifting of jewelry – has nothing to do with measuring the incremental cost to obtain substitute financing, and yet they appear to have a significant impact on Ms. Webster's lost profits calculation.

On the second page of Exhibits 4 and 5 Ms. Webster adds up the various income and expense items and concludes that in 2002, under the March projection Krigel's would have lost $210,585 before taxes; under the December projection, she concludes that Krigel's would have earned $591,948 before taxes. Ms. Webster then adds up the profit (or loss) of Krigel's for the

years 2002 to 2006 and compares the profits calculated on Exhibit 4 with the profits on Exhibit 5 to arrive at her $3.1 million figure.[2]

In short, Ms. Webster calculates the profitability of Krigel's under two different set of assumptions to determine lost profits damages. She does not calculate the "relatively small additional amount that it would ordinarily cost to get a similar loan from another lender." Order at 2. To be sure, common sense dictates that the additional cost of obtaining an $11 million loan (Exhibit 6) for a one year term is not $3.1 million.[3] The Court properly struck Ms. Webster's report as her proffered testimony does not measure damages in the manner the Court has established for this case.

2. **ARY Is Not Entitled To Its Attorney Fees Arising From Its Decision Not To Purchase Krigel's**

ARY argues that it is entitled to recover the attorney's fees it spent litigating with Krigel's after ARY made the business decision not to consummate its contract with Krigel's. ARY is incorrect. For the same reason it cannot recover alleged lost profits "flowing from a separate contract between ARY and Krigel's", Order at 2, ARY cannot recover legal fees relating to the separate contract with Krigel's, as those fees have nothing to do with the cost, if any, of obtaining replacement financing.

The legal fees arise from ARY's decision not to buy Krigel's; they do not arise from IBJ's alleged interference with ARY's financing relationship with Foothill. Although the Court did not expressly address this issue in its October 24 Order; this is the logical consequence of the Court's

---

[2] To the extent Ms. Webster's report says anything about the costs of borrowing, it appears to indicate that the cost is *lower* under the March projection than the December projection. On the second pages of Exhibits 4 and 5, there is a line for interest expense. For each year, the interest expense corresponding to the March projection is always *lower* than the corresponding number for the December projection.

[3] As set forth in IBJ's original motion, at ARY's request, the March Terms were shortened to a one year term.

decision that "the measure of damages to be established in this case shall not include lost profits flowing from a separate contract between ARY and Krigel's." Order at 2. IBJ contends that ARY is entitled to "only those damages flowing from defendant's alleged interference with ARY's financial relationship with Foothill" (Order at 2), and that ARY is not entitled to its attorney fees and costs, which arise from an alleged breach of the ARY-Krigel's contract.

ARY correctly notes that IBJ has not previously moved to strike the testimony of Barry Pickens, and the Court did not do so in its Order. For the reasons above, however, Mr. Pickens's testimony would be irrelevant, as IBJ will urge at trial should ARY attempt to introduce such testimony.

For the reasons set forth herein, in the Court's October 24 Order, and in IBJ's original motion papers, the Court should deny the motion to reconsider.

Dated:  November 13, 2006

                ROPES & GRAY LLP

By: /s/ Christopher Dillon
    Robert S. Fischler (Admitted *Pro Hac Vice*)
    Christopher R. Dillon (BBO No. 640896)

    One International Place
    Boston, Massachusetts 02110-2624
    (617) 951-7000

    *Attorneys for Defendant IBJTC*
    *Business Credit Corp.*

## **CERTIFICATE OF SERVICE**

  I, Christopher R. Dillon, hereby certify that, pursuant to Fed. R. Civ. P. 5.4(c), a true copy of this document was electronically served upon counsel of record for the plaintiff in this action on November 13, 2006.

By: /s/ Christopher Dillon<br>
Christopher R. Dillon (BBO No. 640896)