UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARY JEWELERS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>IBJTC BUSINESS CREDIT CORPORATION )<br>and DAVID MOLINARIO, )<br>)<br>Defendants. )<br>) | Civil Action No. 04-10281-EFH |

**STIPULATION OF UNCONTESTED FACTS, STATEMENT OF
ISSUES TO BE TRIED, AND LIST OF WITNESSES**

Pursuant to the Court's Revised Trial Order, dated May 2, 2006, Plaintiff ARY Jewelers, LLC ("ARY") and Defendant IBJTC Business Credit Corporation[1] ("IBJ") hereby submit the following joint stipulation:

**Stipulation of Uncontested Facts**

1.  ARY is a limited liability company that is part of the ARY Group, a multinational, billion-dollar enterprise headquartered in the United Arab Emirates. The ARY Group, which is chaired by Abdul Razzak, conducts its business in several industries, including gold and jewelry, foreign exchange, media, and real estate.

2.  On November 21, 2000, Krigel's Inc. ("Krigel's"), was a privately owned company that operated a chain of retail jewelry stores in the Midwestern United States. Scott Krigel owned all of the outstanding stock of Krigel's.

---

[1] David Molinario has been dismissed as a defendant in this action.

3295781_2

3. On November 21, 2000, ARY and Mr. Krigel entered into a stock purchase agreement, pursuant to which ARY agreed to buy all of Krigel's stock (the "Stock Purchase Agreement"). Under the Stock Purchase Agreement, Krigel's, which had experienced serious financial difficulties, was to file a "prepackaged" bankruptcy petition and to emerge from bankruptcy under the ownership of ARY. Krigel's bankruptcy petition was filed in January 2001.

4. Foothill Capital Corporation ("Foothill"), which was based in Boston, had been providing secured financing to Krigel's at the time of the execution of the Stock Purchase Agreement. At that time, Krigel's owed Foothill approximately $8 million. Under the Stock Purchase Agreement and related agreements, ARY was to pay approximately $6 million to Krigel's unsecured creditors and to pay off or assume Krigel's debt to Foothill. The total purchase price under the Stock Purchase Agreement was approximately $15.5 million.

5. Under paragraph 4(c) of the Stock Purchase Agreement, ARY's obligation to purchase Krigel's stock was subject to the condition that Foothill agree to continue financing Krigel's (post acquisition by ARY) on the same terms Krigel's had at the time the Stock Purchase Agreement was signed.

6. On December 15, 2000, Foothill presented ARY with a term sheet outlining the terms of a proposed credit facility (the "December Terms") that differed from the Foothill credit facility in place as of November 21, 2000.

7. ARY decided to explore the availability of financing terms, if any, superior to the December Terms from other lenders. ARY contacted IBJ, a lender located in Braintree, Massachusetts, and IBJ presented ARY with a term sheet on January 24, 2001. The proposed

terms were accepted by ARY in late January or early February 2001. The parties sought in the next few weeks to finalize a financing agreement.

8. IBJ engaged an outside vendor, LCF Associates, to assist IBJ in performing due diligence on ARY. On or about February 28, 2001, LCF located and sent to IBJ two news articles published by Dow Jones Newswire on the Internet.

9. IBJ decided not extend financing to ARY. By letter dated February 28, 2001, IBJ informed ARY of IBJ's decision. IBJ Senior Vice President Francis D. O'Connor instructed one of IBJ's loan officers, David Molinario, to inform Foothill that IBJ would not be providing financing to ARY.

10. On February 28, 2001, Molinario telephoned Tom Morgan, a Vice President at Foothill working on the Krigel's account, and informed him of IBJ's decision and faxed to him the news articles.

11. On March 20, 2001, Foothill delivered a revised term sheet to ARY, which differed from the December Terms.

12. Foothill issued another revised term sheet to ARY on March 27, 2001 (the "March Terms"). The March Terms differed from both the December Terms and the terms of the financing that Foothill had been providing to Krigel's at the time the Stock Purchase Agreement was signed.

13. The Stock Purchase Agreement was not consummated, and litigation between ARY and Krigel's ensued. Krigel's was sold to another buyer through an auction process conducted under the auspices of the bankruptcy court.

**Statement of Issues to be Tried**

*ARY and IBJ agree on the following issues to be tried:*

14. Did IBJ intentionally interfere with the alleged contemplated contract (the December Terms) through improper means?

    - Did IBJ's communications with Foothill on February 28, 2001 violate established banking standards?

15. Did the alleged tortious interference by IBJ constitute the legal cause of ARY's losing the opportunity to obtain the December Terms from Foothill?

16. Did the alleged tortious interference by IBJ constitute the legal cause of any damages to ARY under the measure of damages set forth in the Court's Order of October 24, 2006?

*IBJ, without agreement from ARY, submits the following additional issues to be tried:*

17. Would ARY have accepted the December Terms if they were offered in March 2001?

18. Would Foothill have learned of the criminal charges against ARY's principals if IBJ had not disclosed the news articles located on the Internet to Foothill?

19. Would Foothill have learned that IBJ had declined to provide financing to ARY even if IBJ had not contacted Foothill?

20. Were any changes to the December Terms made as a direct result of IBJ's communications with Foothill?

21. As to ARY, did the December Terms constitute a contemplated contract of economic benefit with Foothill, or was the prospect of finalizing a deal on those terms speculative?

- Would the December Terms, which did not constitute a commitment to lend, have been approved by Foothill's credit committee if ARY had accepted those terms?

22. Did IBJ have knowledge of the alleged contemplated contract at the time of the alleged tortious interference on February 28, 2001?

**Proposed Witnesses**

The parties hereby designate the following witnesses on their respective cases in chief. Both sides reserve the right to object to the other side's designated witnesses.

A. Plaintiff's Witnesses

Thomas Morgan
Scott Krigel
Sandy Krigel (fact and expert)
Haji Abdul Razzak Yacoob
Gohar Husain
Shabana Razzak
Barry Pickens, or other representative of Spencer Fane Britt & Browne, LLP (fact and expert)
John Beckworth, Joseph Thompson, or other representative of Watt, Beckworth & Thompson, L.L.P.
Max Jevinsky, Ron S. Weiss, and/or any other representative of the law firm of Berman, DeLeve, Kuchman & Chapman, L.C. (fact and expert)
Sanford Krigel, Karen S. Rosenberg, and/or any other representative of the law firm of Krigel & Krigel, P.C.
Shirley Webster (expert)
Thomas E. Bonville (expert)
Ijaz-Ul-Ahsan (expert)
Cornelius Hurley (expert)
Frank O'Connor
Stephen Cole
David Molinario
Brian Kennedy
Tom Berger
Stuart Fetter
Jack A. Zissler
Stephen P. Carrigan, Jill L. Groff

B. D<u>e</u>fendant's Witnesses

Frank O'Connor
Stephen Cole
William Chandler (expert)
Edward Davis (expert)

Dated: November 13, 2006

| THE CARRIGAN LAW FIRM, LLP | ROPES & GRAY LLP |
|---|---|
| By: /s/Stephen P. Carrigan<br>    Stephen P. Carrigan (Admitted *Pro Hac Vice*)<br>    Jill C. Groff (Admitted *Pro Hac Vice*) | By: /s/ F. Turner Buford<br>    Robert S. Fischler (Admitted *Pro Hac Vice*)<br>    Christopher R. Dillon (BBO No. 640896)<br>    F. Turner Buford (BBO No. 661311) |
| 2 Houston Center<br>909 Fannin, Suite 1575<br>Houston, TX 77010<br>(713) 739-0810 (telephone)<br>(713) 739-0821 (telefax) | One International Place<br>Boston, MA 02110-2624<br>(617) 951-7000 (telephone)<br>(617) 951-7050 (telefax) |
| *Attorneys for Plaintiff*<br>*ARY Jewelers, LLC* | *Attorneys for Defendant IBJTC*<br>*Business Credit Corp.* |

## CERTIFICATE OF SERVICE

I, F. Turner Buford, hereby certify that, pursuant to Fed. R. Civ. P. 5.4(c), a true copy of this document was electronically served upon counsel of record for the plaintiff in this action on November 13, 2006.

By: /s/ F. Turner Buford